## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

_____

ADRIANNA WADSWORTH,                          )
                                             )
            *Plaintiff,*                      )
                                             )
v.                                           )
                                             )
                                             )    Civil Action No. _____
MSAD 40/RSU 40,                              )
MEDOMAK VALLEY HIGH                          )
SCHOOL, ANDREW                               )
CAVANAUGH,                                   )
and CHUCK NGUYEN.                            )
                                             )
            *Defendants.*                     )
_____)

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

Plaintiff, Adrianna Wadsworth ("Plaintiff" or "Ms. Wadsworth"), seeks relief under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX") against Defendants MSAD 40/RSU 40 and Medomak Valley High School.  Plaintiff also asserts common law tort and statutory claims against Defendants Andrew Cavanaugh and Chuck Nguyen.  (Defendants MSAD 40/RSU 40, Medomak Valley High School, Andrew Cavanaugh and Chuck Nguyen are referred to collectively herein as "Defendants".) Plaintiff seeks to recover damages, interest, costs, and attorneys' fees.

### PARTIES

1.     Plaintiff is an individual with a principal residence in Sydney, Maine.

2.     Defendant MSAD 40/RSU 40 is a school district which encompasses the following Maine towns: Friendship, Union, Waldoboro, Warren, and Washington.

1

3.      Defendant Medomak Valley High School is located in Waldoboro, Maine, and is part of the MSAD 40/RSU 40 school district.

4.      Defendants MSAD 40/RSU 40 and Medomak Valley High School receive federal financial assistance and are subject to the provisions of Title IX, Education Amendments of 1972, § 901(a), 20 U.S.C. § 1681.

5.      Mr. Cavanaugh ("Defendant Cavanaugh") is an individual who, on information and belief, has a principal residence in the State of Maine.

6.      Mr. Nguyen ("Defendant Nguyen") is an individual who, on information and belief, has a principal residence in the State of Maine.

**JURISDICTION**

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 based on questions of federal and constitutional law.

8.      Venue is appropriate, pursuant to 28 U.S.C. § 1391(b), in the District of Maine as the events and conduct complained of herein occurred in the District of Maine.

**FACTS**

9.      Plaintiff is a 19-year-old female who currently resides in Sydney, Maine.

10.     Plaintiff was a student at Medomak Valley High School from 2014 through her graduation in June 2018.

11.     Defendant Cavanaugh became the principal of Medomak Valley High School in 2015.

12.     At all times relevant to this matter, Defendant Nguyen was the social worker at Medomak Valley High School.

2

13.     MSAD 40/RSU 40 and Medomak Valley High School have a policy that prohibits sexual harassment.

14.     MSAD 40/RSU 40 and Medomak Valley High School's sexual harassment policy states, "Sexual harassment includes but is not limited to unwelcome sexual advances, requests for sexual favors, or pressure to engage in sexual activity, physical contact of a sexual nature, gestures, comments, or other physical, written, graphic, electronic or verbal conduct that is gender-based that interferes with a student's education."

15.     At some point during Plaintiff's junior year of high school, when she was 16 years old, Defendant Cavanaugh began to pay special attention to Plaintiff.

16.     While Plaintiff was a junior in high school, Defendant Cavanaugh made sexually based comments on Plaintiff's looks and clothing choices in front of students and staff members.

17.     Defendant Cavanaugh purchased personal hygiene products for Plaintiff and gave them to her in front of other teachers and students.

18.     Plaintiff reported the gifts to Defendant Nguyen during her junior year and asked whether this was "normal".

19.     Defendant Nguyen assured Plaintiff that Defendant Cavanaugh was being nice to her and that there was nothing inappropriate about the gifts.

20.     Plaintiff participated in the sport of cheerleading, and in order to continue participating, she was required to undergo a physical examination by a doctor.

21.     Defendant Cavanaugh advised Plaintiff that he would bring her to this doctor's appointment.

22.     Plaintiff approached Defendant Nguyen and asked if this was appropriate, and Defendant Nguyen assured her that Defendant Cavanaugh was just trying to be a "father figure" to Plaintiff.

23.     On another occasion, Defendant Cavanaugh advised Plaintiff that she should be on birth control, and when this was brought up to Defendant Nguyen, he again told Plaintiff that this was normal.

