UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ADRIANNA WADSWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:19-cv-00577-JAW |
| | ) | |
| MAINE SCHOOL ADMINISTRATIVE | ) | |
| DISTRICT 40/REGIONAL SCHOOL | ) | |
| UNIT 40 et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANT CHUCK NGUYEN'S MOTION TO DISMISS**

A former high school student brought a lawsuit against a school district, a school principal, and a school social worker stemming from sexual harassment she alleged the school principal committed against her while she was a high school student. The plaintiff's claims against the social worker are grounded on violations of 42 U.S.C. § 1983 and state tort claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. The social worker seeks to dismiss the § 1983 claim on the grounds that the plaintiff fails to state an actionable claim because her state-created danger theory does not apply, she did not allege the necessary facts for a direct equal protection claim, and the § 1983 claims cannot be premised upon vicarious liability. He also claims that qualified immunity protects him and he seeks to dismiss the tort claims on the ground that discretionary function immunity prohibits liability as a matter of law.

The Court concludes that the plaintiff alleged a viable substantive due process claim under § 1983 but not a viable equal protection claim and that qualified

immunity does not require a dismissal on the substantive due process claim at this point in the litigation. The Court further concludes that discretionary function immunity does not require dismissal of the state tort claims at this stage. The Court anticipates revisiting these issues upon the completion of discovery in the context of a motion for summary judgment.

## I.   PROCEDURAL HISTORY

On December 27, 2019, Adrianna Wadsworth[1] filed suit against Maine School Administrative District 40/Regional School Unit 40 (MSAD 40/RSU 40), Medomak Valley High School, Andrew Cavanaugh, and Chuck Nguyen. *Compl.* (ECF No. 1). She alleged a violation of 20 U.S.C. § 1681(a) (Title IX)[2] and negligent hiring, training, and supervision against MSAD 40/RSU 40 and Medomak Valley High School, brought claims under 42 U.S.C. § 1983 and common law tort and statutory claims of intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED) against all the Defendants, and brought a negligence claim against Mr. Cavanaugh and Mr. Nguyen. *Id.* ¶¶ 134-179. On February 7, 2020, Mr. Cavanaugh answered the Complaint. *Def., Andrew Cavanaugh's Answer to Pl.'s Compl. and Demand for Jury Trial* (ECF No. 11). On March 11, 2020,

---

[1]    Ms. Wadsworth brought this lawsuit in her own name rather than under a pseudonym such as Jane Doe. Though a balancing of factors is required, a victim of sexual harassment or sexual assault—especially a minor at the time of the offense—often has a privacy interest sufficient to proceed under a pseudonym. *See, e.g., Doe v. Reg'l Sch. Unit No. 21*, Docket No. 2:19-00341-NT, 2020 WL 2833248, at 1-4 (D. Me. May 29, 2020) (*Doe*); *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). However, as an adult, Ms. Wadsworth has an equal right to bring the action under her own name.

[2]    Ms. Wadsworth's Title IX claim runs only against MSAD 40/RSU 40. *Am. Compl.* ¶¶ 156-72. Ms. Wadsworth "is not pursuing any Title IX claims against any of the individuals, nor could she." *Doe v. Pawtucket Sch. Dep't*, No. 19-1458, 2020 U.S. App. LEXIS 24859, at *17 (1st Cir. Aug. 6, 2020) (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641 (1999)).

MSAD 40/RSU 40 and Medomak Valley High School filed a motion to dismiss counts one and two of the Complaint. *Def. MSAD 40/RSU 40's Mot. to Dismiss Counts I and II of Compl.* (ECF No. 12). On the same day, Mr. Nguyen filed an answer to the Complaint. *Answer and Affirmative Defenses to Compl. and Jury Trial Demand (Def. Chuck Nguyen)* (ECF No. 13) (*Nguyen's Answer*).

On March 27, 2020, Ms. Wadsworth filed an amended complaint, dropping Medomak Valley High School as a defendant. *Pl.'s Am. Compl. and Demand for Jury Trial* (ECF No. 15) (*Am. Compl.*). On April 14, 2020, Mr. Cavanaugh filed an answer to the Amended Complaint. *Def., Andrew Cavanaugh's Answer to Pl.'s Am. Compl. and Demand for Jury Trial* (ECF No. 17). On May 8, 2020, MSAD 40/RSU 40 filed a motion to dismiss counts one and two of the Amended Complaint, and on May 11, 2020, MSAD 40/RSU 40 withdrew its first motion to dismiss. *Def. MSAD 40/RSU 40's Mot. to Dismiss Counts I and II of First Am. Compl.* (ECF No. 21);[3] *Def. MSAD 40/RSU 40's Withdrawal of Mot. to Dismiss as Moot* (ECF No. 22).

On April 10, 2020, Mr. Nguyen filed a motion to dismiss the Amended Complaint. *Def. Chuck Nguyen's Mot. to Dismiss Am. Compl.* (ECF No. 16) (*Nguyen's Mot.*). Ms. Wadsworth filed a response on May 15, 2020. *Opp'n of Pl., Adrianna Wadsworth, to Def. Chuck Nguyen's Mot. to Dismiss for Failure to State Claim* (ECF No. 24) (*Pl.'s Opp'n*). On June 5, 2020, Mr. Nguyen filed his reply. *Reply Mem. of*

---

[3]     While the docket entry for this filing includes Medomak Valley High School in the description, MSAD 40/RSU 40 filed this motion alone because the Amended Complaint terminated Medomak Valley High School as a defendant. *See Am. Compl.* ¶¶ 1-5.

*Law in Supp. of Def. Chuck Nguyen's Mot. to Dismiss Am. Compl.* (ECF No. 30) (*Nguyen's Reply*).

## II.    FACTS[4]

### A.    The Parties

Adrianna Wadsworth is a twenty-year old female who resides in Sydney, Maine. *Am. Compl.* ¶¶ 1, 8. She was a student at Medomak Valley High School, part of MSAD 40/RSU 40, from 2014 through her graduation in June 2018. *Id.* ¶ 9.

MSAD 40/RSU 40 is a school district which encompasses five towns in Maine: Friendship, Union, Waldoboro, Warren, and Washington. *Id.* ¶ 2. It operates and controls Medomak Valley High School in Waldoboro, Maine. *Id.* ¶ 3. MSAD 40/RSU 40 is a public entity within the meaning of Title IX and § 504 because it is a recipient of federal funding under applicable programs. *Id.*

Andrew Cavanaugh is a resident of Maine who worked for MSAD 40/RSU 40 from 2003 through his resignation in December 2017. *Id.* ¶¶ 4, 12. He became principal of Medomak Valley High School in 2015. *Id.* ¶ 10.

---

[4]    Considering a motion to dismiss, a court "accept[s] all well-pleaded facts in the complaint as true . . . ." *Glik v. Cunniffe*, 655 F.3d 78, 79 (1st Cir. 2011) (quoting *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 36 (1st Cir. 2009)). A court also "construe[s] all reasonable inferences in favor of the plaintiff . . . ." *Sanchez*, 590 F.3d at 41 (quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008); *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)).

Ms. Wadsworth includes some facts in her response to the motion to dismiss not in the Amended Complaint. *See, e.g.*, *Pl.'s Opp'n* at 10 ("[Mr.] Nguyen received reports from other teachers of [Mr.] Cavanaugh's harassment of [Ms. Wadsworth]"). Mr. Nguyen objects to these statements as facts for the purposes of this motion to dismiss. *Nguyen's Reply* at 3-4. The Court did not include these added facts in its recitation of the facts in this Order.

Chuck Nguyen is a resident of Maine and was a social worker at Medomak Valley High School for all times relevant to this matter.  *Id.* ¶¶ 5, 13.

**B.    The Events**

Beginning in 2016, Ms. Wadsworth's junior year of high school, when she was sixteen years old, the principal, Andrew Cavanaugh, began paying special attention to her; he made sexually-based comments about her looks and clothing choices in front of students and staff members and purchased personal hygiene products and gave them to her in front of other teachers and students.  *Id.* ¶¶ 23-25.  Ms. Wadsworth reported the gifts to the school social worker, Chuck Nguyen, and asked whether it was "normal" for the principal to be giving her gifts.  *Id.* ¶¶ 26, 207.  Mr. Nguyen assured Ms. Wadsworth that Mr. Cavanaugh was being nice to her and that there was nothing inappropriate about the gifts.  *Id.* ¶ 27.

Subsequently, Mr. Cavanaugh advised Ms. Wadsworth that he was going to bring her to a medical examination.  *Id.* ¶¶ 28-29.  Ms. Wadsworth again approached Mr. Nguyen and asked whether it was appropriate for the high school principal to bring her to this appointment.  *Id.* ¶ 30.  Mr. Nguyen assured her that Mr. Cavanaugh was just trying to be a "father figure" to her.  *Id.*

 On another occasion, Mr. Cavanaugh advised Ms. Wadsworth that she should be on birth control.  *Id.* ¶ 31.  When this was brought up to Mr. Nguyen, he told Ms. Wadsworth that this was normal.  *Id.*

Mr. Nguyen's advice that Mr. Cavanaugh's behavior was normal encouraged her to continue the relationship with Mr. Cavanaugh.  *Id.* ¶ 207.  Throughout this

time period, Mr. Cavanaugh commented on Ms. Wadsworth's looks and clothing choices in front of Mr. Nguyen. *Id.* ¶ 41. Mr. Nguyen became aware of Mr. Cavanaugh's inappropriate behavior toward Ms. Wadsworth in 2016. *Id.* ¶ 32; *see also id.* ¶¶ 169, 206.

The Amended Complaint goes on to allege that Mr. Cavanaugh also sent Ms. Wadsworth text messages—including sexually explicit and inappropriate messages—on a regular basis, gave her a car and other gifts, and called her into his office on a regular basis, often causing her to miss class. *Id.* ¶¶ 33-36, 42-121, 129-42. He continued this behavior through November 3, 2017. *Id.* ¶ 142. In November 2017, a third party contacted the Waldoboro Police Department regarding the inappropriate relationship between Mr. Cavanaugh and Ms. Wadsworth and the school district put Mr. Cavanaugh on leave pending the results of the police investigation. *Id.* ¶¶ 143-44. In December 2017, Mr. Cavanaugh resigned his position as principal of Medomak Valley High School. *Id.* ¶ 147. Other than what Ms. Wadsworth specifically alleged she said to Mr. Nguyen about Mr. Cavanaugh, she does not allege that Mr. Nguyen was aware of Mr. Cavanaugh's text messaging to Ms. Wadsworth.