24.     At some point during Plaintiff's junior year, Defendant Cavanaugh began sending Plaintiff text messages on a regular basis.

25.     Between April 2017 and November 2017, Defendant Cavanaugh and Plaintiff exchanged approximately 5,000 text messages.

26.     Throughout this time, Defendant Cavanaugh provided gifts to Plaintiff, including money, which he would give to her directly, deposit into her school lunch account, or leave with the secretary.

27.     Throughout this time, Defendant Cavanaugh called Plaintiff into his office on a regular basis, causing her to miss class.

28.     Throughout this time, Defendant Cavanaugh commented on Plaintiff's looks and clothing choices in front of teachers, students, and Defendant Nguyen.

29.     Defendant Cavanaugh sent sexually explicit and inappropriate text messages to Plaintiff at all hours of the day, including while she was at school, and at night, including messages at 2:00 a.m.

30.     On April 22, 2017, Defendant Cavanaugh sent a text message to Plaintiff and stated, "Hah hah. That's right, a guy would rather you tell him he makes you sick to your

stomach! Because that way, at least he has a chance! But telling him he's like a brother, well you might just as well shoot him right in the head!"

31.     Defendant Cavanaugh texted, "I won't rat you our. Jesus the spell check corrected rat to get "eat."  That would have been awful to send that!"

32.     On April 25, 2017, when discussing Plaintiff's potential prom date, Defendant Cavanaugh texted Plaintiff, "Is he a friend or does he have 'expectations?'"

33.     Plaintiff did not respond to that text message, and Defendant Cavanaugh again sent Plaintiff a text message and asked her to stop by his office "right now".

34.     Plaintiff responded that she was busy doing school work.

35.     Defendant Cavanaugh then texted Plaintiff and asked her "And is [redacted] like a brother to you?" and Plaintiff again did not respond.

36.     When Plaintiff did not respond, Defendant Cavanaugh texted, "Three minutes."

37.     The following day, while he was at Medomak Valley High School, Defendant Cavanaugh asked Plaintiff when she could stop in to see him.

38.     Plaintiff responded that she was not at school.

39.     Defendant Cavanaugh texted, "Are you avoiding my questions about [redacted]?"

40.     Plaintiff responded by asking what the question was.

41.     Defendant Cavanaugh responded "Hah hah. The question was….is he like a brother or does he have 'expectations?'"

42.     Plaintiff stated, "I mean he likes me but he's really polite and wouldn't want that."

43.     Defendant Cavanaugh responded, "First question to ask yourself- is he a man? If the answer is yes, then reconsider your premise. Hah hah. . . . Don't refer to the act as "it" because it sounds like a commodity like soybeans or corn."

44.     In a follow up text message, Defendant Cavanaugh stated, "For you the phrase, 'being intimate,' works. It gets the point across, without sounding cheap."

45.     On April 29, 2017, Defendant Cavanaugh texted Plaintiff, "I assume when you say 'turn on' you are speaking about betrayal.  I don't think you mean that you are really hot and people just get turned on when they are around you.  Hah hah."

46.     On May 1, 2017, Defendant Cavanaugh texted Plaintiff, "So why have you been so quiet to me the past few days?

47.     When Plaintiff did not respond, Defendant Cavanaugh texted, "Perhaps I have offended you."

48.     On May 2, 2017, Defendant Cavanaugh texted Plaintiff and asked if she had any time to stop in and see him.

49.     When Plaintiff did not respond, Defendant Cavanaugh texted, "Yes, no, maybe, fo?"

50.     Plaintiff responded that she was busy with school work.

51.     Defendant Cavanaugh texted, "Ok. Just remember, im one of the good guys."

52.     Defendant Cavanaugh asked Plaintiff how she was doing.

53.     Plaintiff responded, "Fine".

54.     Defendant Cavanaugh texted, "Are you sure i have not offended you?  You seem distant."

55.     On May 5, 2017, Defendant Cavanaugh texted "Would you like to meet with me for a few minutes this morning?"

56.     When Plaintiff did not respond, Defendant Cavanaugh texted, "Seriously, come down and see me for a few minutes. Don't you have a study hall right now?"