After the District placed Mr. Cavanaugh on leave, Mr. Nguyen called Ms. Wadsworth into his office and advised her that Mr. Cavanaugh had a drinking problem. *Id.* ¶ 145.

## C.    The Policies

MSAD 40/RSU 40 has a policy prohibiting "sexual harassment," a term defined in the policy as including but not limited to "unwelcome sexual advances, requests

for sexual favors, or pressure to engage in sexual activity, physical contact of a sexual nature, gestures, comments, or other physical, written, graphic, electronic or verbal conduct that is gender-based that interferes with a student's education." *Id.* ¶¶ 15-16. MSAD 40/RSU 40's Student Discrimination and Harassment Complaint Procedure provides that "[a]ny individual who believes that a student has been discriminated against or harassed should report their concern promptly to the building principal" and that "[s]chool staff will report possible incidents of discrimination or harassment of students to the building principal." *Id.* ¶ 17. The policy requires building principals to "promptly inform the Superintendent and the person(s) who is the subject of the complaint that a complaint has been received." *Id.* ¶ 18. It further states that a student may report instances of sexual harassment to the "police, the Maine Human Rights Commission and/or the federal office of Civil Rights." *Id.* ¶ 19. The policy outlining employee complaints of harassment and discrimination, which includes employees acting as third-party complainants, instructs complainants to report to "that person's immediate supervisor or the building principal, and that such person receiving the complaint must immediately report it to the Superintendent." *Id.* ¶¶ 20-22. The policy also allows an employee "to report complaints to the Maine Human Rights Commission and/or the federal office of Civil Rights." *Id.* ¶ 22.

## III.   THE PARTIES' POSITIONS

### A.   Chuck Nguyen's Motion to Dismiss

Mr. Nguyen moves for "dismissal with prejudice of all claims asserted against him in [Ms. Wadsworth's] Amended Complaint" pursuant to Federal Rule of Civil Procedure 12(b)(6).   *Nguyen's Mot.* at 1.   He outlines the allegations Ms. Wadsworth makes in her Amended Complaint that refer to him and the standard of review for Rule 12(b)(6) motions.   *Id.* at 1-4.   He then addresses the § 1983 claim and the tort claims.   *Id.* at 5-16.

#### 1.   Failure to Plead Viable Equal Protection Claim

Mr. Nguyen first discusses caselaw addressing sexual harassment claims under § 1983.   He states that "Ms. Wadsworth has not specified which rights, privileges or immunities secured by the Constitution or laws of the United States she claims were violated" but that "the First Circuit has indicated that sexual harassment claims can be maintained under Section 1983 as an equal protection violation."   *Id.* at 5 (citing *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 896 (1st Cir. 1988)). He lists the requirements for proving an equal protection claim, including selective treatment based on impermissible considerations, identification of "putative comparators," *id.* at 5-6 (quoting *Harron v. Town of Franklin*, 660 F.3d 531, 537 (1st Cir. 2011)), and "proof that the defendant acted with discriminatory purpose."   *Id.* at 6 (citing *Lipsett*, 864 F.2d at 896).

Moreover, according to Mr. Nguyen, "personal liability for an alleged equal protection violation cannot be based upon *respondeat superior.*"   *Id.* at 6 (emphasis in

original) (citing cases).  He discusses "supervisory liability," which he says attaches "if a person 'has created or overlooked a clear risk of future unlawful action *by a lower-echelon actor over whom he had some degree of control*,'" *id.* at 6-7 (emphasis in *Nguyen's Mot.*) (quoting *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999)), and asserts that "[t]he United States District Court for the District of Maine has rejected efforts to hold governmental officials liable absent allegations to establish that the official had some degree of control over the alleged primary violator or direct participant." *Id.* at 7 (citing *Edson v. Riverview Psychiatric Ctr.*, No. 1:16-cv-00079-JAW, 2017 WL 780787, at *45 (D. Me. Feb. 28, 2017)).  Mr. Nguyen then discusses *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3rd Cir. 1997), *abrogated on other grounds by Burlington Northern & Santa Fe Railway Company. v. White*, 548 U.S. 53 (2006), which he uses to argue that "a governmental employee who does not directly participate in alleged sexual harassment cannot be held liable for actions taken by a co-worker whom the employee does not supervise." *Nguyen's Mot.* at 7-8.

Mr. Nguyen asserts that "[b]ased on these legal tenets, Ms. Wadsworth fails to state a viable equal protection claim against" him because she "does not allege that Mr. Nguyen himself engaged in any of the alleged discriminatory actions or that he directed anyone to do so." *Id.* at 8-9.  He states that the Amended Complaint contains no factual allegation showing that Mr. Nguyen selectively treated Ms. Wadsworth based on her sex, that Ms. Wadsworth had putative comparators, that Mr. Nguyen acted "with the purpose of discriminating on the basis of sex," or that Mr. Nguyen "had any actual control or supervisory authority over Mr. Cavanaugh." *Id.* at 9.

### 2.    Qualified Immunity for the § 1983 Claim

Mr. Nguyen argues that, even if Ms. Wadsworth made sufficient allegations in her Amended Complaint to support her § 1983 claim, he is entitled to dismissal of the claim based on qualified immunity.  *Id.*  He lays out the "two-pronged inquiry" courts use when analyzing qualified immunity, focusing on the "clearly established" prong, *id.* at 9-11 (quoting *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014)), and asserts that "Ms. Wadsworth's allegations do not implicate clearly established law." *Id.* at 11.  He states that he has not located "any Supreme Court or First Circuit authority to support an equal protection claim based on sexual harassment against a governmental employee who does not himself or herself engage in any harassing conduct and when the alleged harassment is perpetrated by a co-worker who is not the governmental employee's subordinate." *Id.*  Instead, he contends, the Third Circuit's opinion in *Robinson* holds the opposite.  *Id.* at 12.  Further, according to Mr. Nguyen, a reasonable social worker would not understand what he did to be unlawful, in part because "reasonable minds could differ on the significance of the alleged events (which, as pleaded, lack details that would necessarily suggest that Ms. Wadsworth was the victim of sexual harassment) and whether they required a report or a warning." *Id.*  Mr. Nguyen concludes that "[i]n sum, a reasonable social worker could have understood that he or she would not violate Ms. Wadsworth's constitutional rights by refraining from making a report or issuing a warning." *Id.*

### 3.    Discretionary Function Immunity for State Tort Claims

Mr. Nguyen cites the Maine Tort Claims Act, 14 M.R.S. §§ 8101-8118, as providing "absolute tort immunity to governmental employees engaged in discretionary functions." *Id.* He quotes a Maine Supreme Judicial Court opinion laying out a four-party inquiry to distinguish discretionary from ministerial functions. *Id.* at 12-13 (quoting *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 426 (Me. 1987)). He says that "[o]n several occasions, the Law Court has applied *Darling* and the factors discussed in that case and has held that governmental officials engage in a discretionary function when they supervise other persons" and in support he cites several Maine Supreme Judicial Court cases. *Id.* at 13-14. He then discusses three Maine superior court cases about personal injuries to students that he says apply this reasoning to a governmental employee's supervision of students. *Id.* at 14-15.

Mr. Nguyen asserts that he "unquestionably had the lawful authority to provide services to students at a public high school" and that "providing services to students at a public high school necessarily involves the exercise of judgment by guidance counselors and social workers, including the discretionary assessment of whether a student may need assistance." *Id.* at 15 (citing 20-A M.R.S. § 4008-A). He argues that the situations Ms. Wadsworth alleged happened, including Ms. Wadsworth asking him if Mr. Cavanaugh's offer to drive her to a medical appointment, were appropriate and Mr. Cavanaugh's comment that she should be on birth control, "call[ed] for the exercise of evaluation and discretion . . .." *Id.* He states,

11

"Whether a school social worker should interpret the alleged events referenced above—separately or in the aggregate—as abuse or harassment by a school principal is a judgment call that a school social worker must be allowed to make without the threat of liability." *Id.* at 15-16. He adds that this conclusion aligns with the legislative intent of discretionary function immunity. *Id.* at 16.

## B.  Adrianna Wadsworth's Opposition

Ms. Wadsworth describes Mr. Nguyen's involvement in the alleged sexual harassment by Mr. Cavanaugh as "actively convinc[ing her], a child, that her school principal's misconduct was appropriate," "urg[ing her] to continue interacting with her harasser," and "actively interfer[ing] with [her] decision about whether to report [Mr.] Cavanaugh's hideous behavior" rather than "reporting the harassment to the Department of Health and Human Services (and perhaps the District Attorney) as he was statutorily required to." *Pl.'s Opp'n* at 1-2. She asserts that she has set forth a prima facie case for all counts of the Amended Complaint, Mr. Nguyen does not have "any sort of immunity from those claims," and Mr. Nguyen's decision to file his motion to dismiss after filing an answer to the original complaint is grounds to deny the motion from a procedural standpoint. *Id.* at 2. She then lays out the procedural and factual background of the case and her allegations. *Id.* at 2-4.

### 1.  Untimely Motion to Dismiss

Ms. Wadsworth contends that since nothing related to Mr. Nguyen changed from the Complaint to the Amended Complaint, Mr. Nguyen's decision to file a motion to dismiss rather than a restatement of his previous answer "is procedurally improper

and fatal to a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6)." *Id.* at 4. According to Ms. Wadsworth, "[i]f a defense is asserted in a motion to dismiss under Rule 12(b)(6), the motion must be lodged before an answer," and the right to assert the defense is revived after an amendment to a complaint only if the amended complaint contains new matter and the defendant objects to that new matter. *Id.* at 5. She says that Mr. Nguyen's "right to assert the defense of failure to state a claim existed at the time of [her] original Complaint" and that Mr. Nguyen "did not assert the available defense against the original Complaint in a motion," instead answering the Complaint and "wait[ing] until after [she] filed her Amended Complaint to launch the defense." *Id.* at 5-6.