57.     Plaintiff responded and said she was making up school work she had missed.

58.     Defendant Cavanaugh texted, "Do you have any interest in going to outward bound this summer? Free of charge…They are expensive, but I have one scholarship."

59.     Defendant Cavanaugh texted Plaintiff, "I know you check your phone ebery thirty seconds. You ok? . . . Youwill think i am a baby but i worry about you."

60.     On May 13, 2017, Defendant Cavanaugh texted, "What are you doing tonight? Tomorrow?"

61.     When Plaintiff did not respond, Defendant Cavanaugh texted, "I am only making conversation. I wont ask u to do anytjing . Lol."

62.     On May 16, 2017, Defendant Cavanaugh texted Plaintiff, "Turn off the filter in your head and tell me what happened."

63.     Plaintiff did not respond, and Defendant Cavanaugh texted, "Anytime you are ready. . . I know you can see my messages. You should just respond."

64.     The following morning, Defendant Cavanaugh texted, "Hmmmm. Are you in school today?"

65.     When Plaintiff responded affirmatively, Defendant Cavanaugh texted, "Girl, i thought you were kidnapped! . . . Why so quiet?"

66.     On May 17, 2017, Defendant Cavanaugh offered Plaintiff money for prom.

67.     Plaintiff responded that she did not need money and would feel bad taking it.

68.     Defendant Cavanaugh texted "Well obviously i dont want you to feel bad. I just ask that you keep it quiet as i don't want people to think you get special treatment. Besides at some point you will need to do some work for me (This is not part of your pay, its just a fringe benefit)"

69.     Defendant Cavanaugh texted Plaintiff, "Besidez me, who is spoiling you?"

70.     Plaintiff responded with two redacted names.

71.     Defendant Cavanaugh texted, "Well tell them to stop."

72.     Defendant Cavanaugh's text messages were persistent, and if Plaintiff did not respond in a timely manner, Defendant Cavanaugh proceeded to text incessantly until Plaintiff responded.

73.     On May 18, 2017, Defendant Cavanaugh texted, "You should live here for your senior year. It would be a stable place and i don't care about child support.. . . I think if you talked with Debbie and i about it we could take care of a lot. I would write a letter to the superintendent and all that."

74.     Later that day, in references to prom dresses, Defendant Cavanaugh texted, "Hah hah. It would be hatd for you to not look sexy, but i get the point. Send me a picture and i will tell you straight up how you look."

75.     Defendant Cavanaugh texted Plaintiff "Hah hah. Your body shape is perfect for dresses and everything else. And, you should be a 'little' scandalous. I think it's a beautiful dress and i am sure you will look absolutely fantastic. Make sure you get your nails painted bright red as well!"

76.     On May 30, 2017, Defendant Cavanaugh texted Plaintiff, "Out of curiosity, do you have a new bf, love interest or whatever you might call it?"

77.     On June 6, 2017, Defendant Cavanaugh texted Plaintiff, "Have you ever sent pictures of yourself to anyone? By pictures I mean of you in the nude."

78.     On June 10, 2017, Defendant Cavanaugh texted Plaintiff, "Girls just don't like you hanging around their boyfriends because you are too good looking. That's the bottom line lady time."

79.     On June 12, 2017, Defendant Cavanaugh texted Plaintiff, "I think you meant snow suit, but a show suit might be pretty good!  Hah hah.  Have fun!  No booze! . . . I think the suit you wore in my pool was definitely a show suit!"

80.     On June 17, 2017, in regard to a girls state competition, Defendant Cavanaugh texted Plaintiff, "If you dont go it will be hard for me to give you the principals award, which i want to do."

81.     On June 21, 2017, after several unanswered text messages, Defendant Cavanaugh texted, "I just saw the new senior class with rankings. Of course its top secret but guess who holds the number 2 spot?"

82.     Throughout this time, Defendant Cavanaugh continued to ask Plaintiff to move in with him on a regular basis.

83.     On June 22, 2017, Defendant Cavanaugh texted, "I have a bit of bad news. I spoke with work about you staying with me and i cant. I feel terrible but thats what it is."

84.     On June 26, 2017, Plaintiff asked Defendant Cavanaugh if they could meet. Defendant Cavanaugh responded, "Sounds scandalous. Where are you."