### 2.   Valid § 1983 Claim

Ms. Wadsworth asserts that a court may dismiss a claim under Rule 12(b)(6) only if, on the facts alleged in the complaint, "the plaintiff cannot recover on any viable theory." *Id.* at 6 (citing *Gonzáles-Morales v. Hernández-Arencibia*, 221 F.3d 45, 48 (1st Cir. 2000)). She discusses the pleading requirements, which she views as liberal, and moves on to the requirements for valid § 1983 claim. *Id.* at 6-7. She claims that she "has clearly stated a potentially viable 'state-created danger' claim" and that her "equal protection claims also contain enough heft to get beyond the liberal standards of a motion to dismiss." *Id.* at 7.

### a.   State-Created Danger Claim

According to Ms. Wadsworth, "[Mr.] Nguyen is liable under a 'state-created danger' theory (i.e. substantive due process) for depriving [Ms. Wadsworth] of her

right to be free from intrusions into her bodily integrity and her right to receive a
public education." *Id.* She outlines her view of the state-created danger theory in the
First Circuit and other circuit courts, stating that at least eight federal circuit courts
have recognized the theory and the First Circuit "has discussed [its] possible
existence." *Id.* at 7-8 (quoting *Irish v. Maine*, 849 F.3d 521, 526 (1st Cir. 2017)). She
alleges that Mr. Nguyen caused additional danger beyond Mr. Cavanaugh's actions
by "repeatedly over the course of two years fail[ing] to make a mandatory report to
Maine's Department of Health and Human Services or the District Attorney pursuant
to the Maine Child and Family Services and Child Protection Act, 22 M.R.S.A. § 4000
et seq." and instead "encouraging [her] to continue her interactions with [Mr.]
Cavanaugh on countless occasions over the course of two years." *Id.* at 8-9. She cites
*Irish v. Fowler*, 436 F. Supp. 3d 362 (D. Me. 2020), for the rule that "'a degree and
pattern of inaction' can 'rise to the level of an affirmative act'" and says that Mr.
Nguyen's inaction and encouragement not to act qualify as an affirmative act under
this logic. *Id.* at 9 (citing *Fowler*, 436 F. Supp. 3d at 417).

In Ms. Wadsworth's opinion, given the high burden on the plaintiff of showing
that the state action shocks the conscience, discovery is necessary to develop the facts
surrounding her state-created danger theory. *Id.* at 9-10. Nonetheless, she compares
this case to a First Circuit case and argues that Mr. Nguyen's "decision not to report
known sexual harassment in accordance with Maine law, despite knowing that a
child (who was particularly vulnerable due to her age) had been repeatedly sexually

14

harassed by her principal, is sufficiently conscience-shocking to survive a motion to dismiss." *Id.* at 10-11 (discussing *J.R. v. Gloria*, 593 F.3d 73 (1st Cir. 2010)).

Ms. Wadsworth also mentions a second exception to the general rule that a state has no due process obligation to protect individuals: the creation of a "special relationship." *Id.* at 8 n.2 (quoting *J.R.*, 593 F.3d at 79). She says "[t]he First Circuit has recognized the possibility that 'perhaps in narrow circumstances' a school or school employees might have a 'specific duty' to render aid to a student in peril," *id.* (quoting *Hasenfus v. LaJeunesse*, 175 F.3d 68, 72 (1st Cir. 1999)), and submits that Mr. Nguyen's special relationship to Ms. Wadsworth as her social worker is one of those "narrow circumstances." *Id.*

### b.    Equal Protection Claim

Ms. Wadsworth lays out her view of the basic requirements of an equal protection claim brought under § 1983, which mostly matches Mr. Nguyen's. *Id.* at 11-12. She distinguishes this case from *Robinson*, stating that she was a minor student and a client of Mr. Nguyen's rather than his coworker. *Id.* at 13. She asserts that Mr. Nguyen "failed to comply with school policies and procedures when faced with [her] complaints about [Mr.] Cavanaugh" and that he "participated in the discrimination" rather than merely advising her not to act. *Id.* Addressing the equal protection claim requirements, Ms. Wadsworth argues that "[Mr.] Nguyen treated [her] differently than similarly situated female students in the school as he actively participated in the discrimination." *Id.* at 14. She adds that "[i]t is inconceivable that [Mr.] Nguyen could have heard [her] complaints against [Mr.] Cavanaugh and

concluded that [Mr.] Cavanaugh's actions were appropriate" and that "[i]n sum, [Mr.] Nguyen's actions served to reaffirm [Mr.] Cavanaugh's harassment, and that is a black letter violation of the law." *Id.* Finally, she asserts, "[t]here is no scenario in which [Mr.] Nguyen could have possibly been furthering an important governmental objective by protecting [Mr.] Cavanaugh and advising [Ms. Wadsworth] that [Mr.] Cavanaugh was 'being nice' and acting like a 'father figure' to her." *Id.*

### 3. Qualified Immunity for § 1983 Claim

Ms. Wadsworth first contends that Mr. Nguyen's argument that he should be entitled to qualified immunity for his actions failed because he "was not performing a discretionary function" when he advised her. *Id.* She then lays out the two-part test for qualified immunity and argues that "[a] reasonable person in [Mr.] Nguyen's position would have known that [Mr.] Cavanaugh's actions were violating [her] constitutional rights, and that attempting to normalize and encourage the behavior was a furtherance of that violation," especially considering "the school's sexual harassment policies and Maine's mandatory reporting statutes." *Id.* at 15. According to Ms. Wadsworth, these facts are "enough to defeat a claim of qualified immunity, especially at the motion to dismiss stage of the litigation." *Id.* at 15-16.

### 4. Discretionary Function Immunity for State Tort Claims

Ms. Wadsworth argues that Mr. Nguyen's statements to her "were outside the scope of his employment, and therefore do not qualify for discretionary function immunity." *Id.* at 17. She asserts that his job duties required him to "spend at least 80% of his 'time providing direct and indirect services on behalf of students'" but "did

16

not require or allow him to protect his colleagues from accusations of sexual harassment and discrimination at the expense of the students" or "to interfere with [Ms. Wadsworth's] decision to report what was without doubt inappropriate sexual harassment by a principal." *Id.* According to Ms. Wadsworth, since Mr. Nguyen chose not to offer her assistance and support, "any claim of immunity is defeated." *Id.* at 18. She adds that "[t]here were many ways that [Mr.] Nguyen could have responded or reacted which would have been in the scope of his discretionary duties as a social worker, including but not limited to investigating the complaint, reporting the complaint, or making the determination that a formal complaint was not appropriate," but "[h]e did none of these things, instead brushing off disturbing behavior and reassuring a child that a principal should be advising a student about the need for birth control." *Id.* She suggests that Mr. Nguyen may have felt that doing so was one his duties as Mr. Cavanaugh's friend and that doing so even after Mr. Cavanagh was suspended was "just the proverbial icing on the cake." *Id.* at 19.

Ms. Wadsworth then places her position within the *Darling* framework:

(1) [Mr.] Nguyen's statements to [Ms. Wadsworth] that [Mr.] Cavanaugh was "being nice," and acting as a "father figure," and that his behavior was "normal," did not involve a basic governmental policy, program or objective; (2) [Mr.] Nguyen's statements were not essential to realization of any policy, program, or objective; (3) [Mr.] Nguyen's statements did not require the exercise of basic policy evaluation, judgment, and expertise; and (4) [Mr.] Nguyen did not possess the requisite constitutional, statutory, or lawful authority and duty to do or make the statements to [Ms. Wadsworth]. In fact, [Mr.] Nguyen's response to [Ms. Wadsworth's] complaints was squarely contradictory to the school's sexual harassment policy and black letter Maine law, and therefore does not qualify for discretionary function immunity.

17

*Id.* She concludes that "[a] reasonable person in [Mr.] Nguyen's position would have realized that [his actions] w[ere] outside the scope of his job duties" and that the Court should deny his claim of discretionary function immunity. *Id.* at 20.

### C.     Chuck Nguyen's Reply

Mr. Nguyen asserts that "[s]tripped of the[] new and unfounded contentions, [Ms. Wadsworth's] Opposition fails to rebut the arguments in the Motion" and that his motion is "both procedurally appropriate and substantively correct . . .." *Nguyen's Reply* at 1.

#### 1.     Timely Motion to Dismiss

Mr. Nguyen says that Ms. Wadsworth's procedural objection to his motion to dismiss is "unfounded" because he raised the same affirmative defenses in his answer to the Complaint and filed the motion to dismiss within fifteen days after Ms. Wadsworth filed the Amended Complaint. *Id.* He adds that "none of the cases [Ms. Wadsworth] has cited are germane to the procedural posture" of his motion. *Id.* at 2. Regardless, Mr. Nguyen asserts, he "is free to move for judgment on the pleading on the grounds that [Ms. Wadsworth] has failed to present cognizable causes of action" under Federal Rule of Civil Procedure 12(c), so "even if [Ms. Wadsworth's] timeliness argument was supported by the rules or case law, the Court can treat Mr. Nguyen's motion as one made pursuant to Rule 12(c)." *Id.* at 2-3.

#### 2.     Added Allegations

Mr. Nguyen lists facts Ms. Wadsworth includes in her opposition that he views as "the most prominent untethered assertions" not mentioned in the Amended

Complaint, including that he encouraged Ms. Wadsworth to continue the relationship and that he received reports from other teachers about Mr. Cavanaugh's harassment. *Id.* at 3-4.  He says that "[t]he non-conclusory factual assertions that do appear in the Amended Complaint consist of four alleged conversations between [Ms. Wadsworth] and Mr. Cavanaugh and an indefinite number of unspecified comments by Mr. Cavanaugh 'on [Ms. Wadsworth's] looks and clothing choices in front of teachers, students, assistant principals, and [Mr.] Nguyen.'"  *Id.* at 4 (quoting *Am. Compl.* ¶ 41) (citing *Am. Compl.* ¶¶ 26-27, 30, 31, 145).