85.     On July 5, 2017, Defendant Cavanaugh advised Plaintiff that he had purchased a vehicle for her and that she could work for him to pay it off.

86.     Defendant Cavanaugh texted, "Dont worry cupcake, i wont sell you into white slavery."

87.     On July 7, 2017, Defendant Cavanaugh texted Plaintiff the following successive messages, "Way past the three miniute response rule!"; "Did you die?"; "If it didn't sound creepy i might threaten you with a spanking."; "Nothing huh? I dont want to worry about you. Sup?"

88.     On July 21, 2017, Defendant Cavanaugh texted Plaintiff, "You are like a daughter to me.  Hah hah. . . Maybe a scandalous step daughter.  Hah hah.  If you buy car insurance how would you afford those lacey shorts?"

89.     On July 27, 2017, Defendant Cavanaugh texted Plaintiff, "How casual is sex with your friends?  Like is it no big deal or what?"

90.     During the summer, Defendant Cavanaugh asked Plaintiff to send him photos of her at the beach.

91.     On July 30, 2017, Defendant Cavanaugh texted Plaintiff, "Can I see the photos or would that bother you? Only send the scandalous ones! Ha hah."

92.     On August 1, 2017, Defendant Cavanaugh texted Plaintiff, "Whats the sports illustrated swimsuit model up to today?"

93.     On August 2, 2017, Defendant Cavanaugh texted Plaintiff, "Can you help me on Friday or will you be taking more nude pictures of yourself?"

94.     Defendant Cavanaugh then texted, "Don't be a baby. I am just having fun with you. I cant joke with anyone about the pictures (or show them to anyone) except you. They are great shots though."

95.     On August 4, 2017, Defendant Cavanaugh texted, "Well you are extremely attractive. That's just a fact. Young women like attention from men, but only to a point. Men cant see it tgat way."

96.     Later that night, Defendant Cavanaugh texted, ""Hah hah. Ok now get your Mickey mouse neglige on and go to bed. Hah hah."

97.     Defendant Cavanaugh then texted, "Im deleting our conversations, and the swimsuit pictures, as much as i hate to! Hah hah."

98.     On August 10, 2017, Defendant Cavanaugh texted Plaintiff, "Did you have a date tonight?"

99.     On August 21 2017, Defendant Cavanaugh texted Plaintiff, "If you forget your bikini, you can just use some dental floss instead."

100.    On August 23, 2017, Defendant Cavanaugh texted Plaintiff, "I am surprised you didn't go to the beach today. You wont have many more days to wear that dental floss bikini."

101.    On September 1, 2017, Defendant Cavanaugh texted Plaintiff, "Are you like a black widow? . . . The black widow spider female kills the male spider after they have sex. Did you know that? The expression "black widow" describes women who kill their boyfriends/husbands. I am guessing you have a new love interest on the horizon."

102.    On September 4, 2017, during a conversation about Plaintiff getting a new job, Defendant Cavanaugh texted Plaintiff, "That's because she is not distracted by your good looks! Hah."

103.    On September 9, 2017, Defendant Cavanaugh texted Plaintiff and told her the girls soccer coach was fired.  He followed up by telling her it was confidential information.

11

104.     On September 10, 2017, Defendant Cavanaugh texted Plaintiff, "I know I am too wonderful for words. Its just one more thing I do. Can you see now how I am so irrestible? . . . Girl, you know I got game."

105.     On September 18, 2017. Defendant Cavanaugh texted, "And did I see a picture of you in an extremely racy bathing suit? It was on the mvhs staff folder and you standing on the dock at Camden harbor."

106.     On September 18, 2017, Defendant Cavanaugh texted Plaintiff, "If I was a college admission person I would want to read about how you seduced Christmas but that might not have anything to do with admissions."

107.     Plaintiff was pulled over for speeding in September 2017, and the police officer expressed concern about the fact that the vehicle was owned and registered by Defendant Cavanaugh.

108.     On September 19, 2017, Defendant Cavanaugh notified Plaintiff that he would need the car back and texted, "I like to help you and it does seem to cause problems. I know you are super hot and that probably does influence me, but you must know by now that I really do like you as a person."

109.     Defendant Cavanaugh texted, "I doubt you would ever come close to the things I have done. I like you and I don't think you could tell me anything that would change my opinion of you. I just need the truth. I can be the one person you are honest with. I will always do my best to protect you and help you."