### 3.    State-Created Danger Theory

Mr. Nguyen argues that Ms. Wadsworth "fails to even clear the low bar of notice pleading" regarding her state-created danger argument because she does not mention it or related terms in the Amended Complaint.  *Id.*  "In any event," he states, "the theory is inapplicable to the non-conclusory factual assertions in the Amended Complaint" because the claim demonstrates nothing more than alleged inaction by Mr. Nguyen and the United States Supreme Court rejected this theory of state-created danger in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).  *Id.* at 4-5.  He notes that, although Ms. Wadsworth suggests that a pattern of inaction can give rise to a constitutional duty under the Due Process Clause, "the First Circuit has not adopted such a rule, nor did [Ms. Wadsworth] cite any cases that would suggest that Mr. Nguyen's alleged conduct would be sufficient to satisfy such a rule."  *Id.* at 5 n.6.  He adds that his alleged responses "can hardly be characterized as 'shocking to the conscience,' regardless of whether the deliberate

indifference standard applies or not." *Id.* at 5-6 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002)). Mr. Nguyen also addresses Ms. Wadsworth's discussion of the "special relationship" duty and rejects its application to the context of this case because Ms. Wadsworth was not in the school's custody. *Id.* at 6.

### 4.   Discretionary Function Immunity

According to Mr. Nguyen, Ms. Wadsworth's argument pertaining to Mr. Nguyen's Maine Tort Claims Act immunity is "unpersuasive" because "[m]ost of [Ms. Wadsworth's] argument . . . is premised upon allegations that do not appear in the Amended Complaint or assertions that are both conclusory and speculative." *Id.* at 7.  He further argues that "to the extent the alleged discussions between [Ms. Wadsworth] and Mr. Nguyen actually occurred, that conduct unquestionably occurred within the scope of his employment" because he was the social worker at Medomak Valley High School at the time.  *Id.*  Finally, he asserts that his "alleged responses to [Ms. Wadsworth's] alleged queries were necessarily the product of a discretionary assessment" because they were reactions that required evaluation before response.  *Id.*  He says that "[e]ven if Mr. Nguyen's alleged assessments and his subsequent reactions were flawed (as [Ms. Wadsworth] suggests), they are nonetheless part of Mr. Nguyen's discretionary duties" and that "[t]he Maine Law Court has repeatedly held that persons making analogous types of evaluations are protected by discretionary function immunity." *Id.* (citing cases).

## IV.   LEGAL STANDARD

Rule 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted . . .." FED. R. CIV. P. 12(b)(6).  To state a claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief . . .." FED. R. CIV. P. 8(a)(2).  In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)).  This is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

Analyzing plausibility is a "two-step analysis . . .." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015).  "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676, F.3d 220,

224 (1st Cir. 2012)).  "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

## V.  DISCUSSION

Mr. Nguyen's motion to dismiss turns on whether (1) it is timely, (2) Ms. Wadsworth alleged an actionable substantive due process or equal protection claim under § 1983 in her Amended Complaint, (3) qualified immunity protects Mr. Nguyen from Ms. Wadsworth's § 1983 claim, and (4) discretionary function immunity protects Mr. Nguyen against Ms. Wadsworth's state tort claims.

### A.    Timeliness of Mr. Nguyen's Motion to Dismiss

Ms. Wadsworth and Mr. Nguyen disagree about whether Mr. Nguyen's motion to dismiss should be denied as untimely pursuant to Federal Rule of Civil Procedure 12(b)(6) because he filed an answer to the original Complaint—which preserved the defenses in the motion to dismiss—before filing the motion to dismiss and nothing related to Mr. Nguyen changed from the Complaint to the Amended Complaint.  *Pl.'s Opp'n* at 4-6; *Nguyen's Reply* at 1-2.  Mr. Nguyen adds that Rule 12(c) allows him to argue the same defenses in a motion for judgment on the pleadings, so "even if [Ms. Wadsworth's] timeliness argument was supported by the rules or case law, the Court can treat Mr. Nguyen's motion as one made pursuant to Rule 12(c)."  *Id.* at 2-3 (citing *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008)).

"A motion asserting [failure to state a claim upon which relief can be granted] must be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b)(6)).  However, the District of Maine "has permitted late-filed motions to dismiss raising Rule 12(b) grounds, so long as those grounds have been preserved in the defendant's answer." *Daigle v. Stulc*, Civ. No. 09-353-B-W, 2009 WL 4348393, at *2 (D. Me. Nov. 24, 2009) (citing *Ecotecture, Inc. v. Wenz*, No. 99-387-P-C, 2000 WL 760961, at *1 (D. Me. May 16, 2000)).  Since Mr. Nguyen raised the affirmative defense of failure to state a claim in his answer, *Nguyen's Answer* ¶¶ 7, 9, he preserved the defense and may proceed with his motion on Rule 12(b)(6) grounds. The Amended Complaint filed between Mr. Nguyen's answer and his motion to dismiss does not affect this principle.

In addition, the Amended Complaint did not contain any new allegations against Mr. Nguyen. *Pl.'s Opp'n* at 1 ("On March 27, 2020, [Ms. Wadsworth] filed her Amended Complaint, in which she did not add or otherwise change her claims against [Mr.] Nguyen in consideration of his prior Answer").  Also, Mr. Nguyen filed the motion to dismiss within the time required to file an answer to an amended pleading under Federal Rule of Civil Procedure 15(a)(1)(B).  Finally, Ms. Wadsworth does not suggest any prejudice from the Court's consideration of Mr. Nguyen's motion, and from the Court's perspective, it is preferable to address the sufficiency of the complaint early in the litigation rather than dismiss the motion on technical grounds and revisit the same issues later under a different provision.

Finally, even if Mr. Nguyen could not proceed under Rule 12(b)(6), he would be allowed to proceed with his motion as a motion for judgment on the pleadings under Rule 12(c) and pursuant to Rule 12(h)(2).  *See Emrit v. Nat'l Grid, Inc.*, CIVIL ACTION No. 14-14769-GAO, 2017 WL 2836998, at *1 & n.2 (D. Mass. June 29, 2017) (construing a Rule 12(b)(6) motion as a Rule 12(c) motion because the defendant filed an answer before filing the motion to dismiss and asserted the affirmative defense of failure to state a claim in its answer).  "Converting the grounds for a motion from Rule 12(b)(6) to Rule 12(c) 'does not affect [a court's] analysis inasmuch as the two motions are ordinarily accorded much the same treatment.'"  *Patrick v. Rivera-Lopez*, 708 F.3d 15, 18 (1st Cir. 2013) (quoting *Apontes-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006)); *see also Pérez-Acevedo*, 520 F.3d at 29 ("A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss" (citing *Curran v. Cousins*, 509 F.3d 36, 43-44 (1st Cir. 2007))).  "There is, of course, a modest different between Rule 12(c) and Rule 12(b)(6) motions.  A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole."  *Apontes-Torres*, 445 F.3d at 54-55 (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2004))."  When the parties agree that the "source of the pertinent facts" is the amended complaint, however, this difference is irrelevant.  *Id.* at 55.  Thus, since the parties agree the Amended Complaint is the source of the pertinent facts, there would be no harm to either party to construe Mr. Nguyen's motion as a motion for judgment on the pleadings.  Thus, the Court could consider Mr. Nguyen's motion under either provision and the result would be the same.  In

light of the tonal differences between the rules, the Court accepts Mr. Nguyen's motion as a motion to dismiss.

### B.      Section 1983 Claim

Section 1983 provides that

> [e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983.  The deprivation prong requires there to be a deprivation of a federally protected right, privilege, or immunity and a causal connection between the conduct complained of and the deprivation.  *See Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989).  As Mr. Nguyen points out, § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Nguyen's Mot.* at 5 (internal quotation marks omitted) (citation omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 389-94 (1989)).  Moreover, the plaintiff must allege that "the perpetrator of the violation was acting under color of law."  *Cruz-Erazo v. Rivera-Montañez*, 212 F.3d 617, 621 (1st Cir. 2000).  Mr. Nguyen does not contest that he acted under color of law.  Thus, Ms. Wadsworth must point to a specific federal right, allege a deprivation of that right, and allege a causal connection to Mr. Nguyen's conduct.

### 1.      Substantive Due Process

Ms. Wadsworth identifies a federal right: the right to be free from intrusions into her bodily integrity.  *Pl.'s Opp'n* at 7; *see Doe v. Sch. Admin. Dist. No. 19*, 66 F.

Supp. 2d 57, 65 (D. Me. 1999) ("It is well recognized that students have a fundamental right to bodily integrity that includes the right to be free from sexual abuse").  She also establishes a deprivation of that right: Mr. Cavanaugh's "repeated, demanding sexual harassment . . . ."  *Pl.'s Opp'n* at 8.  Thus, the remaining question is whether she has alleged a causal connection between Mr. Nguyen's conduct and the deprivation of her right.

Ms. Wadsworth argues that "while [Mr.] Nguyen may not have perpetrated the harassment, the due process clause is nevertheless implicated" under a state-created danger theory because of his repeated failure to report the sexual harassment and his "perpetual and frequent normalization" of the behavior, which interfered with her decision to report Mr. Cavanaugh's conduct.  *Id.* at 8-9.  She asserts that more discovery is needed to develop the facts surrounding this theory of the case.  *Id.* at 9-10.  Mr. Nguyen responds that Ms. Wadsworth's claims "describe[] nothing more than alleged inaction" by him and the United States Supreme Court has rejected such a theory of state-created danger.  *Nguyen's Reply* at 5.[5]

---

[5]     Mr. Nguyen also argues that Ms. Wadsworth's state-created danger argument "fails to even clear the low bar of notice pleading" because she does not mention "the Fourteenth Amendment; the Due Process Clause; substantive due process; or 'state-created danger'" in the Amended Complaint. *Id.* at 4.  The Court disagrees.