110.     On September 20, 2017, Defendant Cavanaugh texted, "Have you had the 'O' yet?"

111.    On September 22, 2017, in a conversation about a school trip, Defendant Cavanaugh texted Plaintiff, "Good, I am glad you are going. I would like to go as well, but can you imagine those rumors? Hah hah. Flattering for me, but maybe not so much for you! Hah! …Like I said for me if makes me look like a playuh but for u it makes it look like you are robbing the wheelchair."

112.    On September 25, 2017, Defendant Cavanaugh texted, "Well at least I'm not getting the topless cheerleading routine. Of course that might be worth more than one missed French class. Tell the truth, do I do what you ask because you bat your eyes?"

113.    On September 26, 2017, Defendant Cavanaugh texted, "Don't challenge me woman. I would hit you so hard, you would starve to death before you quit rolling."

114.    On September 27, 2017, in a conversation about the car Defendant Cavanaugh had given to Plaintiff, Defendant Cavanaugh texted, "There is some grief but its my actions are above board, pretty much. Hah hah."

115.    On October 6, 2017, Defendant Cavanaugh texted Plaintiff, "I might have to give you a spanking."

116.    On October 9, 2017, Defendant Cavanaugh texted Plaintiff, "I bet if I slapped you a couple times you would be mine forever!"

117.    On October 11, 2017, Defendant Cavanaugh texted Plaintiff, "I am keeping an eye on you. You would be a fun girl to go to college with!"

118.    Defendant Cavanaugh then texted Plaintiff, "But have you had the O yet? . . . You just need some practice . . . You should try yourself and then it will be easier for you."

119.    On October 28, 2017, Defendant Cavanaugh texted Plaintiff, "Well that's great. Don't ignore me or I might just give you a spanking. Jesus!"

13

120.    On October 30, 2017, Defendant Cavanaugh texted Plaintiff, "The whole school reminds you of your influence with me just about every day."

121.    In the fall of 2017, a third party notified the Waldoboro Police Department of the inappropriate relationship between Defendant Cavanaugh and Plaintiff.

122.    The school district put Defendant Cavanaugh on leave pending the results of the police investigation.

123.    Subsequently, Defendant Nguyen called Plaintiff into his office and stated that Defendant Cavanaugh had a drinking problem.

124.    During the investigation and in subsequent months, Plaintiff was contacted and harassed by Defendant Cavanaugh's family members.

125.    Defendant Cavanaugh resigned his position as principal in December 2017.

126.    Plaintiff became emotionally withdrawn and alienated from her peers, sports, and classes.

127.    On multiple occasions, Plaintiff was unable to attend school because she was so depressed.

128.    Plaintiff was the subject of ridicule and bullying as a result of Defendant Cavanaugh's inappropriate relationship with her.

129.    Plaintiff turned 18 on January 3, 2018.

130.    Plaintiff began seeing a counselor on April 23, 2018.

131.    Plaintiff graduated high school in the spring of 2018.

132.    Plaintiff's counselor diagnosed her with adjustment disorder, social anxiety, and worsened depression as a direct result of the emotionally traumatic relationship with Defendant Cavanaugh.

133.    As a result of Defendants' actions, Plaintiff has suffered damages, including, but not limited to, severe emotional distress and other damages.

## COUNTS OF THE COMPLAINT

### -COUNT I-
### VIOLATION OF TITLE IX
### (AGAINST DEFENDANTS MSAD 40/RSU 40 and MEDOMAK VALLEY HIGH SCHOOL)

134.    Plaintiff hereby restates and incorporates each paragraph of this Complaint as if fully stated herein.

135.    MSAD 40/RSU 40 and Medomak Valley High School receive federal financial assistance.

136.    Title IX provides that "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program receiving Federal financial assistance." 20 U.S.C. § 1681(a).

137.    Defendant MSAD 40/RSU 40 and Medomak Valley High School have a policy prohibiting sexual harassment of students.

138.    Throughout Plaintiff's junior and senior year, she was subjected to daily sexual harassment and discrimination by Defendant Cavanaugh.

139.    Defendant Cavanaugh, as principal and school official, had the authority to institute corrective measures to protect Plaintiff and failed to do so.