In *Doe*, the federal district court in Maine found that "Doe adequately pleaded the state-created danger theory by alleging that the Defendants 'created an unreasonable risk of harm' that Doe would be deprived of his constitutional rights." *Doe*, 2020 WL 2820197, at *3 (quoting *Am. Compl.* ¶ 69, *Doe v. Reg'l Sch. Unit No. 21*, 2:19-cv-00341-NT (Nov. 15, 2019), ECF No. 27 (*Doe Am. Compl.*)).  The plaintiff in that case also alleged that the defendants "failed to take any action or implement any measures that would protect Plaintiff against further unlawful sexual misconduct by [the teacher]" and "failed to enforce [the school's] policies regarding staff conduct with students, harassment and sexual harassment of students, and investigations, and allowed [the teacher] continued unsupervised access to Plaintiff after being put on notice of her sexual misconduct." *Doe Am. Compl.* ¶ 22.  The *Doe* plaintiff mentioned substantive due process, *id.* ¶ 70, but did not mention the Fourteenth Amendment or use the term "state-created danger."  In *Fowler*, the plaintiffs alleged that the defendants' "failure to protect" "creat[ed] the danger to" the plaintiff but did not use the words "substantive due process,"

26

### a.       State-Created Danger Doctrine in the First Circuit

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . .." U.S. CONST. amend. XIV, § 1.  "As a general matter, 'a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" *Irish*, 849 F.3d at 525 (quoting *DeShaney*, 489 U.S. at 197).  This principle is not absolute: "[I]n situations in which there is a 'special relationship,' an affirmative, constitutional duty to protect may arise when the state 'so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs.'" *Rivera v. Rhode Island*,

---

"Fourteenth Amendment," or "state-created danger." *Fowler*, 1:15-cv-00503-JAW, *Second Am. Compl.* ¶ 43, (ECF No. 38).  In *Raymond v. Maine School Administrative District 6*, the plaintiffs alleged in the complaint that the school district "failed to train staff" adequately and that "in doing so, [the school district] created a danger, increased the danger, and/or made [the alleged victim] more vulnerable to the danger of being assaulted . . .." *Raymond*, 2:18-cv-00379-JAW, *Compl.* ¶¶ 52-53 (ECF No. 1).  The plaintiffs mentioned substantive due process but not the Fourteenth Amendment.  *Id.* ¶ 49.

Here, Ms. Wadsworth alleged that Mr. Nguyen "deprived [her] of her rights by, among other acts and omissions, his failure to protect [her] when she complained about sexual harassment and discrimination by [Mr.] Cavanaugh." *Am. Compl.* ¶ 176.  While she did not mention state-created danger, substantive due process, the Fourteenth Amendment, or the Due Process Clause, she stated within the § 1983 violation count that her claim against Mr. Nguyen stemmed from his failure to protect her, which deprived her of her rights.  Her allegations were less specific than those in the three cited complaints, but none of the complaints contains all the terms Mr. Nguyen lists.  Like Ms. Wadsworth's Amended Complaint, however, they all contain an allegation of failure to protect that causes the deprivation of constitutional rights.  Moreover, Ms. Wadsworth did not mention the Equal Protection Clause in the Amended Complaint either, but Mr. Nguyen has no issue interpreting her § 1983 claim as an equal protection violation claim.  *See Nguyen's Mot.* at 5 ("Ms. Wadsworth has not specified which rights, privileges or immunities secured by the Constitution or laws of the United States she claims were violated.  However, the First Circuit has indicated that sexual harassment claims can be maintained under Section 1983 as an equal protection violation").  The "failure to protect" language is more directly linked to a state-created danger theory under substantive due process than an equal protection violation.  Finally, since Ms. Wadsworth bases her state-created danger claim on the theory that a "degree and pattern of inaction" can "rise to the level of an affirmative act," *Pl.'s Opp'n* at 9 (quoting *Fowler*, 436 F. Supp. 3d at 417), the failure to protect is the crux of her argument.  Thus, the Court concludes that Ms. Wadsworth adequately pleaded the state-created danger theory for her substantive due process claim under § 1983 in the Amended Complaint.

402 F.3d 27, 34 (1st Cir. 2005) (quoting *DeShaney*, 489 U.S. at 200).[6] "The Supreme Court also suggested, but never expressly recognized, the possibility that when the state creates the danger to an individual, an affirmative duty to protect might arise . . .." *Id.* at 34-35.

The Courts of Appeals in at least eight circuits have recognized the "state-created danger theory" as an exception to the general rule in *DeShaney*. *Irish*, 849 F.3d at 526 (citing *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 n.1 (9th Cir. 2006)); *see also Doe*, 2020 WL 2820197, at *3. Yet, two federal circuits have explicitly refused to recognize such an exception. *See Johnson v. City of Biddeford*, 2:17-cv-00264-JDL, 2020 WL 1877964, at *9 (D. Me. Apr. 15, 2020) (citing *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004); *Vaughn v. City of Athens*, 176 F. App'x

---

[6]     Ms. Wadsworth's suggestion that her case fits within the "narrow circumstances" that might justify a school employee's constitutional duty to protect a student under the special relationship exception is unconvincing. *See* Pl.'s Opp'n at 8 n.2 (quoting *Hasenfus*, 175 F.3d at 72). The First Circuit has not explicitly recognized a special relationship in a school context. *See Rivera*, 402 F.3d at 34-35 (discussing the existence of the special relationship exception in certain situations, such as incarceration or custody, and not mentioning schools).
    In *Veronica Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995), the United States Supreme Court wrote that

> [t]raditionally at common law, and still today, unemancipated minors lack some of the most fundamental rights of self-determination . . .. They are subject . . . to the control of their parents or guardians. When parents place minor children in private schools for their education, the teachers and administrators of those schools stand *in loco parentis* over the children entrusted to them.

*Id.* at 655 (emphasis in original) (internal citation omitted). At the same time, quoting *Veronica*, the First Circuit recognized in *Hasenfus* that the authority public schools exercise over students does not "give rise to a constitutional 'duty to protect.'" *Hasenfus*, 175 F.3d at 71-72 (quoting *Veronica*, 515 U.S. at 655). In *Hasenfus*, the First Circuit discussed the possibility of "narrow circumstances" where a school official would have a due process obligation to act to protect a student, but it did not find such circumstances in that case. *Id.* at 72. Furthermore, the examples it listed where a constitutional duty to act might be found described school employees ignoring physical harm to students, such as a student suffering a heart attack or falling down an elevator shaft. *Id.* However Mr. Nguyen's actions or inactions are viewed, it is questionable whether they would fit within the definition of "pungent facts" that the First Circuit saw as necessary to hold a school official responsible for a constitutional violation, especially one based on a failure to act or whether Mr. Nguyen's counseling relationship to Ms. Wadsworth would be deemed a special relationship under First Circuit law. *See id.*

974, 976 n.1 (11th Cir. 2006)).  The First Circuit "has discussed the possible existence

of the state-created danger theory" but has "never found it applicable to any specific

set of facts," *Irish*, 849 F.3d at 526, and accordingly, the First Circuit has not yet

adopted or set out a detailed test for the theory.  *See Abdisamad v. City of Lewiston*,

960 F.3d 56, 60 (1st Cir. 2020); *Fowler*, 436 F. Supp. 3d at 414 n.148.  Even so, courts

in this district have applied First Circuit language discussing the theory in similar

cases:

> "Under a [state-created] danger theory, a plaintiff must show that a
> 'government employee, in the rare and exceptional case, affirmatively
> act[ed] to increase the threat of harm to the claimant or affirmatively
> prevent[ed] the individual from receiving assistance.'" [*Raymond v. Me.
> Sch. Admin. Dist. 6*, No. 2:18-cv-00379-JAW, 2019 WL 2110498, at *7
> (D. Me. May 14, 2019)] (quoting *Lockhart-Bembery v. Sauro*, 498 F.3d
> 69, 77 (1st Cir. 2007)).  Additionally, "the state actions must shock the
> conscience of the court."  *Irish*, 849 F.3d at 526 (citing [*Rivera*, 402 F.3d
> at 35]).

*Doe*, 2020 WL 2820197, at *3 (some alterations in original).  In short, assuming the

First Circuit would adopt the state-created danger theory, the plaintiff must show an

affirmative act on the part of a government employee that creates or increases the

danger to the plaintiff and that shocks the conscience of the Court.

The first prong, an affirmative act, is not further developed in the First Circuit.

The circuits that have adopted the state-created danger theory require either an

affirmative act or "a degree and pattern of inaction that rises to the level of an

affirmative act."  *Fowler*, 436 F. Supp. 3d at 417; *see also Johnson*, 2020 WL 1877964,

at *9 & n.12 (discussing this sentence from *Fowler* and noting that First Circuit cases

cited by plaintiffs' counsel "only reinforce the necessity of an affirmative act").  The

Court is unaware of a First Circuit case that adopts the rule that a pattern of inaction can rise to the level of an affirmative act in this context or examines the type of conduct that would qualify as a "pattern." The Second Circuit has held that "repeated, sustained inaction by government officials, in the face of potential acts of violence," might "ris[e] to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." *Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 428 (2d Cir. 2009) (quoting *Pena v. DePrisco*, 432 F.3d 98, 111 (2d Cir. 2005)); *see also Johnson*, 2020 WL 1877964, at *9 (citing *Okin* while analyzing the defendants' omissions in a state-created danger claim).

The second prong requires the plaintiff to "allege facts 'so extreme and egregious as to shock the contemporary conscience.'" *Abdisamad*, 960 F.3d at 59-60 (quoting *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005)). "Mere negligence would be insufficient to maintain a claim of substantive due process violation," *id.* (quoting *Irish*, 849 F.3d at 528); however, "[i]n situations where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to 'shock the conscience.'" *Rivera*, 402 F.3d at 36 (citing *Lewis*, 523 U.S. at 851-52).

In *Irish*, the First Circuit vacated this Court's grant of a motion to dismiss a § 1983 claim based on a state-created danger theory and remanded the case with instructions for further discovery. 849 F.3d at 525, 529. The First Circuit highlighted the lack of facts in the record about police procedure and training, what exactly the officers knew, and what actions they took before and after their affirmative act as

"pertinent to the substantive due process and qualified immunity issues." *Id.* at 527-28.