140.    Defendant Nguyen, the social worker and mandatory reporter, had a duty to report Plaintiff's complaints to the School Department and had authority to institute corrective measures to protect Plaintiff, and failed to do so.

141.    MSAD 40/RSU 40 and Medomak Valley High School, through their agents, Defendant Cavanaugh and Defendant Nguyen, were aware of Defendant Cavanaugh's sexual harassment of Plaintiff, and acted with deliberate indifference toward Plaintiff.

142.    As a direct and proximate result of Defendant MSAD 40/RSU 40 and Medomak Valley High School's deliberate indifference to Defendant Cavanaugh's sexual harassment and discrimination against Plaintiff, Plaintiff has suffered damages in an amount to be determined at trial, plus cost of suit.

143.    Plaintiff seeks her attorneys' fees under 42 U.S.C. § 1988.

**-COUNT II-**
**VIOLATION OF 20 U.S.C. § 1983**
**(ALL DEFENDANTS)**

144.    Plaintiff hereby restates and incorporates each paragraph of this Complaint as if fully stated herein.

145.    Section 1983 of Title 42 prohibits a person acting under color of state law from depriving any other person of any rights, privileges or immunities secured by the United States Constitution.

146.    Defendant Cavanaugh deprived Plaintiff of her rights by, among other acts and omissions, his failure to abide by laws preventing harassment and discrimination against students in schools.

147.    Defendant Nguyen deprived Plaintiff of her rights by, among other acts and omissions, his failure to protect Plaintiff when she complained about sexual harassment and discrimination by Defendant Cavanaugh.

148.    Defendants MSAD 40/RSU 40 and Medomak Valley High School deprived Plaintiff of her rights by, among other acts and omissions, their failure to follow, apply, or

enforce laws preventing harassment and discrimination in schools, and their failure to adequately train or supervise employees about their obligation to properly investigate and address incidents of sexual harassment in public schools.

149.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered damages in an amount to be determined at trial, plus costs.

150.    Plaintiff seeks her attorneys' fees under 42 U.S.C. § 1988.

**COUNT III:**
**NEGLIGENT HIRING, TRAINING AND SUPERVISION**
**(AGAINST DEFENDANT MSAD 40/RSU 40 AND MEDOMAK VALLEY HIGH**
**SCHOOL)**

151.    Plaintiff hereby restates and incorporates each paragraph of this Complaint as if fully stated herein.

152.    Defendants MSAD 40/RSU 40 and Medomak Valley High School have a duty to adequately investigate, train, and supervise their employees so as to protect their students from harm caused by unfit and dangerous individuals hired to work in the School District.

153.    Defendants MSAD 40/RSU 40 and Medomak Valley High School knew or should have known before the School District hired Defendant Cavanaugh that he was unfit to be a principal of Medomak Valley High School .

154.    Defendants MSAD 40/RSU 40 and Medomak Valley High School had a duty to train and educate their employees, including Defendant Cavanaugh and Defendant Nguyen, on their sexual harassment policy and inappropriate boundary crossing with students.

155.    Defendants MSAD 40/RSU 40 and Medomak Valley High School were negligent in their hiring, training and/or supervision of Defendant Cavanaugh and Defendant Nguyen, which negligence was a proximate cause of Plaintiff's injuries.

156.    Defendants MSAD 40/RSU 40 and Medomak Valley High School failed to provide their employees with adequate, appropriate, and necessary policies, training, and supervision in regard to appropriate student-teacher relationships.

157.    Defendants MSAD 40/RSU 40 and Medomak Valley High School recklessly and negligently failed to implement and/or enforce policies and procedures aimed at preventing or detecting harassment of their students.

158.    Had Defendants MSAD 40/RSU 40 and Medomak Valley High School adequately performed their duties and responsibilities, Plaintiff would not have been subjected to sexual harassment and discrimination.

159.    As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

**-COUNT IV-**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(ALL DEFENDANTS)**

160.    Plaintiff hereby restates and incorporates each paragraph of this Complaint as if fully stated herein.

161.    At all times material to this Complaint, Defendant Cavanaugh was the principal of Medomak Valley High School, and he used this position to gain Plaintiff's trust and friendship.