Since *Irish*, the federal district court in Maine has handled a number of motions to dismiss § 1983 claims premised on the state-created danger theory.[7]  In *Raymond*, this Court concluded that it was premature to dismiss the plaintiffs' § 1983 claim against a school district and school administrators on a motion to dismiss when the plaintiffs alleged that another student sexually assaulted their child, that the defendants were aware the other student had engaged in instances of sexual assault in the past and posed an imminent threat to the child, and that the defendants willfully disregarded the known risks and failed to prevent the assault.  2019 WL 2110498, at *8.  This Court discussed *Irish* and held that "a fuller development of the

---

[7]      Within the First Circuit but outside the District of Maine, district courts issued rulings on state-created risk cases.  In *Hootstein v. Amherst-Pelham Regional School Committee*, 361 F. Supp. 3d 94 (D. Mass. 2019), a federal judge in the District of Massachusetts declined to allow a state-created danger claim to go forward because the state-created danger theory does not extend to harm caused by third persons.  *Id.* at 110-11.  In *Barresi v. City of Boston*, 345 F. Supp. 3d 98 (D. Mass. 2018), a district judge granted a motion to dismiss a claim that was based on a state-created danger theory when the police failed to arrest a domestic abuser yet committed no affirmative act that caused the abuser to murder the victim.  *Id.* at *1-3.  In *Doe1 v. Bos. Pub. Schs.*, No. 17-cv-11653-ADB, 2018 WL 3336535 (D. Mass. Jul. 6, 2018) (*Doe1*), a federal trial judge granted motions to dismiss all claims but allowed the plaintiffs to amend their complaint that alleged school officials acted and failed to act to protect students from sexual assaults by other students.  *Id.* at *1-3.  The *Doe1* Court found the complaint devoid of any "detail at all from which to determine if there is any actionable conduct."  *Id.* at *3.  After the plaintiffs amended the complaint and the defendants filed new motions to dismiss, the *Doe1* Court found that the § 1983 claim of state-created danger narrowly survived the motions to dismiss because "[t]he affirmative acts of concealment and retaliation alleged in the Amended Complaint amount to more than just knowledge of [the alleged victim's] assaults or a failure to intervene" and "school officials' decision not to report known sexual assaults to DCF in accordance with Massachusetts law despite knowing that elementary school-aged children (who are particularly vulnerable due to their age) had been repeatedly assaulted is sufficiently conscience-shocking to survive a motion to dismiss."  *Doe1 v. Bos. Pub. Schs.*, No. 17-cv-11653-ADB, 2019 WL 1005498, at *3-5 (D. Mass. Mar. 1, 2019).  However, the *Doe1* Court dismissed the state-created danger claim against the individual school official because of qualified immunity.  *Id.* at *6-7.

facts [was] necessary" to determine what exactly the defendants knew and what policies or procedures, if any, they violated. *Id.* (citing *Irish*, 849 F.3d at 529).

Similarly, the Court in *Doe* denied a motion to dismiss in a case about sexual abuse of a student by a teacher, holding that allegations that the defendants were on notice of inappropriate conduct by a teacher, failed to reasonably investigate or initiate remedial action, failed to enforce policies designed to prevent sexual conduct, and permitted the teacher to have unsupervised access to the plaintiff after being put on notice supported a claim under a state-created danger theory. 2020 WL 2820197, at *3. The Court held that "more factual development [wa]s necessary to determine whether the actions of the Defendants increased the risk of harm to Doe and whether those actions constitute conscious-shocking behavior" but that "for the purposes of a motion to dismiss, the Plaintiff has stated a claim." *Id.* (citing *Irish*, 849 F.3d at 527-28).

In *McCann on behalf of J.M. v. York School Department*, 365 F. Supp. 3d 132 (D. Me. 2019), on the other hand, a District of Maine court granted a motion to dismiss a § 1983 claim based on a state-created danger theory, holding that the school department did not shock the conscience in its response to bullying which resulted in an assault. *Id.* at 137-39, 147. The Court stated that generally an act that shocks the conscience is both "'intended to injure in some way' and 'unjustifiable by any government interest,'" and the complaint "d[id] not allege that the School Department acted purposefully with an intent to injure" the plaintiff but rather alleged that the

school department "failed to take [the plaintiff's] reports of harassment seriously and to respond to threats by other students." *Id.* at 147.

In *Johnson*, a District of Maine court granted a motion for summary judgment and dismissed a § 1983 claim premised on a state-created danger theory. 2020 WL 1877964, at *10, 13. Given the First Circuit's discussion of the theory in *Irish*, the *Johnson* Court "assume[d] that the First Circuit will eventually adopt the 'state-created danger' exception" for the purposes of its analysis. *Id.* at *5. It held that the defendants' alleged failures to act did not qualify as affirmative acts for the purposes of the state-created danger exception. *Id.* at 9. In doing so, it quoted a District of Massachusetts case, *id.*, in which the court, in finding sufficient facts for a state-created danger claim, cautioned that "[f]ailing to defuse a preexisting danger is not an affirmative act under the [state-created danger] doctrine" and noted that if the further discovery did not reveal evidence of an affirmative act that enhanced the danger to the plaintiffs, the Court would revisit the finding on summary judgment. *Doe1*, 2019 WL 1005498, at *5. The Court also stated that "courts must be careful to distinguish between . . . state inaction and action." *Id.* (quoting *Rivera*, 402 F.3d at 36).

The First Circuit weighed in on the state-created danger theory most recently in *Abdisamad*. The Court affirmed a district court's grant of a motion to dismiss a claim based on this theory and distinguished *Irish* on the grounds that *Abdisamad* dealt with municipal, not individual, liability and that the plaintiff did not allege that the defendants' policies caused the death but that the death resulted from a failure

to follow those policies.  960 F.3d at 60.  The *Abdisamad* Court reiterated that the First Circuit still has not found the state-created danger theory applicable to any specific state of facts.  *Id.*

In summary, since *Irish*, courts in the District of Maine have hesitated to dismiss a § 1983 claim premised on a state-created danger theory at the Rule 12(b)(6) motion stage when discovery could provide more clarity on what actions the defendants took, if any, and how policies and procedures impact the "shock the conscience" determination.

### b.    Analysis

Ms. Wadsworth presents two bases for a state-created danger claim: Mr. Nguyen's "failure to report" Mr. Cavanaugh's sexual harassment and his "perpetual and frequent normalization" of such behavior.  *Pl.'s Opp'n* at 8.  When viewed together, the Court finds that Ms. Wadsworth has alleged sufficient facts to survive the motion to dismiss.

The first basis, failure to report, is similar to the plaintiffs' claim in *Raymond*, in which this Court denied a motion to dismiss a state-created danger claim.  In *Raymond*, the plaintiffs alleged that the defendants knew about the risk of one student to another student and failed to prevent the sexual assault.  2019 WL 2110498, at *8.  Here, viewing the facts in the light most favorable to Ms. Wadsworth and drawing reasonable inferences in her favor, Mr. Nguyen was aware of Mr. Cavanaugh's inappropriate behavior towards Ms. Wadsworth—both through her reports and through his own observations—and the imminent threat it posed to her.

34

Yet he failed to report the harassment or advise her to stop interacting with Mr. Cavanaugh, disregarding the risk and failing to prevent continued abuse by Mr. Cavanaugh. Mr. Nguyen's inaction went further. He failed to report for over a year, including at least three specific times after Ms. Wadsworth reported disturbing actions by Mr. Cavanaugh towards her, such as telling her to use birth control. This length of time may be enough to show a pattern of inaction that rises to the level of an affirmative act. *See Fowler*, 436 F. Supp. 3d at 417. If this case were only about a failure to act, however, the Court would be constrained by *Hasenfus* and *Abdisamad*, which counsel against holding a school official liable for a failure to act except in the most immediate and egregious circumstances.

The second basis, normalization of Mr. Cavanaugh's sexual harassment, provides a clearer argument for an affirmative act by Mr. Nguyen. As in *Doe*, where the Court found that the allegations supported a claim under a state-created danger theory "particularly where the Defendants' actions—permitting [the teacher] unsupervised access to the Plaintiff after the March investigation—may have exposed Doe to additional abuse," 2020 WL 2820197, at *3, Ms. Wadsworth has sufficiently alleged that Mr. Nguyen's active choice to make comments that diminished the seriousness of Mr. Cavanaugh's inappropriate behavior encouraged her not to report Mr. Cavanaugh to someone else and to continue her relationship with him, *see Am. Compl.* ¶ 207, and thus exposed her to additional improper conduct over the course of a year. Ms. Wadsworth was sixteen years old when she sought Mr. Nguyen's advice. She was being sexually harassed by the principal of her high school, and the

very person she was supposed to be able to trust—the school social worker—told her at least three times that her concerns were unfounded and that her abuser was being nice and acting like a "father figure." This action, coupled with Mr. Nguyen's failure to report Mr. Cavanaugh himself, plausibly increased Mr. Cavanaugh's access to Ms. Wadsworth to continue sexually harassing her for over a year by preventing an investigation and encouraging her to keep making herself available to him.

At this stage, the Court only has Ms. Wadsworth's allegations and no explanation from Mr. Nguyen as to why he failed to report Mr. Cavanaugh's actions or why he normalized them. Like *Irish*, the Court would benefit from the further development of underlying facts. To paraphrase *Irish*, the "record here is devoid of any facts on whether [Mr. Nguyen's] decision [not to report Mr. Cavanaugh and to actively minimize his conduct] . . . was in line with [school] protocol and [social worker] training." *Irish*, 849 F.3d at 527. "More specifically, based on this record, [the Court] do[es] not know the steps, if any, that [school social workers] should take when they have reason to believe that [a school employee is sexually harassing a student and placing the student at risk]." *Id.* at 527-28. The MSAD 40/RSU 40 policies alleged in the Amended Complaint contain general information about employees' duties to report sexual harassment, but they do not make clear the school social worker's position in the reporting chain of command, presenting an incomplete and at times conflicting picture. *Am. Compl.* ¶¶ 15-22 (stating that "[s]chool staff will report possible incidents of . . . harassment of students to the building principal" who will report to the superintendent and stating later that an employee must report

36

possible harassment "to that person's immediate supervisor or the building principal, and that such person receiving the complaint must immediately report it to the Superintendent"). They also do not specify the amount of discretion the school social worker has in evaluating whether a situation is a possible incident of harassment.