162.    Defendant Cavanaugh, acting with knowledge of his superior position and his special relationship with Plaintiff, and realizing Plaintiff's special susceptibility to emotional distress due to Plaintiff's age, inexperience, and vulnerability, commenced a course of flattery and favoritism toward Plaintiff so that he could ultimately harass her.

163.    Defendant Cavanaugh's actions of sexually harassing Plaintiff on a daily basis, including persistently sending her sexually explicit messages, while she was at school, at work,

at home, and with friends and family members, were intentional, willful, oppressive and malicious, and were intended to cause emotional distress to Plaintiff.

164.    Defendant Cavanaugh's actions were extreme, outrageous, beyond the bounds of decency and utterly intolerable in a civilized society.

165.    At all times material to this Complaint, Defendant Nguyen was the social worker at Medomak Valley High School.

166.    After Plaintiff voiced her concerns about Defendant Cavanaugh's conduct directly to Defendant Nguyen, Defendant Nguyen intended to cause, or at least should have known that his actions would cause, emotional distress when he failed to protect Plaintiff from Defendant Cavanaugh by assuring Plaintiff that Defendant Cavanaugh's inappropriate actions were not inappropriate.

167.    Defendant MSAD 40/RSU 40 and Medomak Valley High School intended to cause, or at least should have known that their actions would cause, emotional distress to Plaintiff when they failed to protect her from the malicious, oppressive, and willful advances of Defendant Cavanaugh, the principal of the school.

168.    As a direct result of Defendants' actions, Plaintiff has suffered severe emotional distress and has suffered damages in an amount to be determined at trial.

### -COUNT V-
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (ALL DEFENDANTS)

169.    Plaintiff hereby restates and incorporates each paragraph of this Complaint as if fully stated herein.

170.    Defendant MSAD 40/RSU 40 and Medomak Valley High School, the School District, owed a duty to protect Plaintiff from sexual harassment and discrimination.

171.    Defendant Cavanaugh, the principal of Medomak Valley High School, owed a duty to protect Plaintiff from sexual harassment and discrimination.

172.    Defendant Nguyen, the social worker at Medomak Valley High School, owed a duty to protect Plaintiff from sexual harassment and discrimination.

173.    Defendants breached that duty of care by their negligent conduct.

174.    As a result of Defendants' actions, Plaintiff has suffered severe emotional distress, resulting in adjustment disorder and social anxiety, and and other damages.

**COUNT VI:**
**NEGLIGENCE**
**(DEFENDANT NGUYEN AND DEFENDANT CAVANAUGH)**

175.    Defendant Nguyen is a social worker at Medomak Valley High School.

176.    Defendant Nguyen has a duty to protect students, including Plaintiff, from sexual harassment and discrimination.

177.    Plaintiff reported Defendant Cavanaugh's inappropriate behavior to Defendant Nguyen.

178.    Defendant Nguyen breached his duty to Plaintiff by, among other things, advising Plaintiff that Defendant Cavanaugh's behavior was normal, and thus encouraging her to continue the relationship.

179.    As a direct and proximate result of Defendant Nguyen's negligence, Plaintiff suffered damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

Plaintiff prays that this Honorable Court award a judgment in her favor and against the Defendants, for the following relief:

1.    Compensatory and consequential damages;

2.       Costs and expenses of this action;

3.       Attorneys' fees;

4.       Prejudgment and post-judgment interest; and

5.       Such further relief as the Court deems fair and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on every claim so triable.


Respectfully submitted,

Adrianna Wadsworth

By her attorneys,


Dated:  12/26/2019                    _____/s/ Eric R. LeBlanc*_____
                                      Eric R. LeBlanc (BBO# 666786)
                                      eleblanc@bennettandbelfort.com
                                      Bennett & Belfort, P.C.
                                      24 Thorndike Street, Suite 300
                                      Cambridge, MA 02141
                                      (617) 577-8800

                                      *Pro Hac Vice Application Forthcoming


                                      _____/s/ Rachel J. Deschuytner_____
                                      Rachel J. Deschuytner
                                      ME Bar Number 005427
                                      Rachel@mdmelaw.com
                                      McKenna Deschuytner, PLLC
                                      477 Congress Street, 5th Floor
                                      Portland, ME 04101
                                      (207)523-3442