At this stage, Ms. Wadsworth's allegations also provide enough support for her claim to establish conscience-shocking behavior to prevent dismissal. Based on the allegations alone, there is a basis for applying the deliberate indifference standard in *Rivera* rather than the intent to injure standard in *McCann* and concluding that Mr. Nguyen's deliberately indifferent behavior shocks the Court's conscience. *See Rivera*, 402 F.3d at 36 (citing *Lewis*, 523 U.S. at 851-52); *McCann*, 365 F. Supp. 3d at 147. In addition, the record does not disclose any justifiable government interest served by Mr. Nguyen's comments. *See McCann*, 365 F. Supp. 3d at 147.

The record lacks the facts necessary to determine whether Mr. Nguyen's repeated failure to report and his normalization of Mr. Cavanaugh's disturbing behavior qualify as affirmative acts that increased Ms. Wadsworth's risk of danger and shock the conscience. As in *Irish* and *Raymond*, the Court does not know what exactly Mr. Nguyen knew of Mr. Cavanaugh's harassment, the circumstances of Ms. Wadsworth's reports to Mr. Nguyen, why her reports did not trigger a more serious response from Mr. Nguyen, what relationship Mr. Nguyen had with Mr. Cavanaugh—that is whether he was protecting and enabling a friend and colleague, whether he was worried that confronting Mr. Cavanaugh would adversely affect his own position, whether he violated any school policies, whether his inaction and

actions comport with professional standards, and what actions he took before and after the three conversations with Ms. Wadsworth.[8]  The First Circuit in *Abdisamad* reinforced the distinction it made in *Irish* between harm arising from a government employee following a policy and harm arising from the employee's failure to follow the policy, 906 F.3d at 60, further establishing this factual issue as a reason to deny the motion to dismiss and proceed to discovery.

Ms. Wadsworth has alleged facts sufficient to convince the Court that further discovery is needed to determine whether she has a viable substantive due process claim premised on a state-created danger theory.  At the same time, discovery may reveal there is less than meets the eye in this situation and that Mr. Nguyen simply misjudged it.  Accordingly, the Court denies Mr. Nguyen's motion to dismiss her substantive due process claim under § 1983.

### 2.    Equal Protection Claim

Mr. Nguyen argues that Ms. Wadsworth fails to state a viable equal protection claim against him because the Amended Complaint contains no factual allegation showing that Mr. Nguyen selectively treated Ms. Wadsworth based on her sex, that Ms. Wadsworth had putative comparators, that Mr. Nguyen acted "with the purpose

---

[8]    Ms. Wadsworth alleges several additional facts in her response to the motion to dismiss not included in the Amended Complaint, including that Mr. Nguyen dissuaded Ms. Wadsworth from reporting Mr. Cavanaugh and received reports from other teachers about Mr. Cavanaugh's harassment.  *Pl.'s Opp'n* at 3, 9-10.  The Amended Complaint contains brief statements about the school district's policies, *see id.* ¶¶ 15-22, but again Ms. Wadsworth's response goes into more detail, alleging that Mr. Nguyen failed to comply with the school policies as well as his legal responsibilities to report.  *Pl.'s Opp'n* at 13.  For purposes of ruling on this motion to dismiss, the Court has not considered these additional facts contained only in a lawyer's filing; however, if the facts were critical, the Court would allow Ms. Wadsworth to amend her complaint to formally assert them.  *See Doe1*, 2018 WL 3336535, at *1-3.

of discriminating on the basis of sex," or that Mr. Nguyen "had any actual control or supervisory authority over Mr. Cavanaugh." *Nguyen's Mot.* at 8-9. Ms. Wadsworth responds that she has raised a viable equal protection claim under § 1983 because Mr. Nguyen's active participation—"by denying that [Mr.] Cavanaugh's behavior was inappropriate, thus encouraging [Ms. Wadsworth] to continue interacting with [Mr.] Cavanaugh as well as interfering with her potential decision to report the harassment"—shows he treated Ms. Wadsworth differently than similarly situated female students in the school and that his advice to her cannot be viewed as furthering an important governmental objective. *Pl.'s Opp'n* at 13-14.

"[Section] 1983 equal protection claims may be brought against individuals as well as municipalities . . .." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (citing *West v. Atkins*, 487 U.S. 42, 48-51 (1988)). "To state an equal protection claim, the plaintiff must 'show that the parties with whom he seeks to be compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile.'" *Raymond*, 2019 WL 2110498, at *8 (quoting *Cordi-Allen v. Conlon,* 494 F.3d 245, 251 (1st Cir. 2007)). "[A] plaintiff needs to allege facts showing that '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Davis v. Coakley*, 802 F.3d 128, 132-33 (1st Cir. 2015) (quoting *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995)).

39

The plaintiff must "identify and relate *specific instances*" of the defendant treating similarly situated persons differently, "instances which have the capacity to demonstrate that [plaintiffs] were singled . . . out for unlawful oppression." *Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006) (alterations and emphasis in original) (quoting *Rubinovitz*, 60 F.3d at 910). The plaintiff must also show that the defendant acted with a discriminatory intent. *Lipsett*, 864 F.2d at 896.

To the extent that Ms. Wadsworth brings an equal protection claim against Mr. Nguyen for his alleged actions, this claim fails. A District of Maine court recently dismissed an equal protection claim against a school department in a Title IX case because "[t]he complaint d[id] not allege either that [the student] was treated differently than other similarly situated students with disabilities, or that the School Department's actions were based on the types of impermissible considerations described" in *Davis*. *McCann*, 365 F. Supp. 3d at 147. As in *McCann*, Ms. Wadsworth's Amended Complaint does not allege that Mr. Nguyen treated Ms. Wadsworth differently than any other students. In fact, the Amended Complaint does not mention any other students Mr. Nguyen interacted with, so it falls far below the requirement that the plaintiff show specific instances of disparate treatment.

Ms. Wadsworth's equal protection claim also fails to the extent she attempts to hold Mr. Nguyen liable for the alleged actions of Mr. Cavanaugh because no facts establish that Mr. Nguyen had any control over Mr. Cavanaugh, the principal. Both parties discuss caselaw on supervisory liability under § 1983, *Nguyen's Mot.* at 6-7; *Pl.'s Opp'n* at 12-13, but, as Mr. Nguyen argues, this type of liability in inapplicable

here.  In the context of § 1983 claims, supervisory liability attaches "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." *Sanchez*, 590 F.3d at 49 (quoting *Zapata*, 175 F.3d at 44). A plaintiff "must establish that [the defendant] had some degree of control over" the actor who allegedly violated the plaintiff's constitutional rights.  *Edson*, 2017 WL 780787, at *15 (citing *Zapata*, 175 F.3d at 44; *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994)).  Here, Ms. Wadsworth made no allegation that Mr. Nguyen had control over Mr. Cavanaugh's actions.  The guidance in *Robinson* only solidifies this conclusion.  120 F.3d at 1294 ("As a general matter, a person who fails to act to correct the conduct of someone over whom he or she has no supervisory authority cannot fairly be said to have 'acquiesced' in the latter's conduct").[9]

### C.   Qualified Immunity for § 1983 Claim

Mr. Nguyen and Ms. Wadsworth disagree about whether qualified immunity protects Mr. Nguyen from the equal protection claim under § 1983.  *Nguyen's Mot.* at 11-12; *Pl.'s Opp'n* at 15-16.  Neither party discusses qualified immunity in the context of the substantive due process claim based on the state-created danger theory.

"[T]he qualified immunity inquiry is a two-part test.  A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a

---

[9]      Ms. Wadsworth attempts to distinguish *Robinson* by pointing out the difference in the relationship between plaintiff and defendant in each case—minor student and advisor instead of coworkers.  *Pl.'s Opp'n* at 13.  However, the relationship that matters for supervisory liability is the relationship between the defendant and the person who committed the constitutional violation, so this distinction is irrelevant.

constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 268-69 (1st Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "[T]he second, 'clearly established' step of the qualified immunity analysis . . ., in turn, has two aspects." *Id.* at 269. First, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," *id.* (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); second, the Court must ask "whether a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights." *Id.* The Supreme Court has instructed that "this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223).

In *Irish*, the First Circuit looked to "the absence or the degree of deviations from the pertinent governmental trainings and protocols to inform its substantive due process and qualified immunity analyses." *Raymond*, 2019 WL 2110498, at *9 (citing *Irish*, 849 F.3d at 528). The First Circuit refused to find that the defendants were entitled to qualified immunity "without a fuller development of the facts," particularly highlighting the facts surrounding whether the officers violated protocols. *Irish*, 849 F.3d at 528. In *Raymond*, this Court applied the analysis from *Irish* to school policies and procedures and denied a motion to dismiss on qualified immunity grounds. 2019 WL 2110498, at *9.

The Court has already found that Ms. Wadsworth does not adequately state a claim for violation of her equal protection rights. Thus, this analysis is limited to the substantive due process claim. First, Mr. Nguyen does not argue that the right to bodily integrity, including the right to be free from sexual abuse, is not a clearly established right. In 1999, a district court in the District of Maine wrote that "[i]t is well recognized that students have a fundamental right to bodily integrity that includes the right to be free from sexual abuse." *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d at 65. In May 2020, the district court in another *Doe* case found that a clearly established right together with a state-created danger claim was enough to survive a qualified immunity challenge at this stage of litigation. *See* 2020 WL 2820197, at *6. Second, as in *Irish* and *Raymond*, further discovery is necessary on whether Mr. Nguyen violated school policies and procedures and professional standards, issues that will inform the qualified immunity analysis. Third, to the extent that Mr. Nguyen's argument—that a reasonable social worker would not understand that what he or she was doing violated a constitutional right because the pleaded facts do not necessarily suggest that Ms. Wadsworth was the victim of sexual harassment—applies to the substantive due process claim, the Court disagrees. On the pleaded facts, even only those known to Mr. Nguyen, accepting the allegations in the Amended Complaint as true, Mr. Cavanaugh's sexual harassment of Ms. Wadsworth is clear.

For these reasons, the Court denies the motion to dismiss the § 1983 claim on qualified immunity grounds.

**D.     Discretionary Function Immunity for State Tort Claims**

**1.     Legal Background**

Ms. Wadsworth asserts three state tort claims against Mr. Nguyen: IIED, NIED, and negligence. *Am. Compl.* ¶¶ 189-208.  Mr. Nguyen argues that he is entitled to discretionary function immunity from the state tort claims pursuant to the Maine Tort Claims Act. *Nguyen's Mot.* at 15-16.  Ms. Wadsworth responds that the Court should deny Mr. Nguyen's claim of immunity because a reasonable person in his position would have realized that his actions were outside the scope of his job duties. *Pl.'s Opp'n* at 20.  Mr. Nguyen asserts that his conduct "unquestionably occurred within the scope of his employment" because he was the social worker at the high school the whole time. *Nguyen's Reply* at 7.

The Maine Tort Claims Act "applies a policy of broad liability to governmental employees, subject to the" enumerated exceptions. *Carroll v. City of Portland*, 1999 ME 131, ¶ 6, 736 A.2d 279.  One exception provides absolute immunity to employees of governmental entities "[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused . . .." 14 M.R.S. § 8111(1)(C). The immunity applies to discretionary acts that are "reasonably encompassed by the duties of the governmental employee in action . . .." *Carroll*, 1999 ME 131, ¶ 6 (quoting 14 M.R.S. § 8111(1)).  In other words, the immunity applies only to conduct "within the scope of [the government employee's] employment . . .." *Darling*, 535 A.2d at 425.  "[T]ort liability should not be imposed for conduct of a type for which the imposition of liability would substantially impair the effective performance of a

44

discretionary function." *Carroll*, 1999 ME 131, ¶ 6 n.4 (alteration in original) (quoting *Grossman v. Richards*, 1999 ME 9, ¶ 6, 722 A.2d 371, 373).  Moreover, there is no exception to immunity under § 8111(1)(C) for "acts or omissions characterized by animus." *Buchanan ex rel. Estate of Buchanan v. Maine*, 417 F. Supp. 2d 24, 44 (D. Me. 2006), *aff'd*, 469 F.3d 158 (1st Cir. 2006) (*Buchanan*).

> To determine whether an act is discretionary, courts consider four questions:
>
> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective?  (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?  (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Darling*, 535 A.2d at 426 (quoting *Trianon Park Condo. Ass'n v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985)).  "[I]n cases where the questioned conduct has little or no purely governmental content but instead resembles decisions or activities carried on by people generally, there is an objective standard for judgment by the courts and the doctrine of discretionary immunity does not bar the action." *Rodriguez v. Town of Moose River*, 2007 ME 68, ¶ 22, 922 A.2d 484 (quoting *Adriance v. Town of Standish*, 687 A.2d 238, 241 (Me. 1996)).

In *Polley v. Atwell*, 581 A.2d 410 (Me. 1990), the Maine Supreme Judicial Court held that a social worker's decision not to disclose certain information when placing a foster child in a new foster home was a discretionary act and the Maine Department of Human Services (DHS) employee was protected from all tort claims by

45

discretionary function immunity. *Id.* at 413. The Law Court identified the governmental policy of confidentiality afforded to DHS records and emphasized that the statute containing the policy explicitly entrusted to DHS employees what information, if any, should be disclosed when placing children in foster homes. *Id.*

The Maine Supreme Judicial Court has reached similar conclusions in other cases involving government employees supervising other people. *See Roberts v. State*, 1999 ME 89, ¶ 10, 731 A.2d 855 (applying the *Darling* factors to an incarcerated individual's claims arising from a personal injury and holding that the corrections officer was immune from liability because "corrections is a basic governmental program," "supervision of inmates is essential to a corrections program," "[t]he supervision necessarily involves the exercise of judgment by corrections officers" including when to order an individual to a cell and when to shut the cell door, and the officer had lawful authority to supervise the incarcerated individual); *Brooks v. Augusta Mental Health Inst.*, 606 A.2d 789, 791 (Me. 1992) ("Because it involves the exercise of the individual employee's professional judgment, the supervision of patients by State mental health employees also falls within the discretionary function immunity provisions of section 8111(1)(C)"). Various Maine superior courts have applied discretionary function immunity to government employees supervising students in particular. *See, e.g.*, *Varney v. Richards*, No. CV-14-164, 2016 Me. Super. LEXIS 154, at *15-16 (Me. Super. Ct. July 21, 2016) ("The Superior Court has held that teachers' actions while supervising students at school [are] protected under discretionary function immunity, but the Law Court has not yet addressed the issue"

(citing *Fraser v. Superintending Sch. Comm. Of Old Town*, No. CV-14-200, 2015 Me. Super. LEXIS 207, at *11-12 (Me. Super. Ct. July 19, 2015))).

The Law Court distinguished *Polley* from *MacKerron v. Madura*, 474 A.2d 166 (Me. 1984), where the Law Court found a police officer's actions outside the scope of his employment when he intentionally interfered with the economic relationship between an attorney and client because his conduct was so egregious it exceeded the scope of any discretion he could have possessed. *Polley*, 581 A.2d at 413-14 (citing *MacKerron*, 474 A.2d at 167). The police officer told the client that he would put in a good word for him before the judge and ask the district attorney about dropping the charge if he was not represented by an attorney but would do nothing if he was represented by the attorney. *MacKerron*, 474 A.2d at 166-67.

Significantly, however, in 1990, the *Polley* Court clarified that "*MacKerron* does not stand for the proposition that discretionary immunity is unavailable in any case in which the plaintiff alleges an intentional tort, rather than a negligent act or omission." 581 A.2d at 413. It added,

> Our focus on the "intentional" nature of the conduct was illustrative, not definitive. The rationale of the decision was not grounded on the plaintiff's allegation of an intentional tort, but rather, on the fact that the defendant's egregious conduct clearly exceeded, as a matter of law, the scope of any discretion he could have possessed in his official capacity as a police officer and therefore was not encompassed within the immunity provision of 14 M.R.S.A § 8111(1)(C).

*Id.* at 413-14. Instead, the Law Court reiterated the importance of the four *Darling* factors.

The District of Maine discussed this distinction in *Maguire v. Municipality of Old Orchard Beach*, 783 F. Supp. 1475, 1487 (D. Me. 1992). The *Maguire* Court concluded that two officers were entitled to discretionary function immunity even if their actions were deliberately indifferent or reckless but that one officer was not entitled to this immunity because his threat to the plaintiff—removing his night stick from his belt, holding it near the plaintiff's head, and threatening the plaintiff physical harm if he mentioned the towing incident to anyone—clearly exceeded the scope of any discretion he could have possessed in his role as a police officer. *Id.* at 1478, 1487.

### 2.    Analysis

One way of looking at Mr. Nguyen's actions shows a social worker hearing a complaint, evaluating it, and giving advice. Another way is to view Mr. Nguyen as someone enabling an administrator in his pursuit of a student.[10] Whether discretionary function immunity protects Mr. Nguyen's actions depends on which view the Court takes, and that decision in turn depends on what facts not developed reveal.

For example, the first *Darling* factor asks whether "the challenged act, omission, or decision necessarily involve[s] a basic governmental policy, program or

---

[10]    Ms. Wadsworth's characterization of the alleged facts in her response to the motion to dismiss provides more detail about Mr. Nguyen's normalization of the sexual harassment and active interference with Ms. Wadsworth's decisions about the relationship. *See Pl.'s Opp'n* at 17-20. As with the substantive due process claim, *see supra* note 8, these additional facts are not necessary to the Court's ruling in this Order, but they strengthen the argument that Ms. Wadsworth's state tort claims survive discretionary function immunity. Again, if these additional facts were crucial to the Court's ruling on the motion to dismiss, the Court would allow Ms. Wadsworth an opportunity to amend her Amended Complaint.

objective[.]" *Darling*, 535 A.2d at 426 (quoting *Trianon Park Condo. Ass'n v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985)).  If Mr. Nguyen's actions were consistent with the practice of his profession and in accordance with school policy, then, although they were professional misjudgments, they necessarily involve a basic governmental policy, program, or objective—the counseling of students in accordance with Maine law.  On the other hand, if Mr. Nguyen's actions were attempts to normalize Mr. Cavanaugh's abnormal behavior because Mr. Nguyen and Mr. Cavanaugh were friends, Mr. Nguyen instinctively supports authority figures over students, or some other facts not yet known, then his actions fall outside of what he was hired to do as the school social worker.

From the Court's perspective, this issue is closest presented by the motion to dismiss.  Mr. Nguyen's minimization and normalization of Mr. Cavanaugh's inappropriate attention to Ms. Wadsworth seem peculiar, so much so that the Court is at a loss to explain his conduct without some additional facts.  Again, taking the lead from *Irish,* the Court concludes that discovery may reveal whether the facts justify the generalized allegations.  *Irish*, 849 F.3d at 528-29.  Discovery may illuminate the setting of Mr. Nguyen and Ms. Wadsworth's discussions, how Ms. Wadsworth approached Mr. Nguyen, the relationship between Mr. Nguyen and Mr. Cavanaugh, and what Mr. Nguyen actually knew from his personal observations of the interactions between Mr. Cavanaugh and Ms. Wadsworth, among other facts.

The Court does not know, for example, whether Ms. Wadsworth made a formal appointment with Mr. Nguyen to discuss Mr. Cavanaugh's actions as opposed to an

informal conversation in passing, whether Mr. Nguyen made notes of his sessions, whether Mr. Nguyen spoke to Mr. Cavanaugh about Ms. Wadsworth's complaints, whether Ms. Wadsworth's complaints were in the context of other issues she discussed with Mr. Nguyen, or whether, as in *Irish*, Mr. Nguyen's advice comported with professional standards and school policies. Although the issue is close, the Court concludes that it is wiser to allow the parties to proceed with discovery to open the door on why Mr. Nguyen did what he did and what he knew when he did it and to resolve this issue in the context of a motion for summary judgment, where underlying critical facts have been unearthed.

In conclusion, Ms. Wadsworth has sufficiently alleged tort claims against Mr. Nguyen that, when viewed in the light most favorable to her, survive discretionary function immunity under § 8111(1)(C) at the motion to dismiss stage.

## VI.   CONCLUSION

The Court GRANTS in part and DENIES in part Chuck Nguyen's Motion to Dismiss (ECF No. 16). The Court DISMISSES so much of Count II of Adrianna Wadsworth's Amended Complaint as alleges an equal protection claim under 42 U.S.C. § 1983. Otherwise, the Court DENIES Chuck Nguyen's Motion to Dismiss (ECF No. 16).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of October, 2020

50