UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ADRIANNA WADSWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:19-cv-00577-JAW |
| | ) | |
| MAINE SCHOOL ADMINISTRATIVE | ) | |
| DISTRICT 40/REGIONAL SCHOOL | ) | |
| UNIT 40 et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON CHUCK NGUYEN'S MOTION FOR SUMMARY JUDGMENT**

A former high school student brought a lawsuit against a school district, a school principal, and a school social worker asserting claims under 20 U.S.C. § 1681(a) (Title IX) and 42 U.S.C. § 1983, as well as state tort claims, stemming from sexual harassment she alleges the school principal committed against her. The social worker moves for summary judgment on the § 1983 and tort claims against him. The Court grants summary judgment on the § 1983 claim because there are no genuine issues of material fact that could support the plaintiff's contention that the social worker's actions shocked the conscience and, in any event, he is entitled to qualified immunity. The Court denies summary judgment on the tort claims because the plaintiff substantially complied with the notice requirements of the Maine Tort Claims Act and, as alleged, the social worker's actions fell well outside of his job authority. Finally, he is thus not entitled to discretionary function immunity.

## I.   PROCEDURAL HISTORY

On December 27, 2019, Adrianna Wadsworth[1] filed suit against Maine School Administrative District 40/Regional School Unit 40 (RSU 40 or the District),[2] Medomak Valley High School (MVHS), Andrew Cavanaugh, and Chuck Nguyen. *Compl.* (ECF No. 1).  She alleged a violation of Title IX and negligent hiring, training, and supervision against the District and MVHS, brought claims under 42 U.S.C. § 1983, brought common law tort and statutory claims of intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED) against all the Defendants, and brought a negligence claim against Mr. Cavanaugh and Mr. Nguyen.  *Id.* ¶¶ 134-179.  On February 7, 2020, Mr. Cavanaugh answered the Complaint.  *Def., Andrew Cavanaugh's Answer to Pl.'s Compl. and Demand for Jury Trial* (ECF No. 11).  On March 11, 2020, the District and MVHS filed a motion to dismiss counts one and two of the Complaint.  *Def. MSAD 40/RSU 40's Mot. to Dismiss Counts I and II of Compl.* (ECF No. 12).  On the same day, Mr. Nguyen filed

---

[1]     Ms. Wadsworth brought this lawsuit in her own name rather than under a pseudonym such as Jane Doe.  Though a balancing of factors is required, a victim of sexual harassment or sexual assault—especially a minor at the time of the offense—often has a privacy interest sufficient to allow the victim to proceed under a pseudonym.  *See, e.g., Doe v. Reg'l Sch. Unit No. 21*, Docket No. 2:19-00341-NT, 2020 WL 2833248, at 1-4 (D. Me. May 29, 2020); *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011).  However, as an adult, Ms. Wadsworth has an equal right to bring the action under her own name.

[2]     The filings in this case have variously referred to the District as MSAD 40/RSU 40, MSAD 40, or RSU 40.  According to the District, it was formerly known as MSAD 40 but is now known as RSU 40.  *Def. MSAD 40/RSU 40's Statement of Material Facts* ¶ 1 (ECF No. 101) ("Defendant Regional School Unit 40 ("RSU 40") . . . [was] formerly Maine School Administrative District 40").  The Court will refer to this party as RSU 40 or the District.

an answer to the Complaint. *Answer and Affirmative Defenses to Compl. and Jury Trial Demand (Def. Chuck Nugyen)* (ECF No. 13).

On March 27, 2020, Ms. Wadsworth filed an amended complaint, dropping MVHS as a defendant. *Pl.'s Am. Compl. and Demand for Jury Trial* (ECF No. 15) (*Am. Compl.*). On April 10, 2020, Mr. Nguyen filed a motion to dismiss the Amended Complaint. *Def. Chuck Nguyen's Mot. to Dismiss Am. Compl.* (ECF No. 16). On April 14, 2020, Mr. Cavanaugh filed an answer to the Amended Complaint. *Def., Andrew Cavanaugh's Answer to Pl.'s Am. Compl. and Demand for Jury Trial* (ECF No. 17).

On May 8, 2020, the District filed a motion to dismiss counts one and two of the Amended Complaint, and on May 11, 2020, it withdrew its first motion to dismiss. *Def. MSAD 40/RSU 40's Mot. to Dismiss Counts I and II of First Am. Compl.* (ECF No. 21);[3] *Def. MSAD 40/RSU 40's Withdrawal of Mot. to Dismiss as Moot* (ECF No. 22). Ms. Wadsworth filed a response on June 8, 2020. *Opp'n of Pl., Adrianna Wadsworth, to Def. MSAD 40/RSU 40's Mot. to Dismiss for Failure to State a Claim* (ECF No. 31). On June 22, 2020, the District replied. *Def. MSAD 40/RSU 40's Reply in Supp. of Mot. to Dismiss* (ECF No. 32).

On October 2, 2020, the Court denied Mr. Nguyen's motion to dismiss, and on October 29, 2020, the Court denied the District's motion to dismiss. *Order on Def. Chuck Nguyen's Mot. to Dismiss* (ECF No. 36) (*Order on Mot. to Dismiss*); *Order on MSAD 40/RSU 40's Mot. to Dismiss* (ECF No. 39). The District filed its Answer to

---

[3]     The Plaintiff originally named Medomak Valley High School as a defendant, but when Ms. Wadsworth amended her complaint on March 27, 2020, she dropped MVHS as a named defendant. *See Am. Compl.* ¶¶ 1-5.

the Amended Complaint on November 13, 2020 and Mr. Nguyen filed his Answer and affirmative defenses on February 4, 2021. *Def. MSAD 40/RSU 40's Answer to Pl.'s Am. Compl.* (ECF No. 45); *Answer and Affirmative Defense to Am. Compl. and Jury Trial Demand (Def. Chuck Nguyen)* (ECF No. 49).

On July 27, 2022, the District, Mr. Cavanaugh, and Mr. Nguyen each filed a motion for summary judgment accompanied by a statement of material facts. *Def. MSAD 40/RSU 40's Mot. for Summ. J.* (ECF No. 100); *Def. MSAD 40/RSU 40's Statement of Material Facts* (ECF No. 101); *Def. Andrew Cavanaugh's Mot. for Summ. J.* (ECF No. 103); *Def. Andrew Cavanaugh's Rule 56 Statement of Material Facts in Supp. of His Mot. for Summ. J.* (ECF No. 104); *Def. Chuck Nguyen's Mot. for Summ. J.* (ECF No. 105) (*Def.'s Mot.*); *Def. Chuck Nguyen's Statement of Material Facts in Supp. of Mot. for Summ. J.* (ECF No. 106) (DSMF). On October 19, 2022, Ms. Wadsworth filed an omnibus response to the motions for summary judgment, her own statement of additional material facts, and separate responses to each defendant's statement of material facts. *Pl. Adrianna Wadsworth's Omnibus Opp'n to Defs.' Mots. for Summ. J.* (ECF No. 114) (*Pl.'s Resp.*); *Pl.'s Rule 56 Statement of Material Facts in Supp. of Her Omnibus Opp'n to Defs.' Mots. for Summ. J.* (ECF No. 115) (PSAMF); *Pl.'s Resps. to Def. MSAD 40's Statement of Material Facts in Supp. of its Mot. for Summ. J.* (ECF No. 116); *Pl.'s Resps. to Def. Andrew Cavanaugh's Statement of Material Facts in Supp. of His Mot. for Summ. J.* (ECF No. 117); *Pl.'s Resps. to Def. Chuck Nguyen's Statement of Material Facts in Supp. of His Mot. for Summ. J.* (ECF No. 118) (PRDSMF).

On November 17, 2022, the District filed a reply in support of its motion for summary judgment and a reply to Ms. Wadsworth's statement of additional material facts. *MSAD 40/RSU 40's Reply in Supp. of Mot. for Summ. J.* (ECF No. 121); *Def. MSAD 40/RSU 40's Reply Statement of Material Facts* (ECF No. 122). The following day, Mr. Nguyen and Mr. Cavanaugh each filed their own replies and responses to Ms. Wadsworth's statement of additional material facts. *Def. Chuck Nguyen's Reply Mem. of Law in Supp. of Mot. for Summ. J.* (ECF No. 123) (*Def.'s Reply*); *Def. Chuck Nguyen's Resp. to Pl.'s Rule 56 Statement of Material Facts in Supp. of Her Omnibus Opp'n to Defs.' Mots. for Summ. J.* (ECF No. 124) (DRPSAMF); *Def. Andrew Cavanaugh's Reply in Supp. of Mot. for Summ. J.* (ECF No. 125); *Def. Andrew Cavanaugh's Resps. to Pl.'s Rule 56 Statement of Material Facts in Supp. of Her Omnibus Opp'n to Defs.' Mots. for Summ. J.* (ECF No. 126).

Finally, on December 19, 2022, Ms. Wadsworth moved to request oral argument on the defendants' motions. *Pl.'s Request for Hearing/Oral Argument on Defs.' Mot. for Summ. J.* (ECF No. 127). The Court granted that motion, *Order* (ECF No. 128), and heard oral arguments on March 14, 2023. *Min. Entry* (ECF No. 137).

## II.   FACTS[4],[5]

---

[4]    The Court states the facts "in the light most hospitable to [non-movants] consistent with record support . . .." *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 37 (1st Cir. 2018) (citing *Ahern v. Shinseki*, 629 F.3d 49, 51 (1st Cir. 2010); *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002)).

[5]    The Court notes at the outset that the parties have submitted between them 277 proposed facts for the record. *See* DSMF (120 facts); PSAMF (157 facts). The Court finds many of these facts to be largely or entirely immaterial to Ms. Wadsworth's claims against Mr. Nguyen and his motion for summary judgment.

Ms. Wadsworth, for example, has filed a single statement of additional facts to support her omnibus opposition to all three defendants' motions to dismiss. That statement of facts includes assertions that may be essential to her claims against Mr. Cavanaugh and/or the District but are largely irrelevant to her claim against Mr. Nguyen—e.g., detailed allegations relating to the District's sexual harassment policies and trainings, other District employees' knowledge of the harassment, and

5

### A.     The Parties

Adrianna Wadsworth, a woman now in her early twenties, attended MVHS, a school located within the District, between 2014 and 2018.  PSAMF ¶¶ 1-2; DRPSAMF ¶¶ 1-2.  At all pertinent times, Ms. Wadsworth was under the age of 18.[6] PSAMF ¶ 5; DRPSAMF ¶ 5.

As of October of 2021, Mr. Nguyen had worked for Defendant RSU 40 for 16 years.[7]  DSMF ¶ 1; PRDSMF ¶ 1.  Prior to the 2021-22 school year, Mr. Nguyen worked out of MVHS.  DSMF ¶ 2; PRDSMF ¶ 2.  Since 2007, Mr. Nguyen has been licensed with the State of Maine as a social worker.  DSMF ¶ 3; PRDSMF ¶ 3.

---

the content of text messages from Mr. Cavanaugh to Ms. Wadsworth, of which Mr. Nguyen is not alleged to have any knowledge.

      Mr. Nguyen, for his part, asserts dozens of proposed facts relating to what other school officials and members of law enforcement knew or believed about Mr. Cavanaugh's behavior towards Ms. Wadsworth.  The focus of the motion before the Court is on Mr. Nguyen's knowledge and actions or inaction relating to Mr. Cavanaugh's harassment of Ms. Wadsworth.  Aside from occasionally providing narrative cohesion or context, the knowledge and beliefs of other actors are generally not relevant to the claims against Mr. Nguyen.

      Accordingly, the Court will omit or abridge proposed facts irrelevant to Mr. Nguyen's motion for summary judgment.  *See CFTC v. JBW Capital, LLC*, 812 F.3d 98, 110 n.19 (1st Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (at the summary judgment stage, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment" and thus "[f]actual disputes that are irrelevant or unnecessary will not be counted").  The Court included facts relating to Mr. Cavanaugh and his actions regarding Ms. Wadsworth to provide context for her claim against Mr. Nguyen, but it has attempted to differentiate for purposes of Mr. Nguyen's dispositive motion, evidence of Mr. Cavanaugh's actions that Mr. Nguyen was unaware of.

[6]     Mr. Nguyen objects to PSAMF ¶ 5, contending that it is vague and unsupported by the record. DRPSAMF ¶ 5.  Upon review of the record, the Court finds that Ms. Wadsworth cited the wrong deposition but that the cited lines on her second deposition support the fact asserted.  *See Joint R. Materials for Defs.' Mots. for Summ. J.* (ECF No. 91) (*Joint R. Materials*), Attach. 16, *Deposition of Arianna Wadsworth Vol. II* at 74:2-6 (*Wadsworth Dep. Vol. II*) (stating her birth year and confirming that she was seventeen when the investigation into Mr. Cavanaugh began).  The Court overrules Mr. Nguyen's objection and admits PSAMF ¶ 5.

[7]     Ms. Wadsworth qualifies DSMF ¶ 1 to object that the record does not establish when Mr. Nguyen stopped working for the District.  PRDSMF ¶ 1.  The Court overrules this objection as beyond the scope of the fact asserted and admits DSMF ¶ 1.

Andrew Cavanaugh was the Principal of MVHS from 2015 until he resigned in December of 2017, and during this time he was also designated as MVHS' Affirmative Action Coordinator.  PSAMF ¶¶ 3-4; DRPSAMF ¶¶ 3-4.

### B.     Andrew Cavanaugh's Alleged Harassment of Adrianna Wadsworth

During Ms. Wadsworth's junior and senior years of high school (starting in the fall of 2016), Mr. Cavanaugh repeatedly subjected her to conduct of a sexual nature, involving sexually charged and inappropriate comments, text messages, and gifts.[8] PSAMF ¶ 3; DRPSAMF ¶ 3.  While some RSU 40 employees, including Mr. Nguyen, witnessed instances of Mr. Cavanaugh's inappropriate conduct towards Ms. Wadsworth, RSU 40 did not investigate or discipline Mr. Cavanaugh until November 2017.[9]  PSAMF ¶ 6; DRPSAMF ¶ 6.

### 1.     Adrianna Wadsworth's Background and Initial Encounters with Andrew Cavanaugh and Chuck Nguyen

Ms. Wadsworth moved out of her parents' home during the fall of 2016, her junior year of high school.  DSMF ¶ 13; PRDSMF ¶ 13.  Ms. Wadsworth moved out of her parents' home for several reasons, including: her parents fought a lot; she wanted to finish high school at MVHS because she loved school; her desire for stability; and her desire to be active at school, contrary to the wishes of her mother.  DSMF ¶ 14; PRDSMF ¶ 14.  For most of the time from the fall of 2016 to the spring of 2018, Ms.

---

[8]      Mr. Nguyen objects to PSAMF ¶ 3, contending that its allegation that Mr. Cavanaugh "sexually harassed" Ms. Wadsworth is conclusory "should be stricken or disregarded as immaterial." DRPSAMF ¶ 3.  The Court modified PSAMF ¶ 3 to reflect factual assertions supported by the record.
[9]      Mr. Nguyen offers the same objection to PSAMF ¶ 6, again arguing that Ms. Wadsworth's proposed assertion should be stricken as conclusory.  DRPSAMF ¶ 6.  The Court modified PSAMF ¶ 6 to reflect factual assertions supported by the record.

Wadsworth lived with Theresa and Darren Kenniston, parents of one of her classmates, Ashley Kenniston.[10]  DSMF ¶ 15; PRDSMF ¶ 15.

Mr. Nguyen and Ms. Wadsworth first met in 2016, when Mr. Cavanaugh was principal of MVHS.  DSMF ¶¶ 4-5; PRDSMF ¶¶ 4-5.  Mr. Cavanaugh and Mr. Nguyen knew each other professionally based on their work at MVHS but did not socialize outside of work.[11]  DSMF ¶ 8; PRDSMF ¶ 8.  Mr. Cavanaugh referred Ms. Wadsworth to Mr. Nguyen because she was at risk of leaving home due to ongoing family stress and did not have a place to go.[12]   DSMF ¶ 6; PRDSMF ¶ 6.

During the summer of 2016, Ms. Wadsworth worked for Mr. Cavanaugh helping him fix up houses and watching his nephew, and she received payment for

---

[10]     Mr. Nguyen's proposed DSMF ¶ 16 asserts that "Ms. Wadsworth never asked Ms. Kenniston whether the things Mr. Cavanaugh was saying or doing were abnormal or inappropriate."  The Court finds the proposed assertion irrelevant for the reasons discussed in footnote 5—mainly, that Ms. Wadsworth's discussions with Ms. Kenniston are immaterial to the claims against Mr. Nguyen. Moreover, the Court finds the proposed addition contradicted by the record.  *See* PSAMF ¶ 16; *Wadsworth Dep. Vol. I* at 206:1-10 (even if Ms. Wadsworth did not use the exact words "abnormal or inappropriate," she testified that she "definitely asked [Ms. Kenniston] what [Ms. Kenniston] thought about Mr. Cavanaugh suggesting that [she] should be on birth control, and that's when [Ms. Kenniston] didn't understand why Mr. Cavanaugh was even suggesting that [she] should be on birth control").  Accordingly, the Court omits DSMF ¶ 16.

[11]     Ms. Wadsworth qualifies DSMF ¶ 8 to object that Mr. Nguyen and Mr. Cavanaugh were far closer than the proposed assertion conveys.  PRDSMF ¶ 8.  The Court overrules the objection as beyond the scope of the fact asserted and admits DSMF ¶ 8.

[12]     Mr. Nguyen's DSMF ¶ 7 reads:

>     After his initial meeting with Ms. Wadsworth, Mr. Nguyen met with Ms. Wadsworth once before the end of the year and about once a month beginning in the late spring of 2017.

DSMF ¶ 7.  Mr. Nguyen supports this paragraph with appropriate citations to his own deposition.  *Id.* (citing *Nguyen Dep.* 43:2-7; 45:1-7).  Ms. Wadsworth denies DSMF ¶ 7, countering that she "met with Nguyen often throughout her junior and senior year of high school" and "[d]uring her senior year, Nguyen frequently pulled [her] out of study hall."  PRDSMF ¶ 7.  In support of her denial, she cites her own answers to interrogatories and the deposition testimony of a classmate, Brent Stewart.  Both citations support her denials and, as the Court is obligated to view contested facts in the light most favorable to Ms. Wadsworth, the Court omitted DSMF ¶ 7. However, as Ms. Wadsworth did not include these facts in PSAMFs, the Court has not included them in its recitation of facts.

doing so.  DSMF ¶ 17; PRDSMF ¶ 17.  Neither Ms. Wadsworth's mother nor Ms. Kenniston was initially concerned about Ms. Wadsworth working for Mr. Cavanaugh and the fact they were exchanging phone numbers.[13]  DSMF ¶¶ 18-23; PRDSMF ¶¶ 18-23.

### 2.   Andrew Cavanaugh's Inappropriate Comments and Gifts

Between 2016 and 2017, Mr. Cavanaugh told Ms. Wadsworth she was pretty, looked nice, and made comments about what she was wearing nearly every day while Ms. Wadsworth was in school.  PSAMF ¶ 28; DRPSAMF ¶ 28.  Mr. Cavanaugh repeatedly used pet names to refer to Ms. Wadsworth such as "cupcake," "princess," and "ladytime."  PSAMF ¶ 29; DRPSAMF ¶ 29; DSMF ¶ 78; PRDSMF ¶ 78.  This was done repeatedly in person and via text message on an almost daily basis between 2016 and 2017.[14]  PSAMF ¶ 30; DRPSAMF ¶ 30.  Mr. Cavanaugh, in a meeting in his office, told Ms. Wadsworth that she was good looking and could take anyone she wanted to prom.[15]  PSAMF ¶ 31; DRPSAMF ¶ 31.

At a school basketball game, Mr. Nguyen witnessed Mr. Cavanaugh comment on Ms. Wadsworth's looks in the middle of the gym and in the presence of everyone

---

[13]     Mr. Nguyen's proposed DSMF ¶¶ 18-23 (primarily relating to the knowledge of Ms. Wadsworth's mother) are largely immaterial for the reasons discussed in footnote 5.  The Court admits a summary of the assertions and omits the remainder of DSMF ¶¶ 18-23.

[14]     Mr. Nguyen qualifies PSAMF ¶ 30, objecting only that "[t]he statement does not define 'this'; therefore, it is impossible to admit or deny the statement."  DRPSAMF ¶ 30.  The Court finds "this" to be obvious from the context and previous sentence as referring to Mr. Cavanaugh calling Ms. Wadsworth pet names, overrules the objection, and admits PSAMF ¶ 30.

[15]     Mr. Nguyen qualifies PSAMF ¶ 31, contending that "[t]he cited record material does not support the assertion that Mr. Cavanaugh told Ms. Wadsworth she was good looking."  DRPSAMF ¶ 31.  The Court agrees that the cited page does not allege that Mr. Cavanaugh called Ms. Wadsworth good looking.  However, in the same deposition, she states that "Mr. Cavanaugh said that I could take anybody in the school that I wanted [to prom] and said that I was a good looking girl."  *Wadsworth Dep. Vol. I* at 194:15-17.  The Court overrules the objection and admits PSAMF ¶ 31.

attending the game.[16],[17]   PSAMF ¶ 32; DRPSAMF ¶ 32; DSMF ¶¶ 70-71; PRDSMF ¶¶ 70-71.   Ms. Wadsworth is not sure when she first told Mr. Nguyen about the nicknames, but Mr. Nguyen was present and heard, at least once, when Mr. Cavanaugh called Ms. Wadsworth "ladytime," and, on multiple occasions, when Mr. Cavanaugh called Ms. Wadsworth "cupcake."[18]   PSAMF ¶ 33; DRPSAMF ¶ 33; DSMF ¶ 78; PRDSMF ¶ 78.

During this same period, Ms. Wadsworth met with Mr. Cavanaugh in his office, and on at least one occasion while Assistant Principal Tamra Philbrook was present, Mr. Cavanaugh asked Plaintiff whom she was taking to the prom, who had asked her to the prom, called her "cupcake," asked about her prom dress, and advised Ms. Wadsworth that she could take anyone she wanted to the prom.   PSAMF ¶ 36; DRPSAMF ¶ 36.   Mr. Nguyen was also present during this meeting and agreed with Mr. Cavanaugh's suggestions.[19]   PSAMF ¶ 37; DRPSAMF ¶ 37; DSMF ¶¶ 67-69; PRDSMF ¶¶ 67-69.

---

[16]   DSMF ¶ 70 is the first of many proposed assertions where Mr. Nguyen phrases the fact as "Ms. Wadsworth alleges . . ." even where he does not dispute—or outright admits—the truth of her testimony.   *See, e.g.*, DRPSAMF ¶ 32 (admitting that Mr. Nguyen witnessed the comments "alleged" in DSMF ¶ 70).   If the Court finds that a reasonable jury could believe Ms. Wadsworth's statements it will—as it must at this stage—adopt those statements as fact for the summary judgment record, discarding Mr. Nguyen's "Ms. Wadsworth alleges . . ." framings.

[17]   After admitting in DRPSAMF ¶ 32 that "Mr. Nguyen witnessed Mr. Cavanaugh comment on Ms. Wadsworth's looks" at the basketball game, Mr. Nguyen now asserts that he "does not recall hearing anything of the sort."   DSMF ¶ 72.   This is an awkward phrasing since people hear comments, they do not see them.   Nevertheless, the Court views this statement in the light most favorable to Ms. Wadsworth based on her deposition testimony and viewing it in the light most favorable to her, the Court interprets "witnessed" to mean "heard."   *See Wadsworth Dep. Vol. I* at 217:9-18:8 (recalling Mr. Cavanaugh making inappropriate comments while standing with Mr. Nguyen at the game).

The Court finds Mr. Nguyen's assertion contradicted by his own admission and by the record, and omits DSMF ¶ 72.   *See id.* at 216:1-10; 217:9-18:8.

[18]   Proposed PSAMF ¶¶ 34-35 and 38-39 assert Ms. Philbrook's knowledge of Mr. Cavanaugh's comments, and the Court omits them for the reasons discussed in footnote 5.

[19]   Mr. Nguyen qualifies PSAMF ¶ 37, objecting that the assertion is vague and unsupported by the record.   DRPSAMF ¶ 37.   The Court finds Ms. Wadsworth's testimony in support of the asserted

Ms. Wadsworth was embarrassed that Mr. Cavanaugh called her "cupcake," and after one of her friends found out about the nickname, Ms. Wadsworth went to Mr. Nguyen's office and advised him that Mr. Cavanaugh called her "cupcake" when they texted each other.  PSAMF ¶ 40; DRPSAMF ¶ 40; DSMF ¶ 24; PRDSMF ¶ 24. Prior to the time Mr. Cavanaugh came under investigation, Mr. Nguyen was aware that Mr. Cavanaugh texted Ms. Wadsworth with some regularity and that he called her "cupcake" in the messages but was not generally aware of the high frequency and sexually explicit content of the messages.[20]  DSMF ¶¶ 25-27; PRDSMF ¶¶ 25-27.  Ms. Philbrook came into the office during that meeting with Mr. Nguyen while Ms. Wadsworth was reporting her feelings, sat down, did not say anything, and then— after an undetermined amount of time—said "I'll leave you guys to it" and left Mr. Nguyen's office.  PSAMF ¶ 41; DRPSAMF ¶ 41.

In the text messages between Mr. Cavanaugh and Ms. Wadsworth, from the very limited period of April 20, 2017 through November 3, 2017, Mr. Cavanaugh called Ms. Wadsworth "cupcake" at least 60 times, "ladytime" at least 28 times, and "princess" at least 18 times.[21]  PSAMF ¶ 42; DRPSAMF ¶ 42.  Mr. Cavanaugh did not

---

fact sufficient to justify its inclusion and admits PSAMF ¶ 37.  *See Wadsworth Dep. Vol. I* at 195:18-196:3 ("Mr. Nguyen said, yes and that they've already heard several boys who want to take me to prom and made jokes about me turning them down or saying, yes, and so Mr. Nguyen just agreed with Mr. Cavanaugh").

[20]   Ms. Wadsworth objects to DSMF ¶¶ 25-27 that Mr. Nguyen's characterizations understate his knowledge of the text exchanges.  PRDSMF ¶¶ 25-27.  The Court finds each party's assertions to be factually supported by the record and largely compatible with the other's: Mr. Nguyen states fairly that he was not aware of the frequency or content of the texts; Ms. Wadsworth rejoins accurately that Mr. Nguyen knew they texted with some regularity and that Mr. Cavanaugh called her cupcake. DSMF ¶¶ 25-27; PRDSMF ¶¶ 25-27.  The Court admits a summary of DSMF ¶¶ 25-27 that reflects both parties' assertions and is supported by the record.

[21]   Mr. Nguyen qualifies PSAMF ¶ 42 to object that Ms. Wadsworth has not supplied specific citations for each time Mr. Cavanaugh used one of the referenced nicknames in a text message.

try to hide the fact that he was sending text messages to Ms. Wadsworth, and according to him, while he could not remember bringing up the exchanges, he may have told Ms. Philbrook, Mr. Nguyen, and Athletic Director Matt Lash, that he was exchanging text messages with Ms. Wadsworth.[22]   PSAMF ¶ 43; DRPSAMF ¶ 43.

Megan Wright, a classmate and friend of Ms. Wadsworth's, later testified that she thought Mr. Cavanaugh was creepy and that Mr. Cavanaugh commented on the length of Ms. Wadsworth's skirt when she walked into school in the morning.  PSAMF ¶ 155; DRPSAMF ¶ 155.  Ms. Wadsworth was borrowing Ms. Wright's skirt that day, and this comment made Ms. Wright so uncomfortable that she never wore it again.[23]  PSAMF ¶ 155; DRPSAMF ¶ 155.  Ms. Wright testified that the relationship between Mr. Cavanaugh and Ms. Wadsworth was common knowledge throughout the school.[24]

PSAMF ¶ 42.  The Court finds the cited collections of text messages to be replete with Mr. Cavanaugh using the nicknames, rejects Mr. Nguyen's qualification, and admits PSAMF ¶ 42.

[22]   Mr. Nguyen qualifies PSAMF ¶ 43 to emphasize that the proposed assertions should be disregarded as conclusory and speculative.  DRPSAMF ¶ 43.  The Court does not find the assertions to be conclusory allegations or unsupported allegations because they accurately state Mr. Cavanaugh's own testimony and are not Ms. Wadsworth's mere conjecture.  *See Joint R. Materials,* Attach. 18, *Dep. of Andrew Cavanaugh* at 150:4-152:3 (*Cavanaugh Dep.*) (stating "I think [Mr. Nguyen] became aware" of the texts and that "I may have said [to Mr. Nguyen], you know, I'll send her a text or something.  But like I said, I didn't make it a, you know, a secret or I didn't, you know, try to hide it.  So I may have [had a conversation with him about the texting]").  The Court modified PSAMF ¶ 43 to add that Mr. Cavanaugh did not proactively "bring up" the exchanges but otherwise overrules the objection and admits PSAMF ¶ 43.

[23]   Ms. Wadsworth's proposed PSAMF ¶ 156 consists of Ms. Wright recounting additional inappropriate comments made by Mr. Cavanaugh to Ms. Wright.  There is no allegation that Mr. Nguyen had any knowledge of these comments, and the Court finds them redundant to Ms. Wright's already-admitted testimony and other facts in the record establishing that Mr. Cavanaugh often made inappropriate comments to Ms. Wadsworth in text and in person.  The Court omits PSAMF ¶ 156 for the reasons stated in footnote 5.

[24]   Mr. Nguyen objects to PSAMF ¶ 157 on the grounds that the assertion is conclusory and speculative.  DRPSAMF ¶ 157.  Given that the record is replete with evidence that Mr. Cavanaugh regularly pulled Ms. Wadsworth out of class, texted her constantly, and multiple teachers and administrators noticed and complained of their interactions, the Court does not strain to envision that their relationship—however it may be characterized—provided grist for the school's rumor mill.  Ms. Wright testified that her "group of friends" would "all find [the relationship] weird" and that she first heard about it through a mutual friend while living in Wisconsin.  *Joint R. Materials*, Attach. 23, *Dep.*

PSAMF ¶ 157; DRPSAMF ¶ 157.  Mr. Nguyen was present on one occasion when Mr. Cavanaugh gave her a gift of around $20.  DSMF ¶ 42; PRDSMF ¶ 42.  During a meeting[25] with Mr. Cavanaugh and Mr. Nguyen in which the prom was being discussed, Mr. Cavanaugh gave Ms. Wadsworth $20 as spare change.[26]  DSMF ¶ 43; PRDSMF ¶ 43.

Mr. Cavanaugh also made Ms. Wadsworth uncomfortable when he gave her gifts at school, including a box of feminine hygiene products and a winter coat. PSAMF ¶ 53; DRPSAMF ¶ 53.  He often gave her gifts of money.  PSAMF ¶ 54; DRPSAMF ¶ 54.  Ms. Wadsworth informed Mr. Nguyen that the gifts Mr. Cavanaugh was giving her made her feel embarrassed.[27,28]  PSAMF ¶ 55; DRPSAMF ¶ 55; DSMF ¶ 39; PRDSMF ¶ 39.  Mr. Nguyen responded by stating that Mr. Cavanaugh was just

---

*of Megan Wright* at 31:9-32:1.  The Court finds support for Ms. Wright's assertion that the relationship was "common knowledge," overrules Mr. Nguyen's objection, and admits PSAMF ¶ 157.

[25]   The record is not clear whether this is the same meeting referenced in DSMF ¶ 42, but Mr. Nguyen asserted the meetings as separate facts and Ms. Wadsworth admitted both.

[26]   Ms. Wadsworth qualifies DSMF ¶ 43 to object that Mr. Cavanaugh asked her if she needed money "for a prom dress or to paint her nails, and handed her a $20 bill."  PRDSMF ¶ 43.  The Court rejects this qualification as beyond the scope of the fact asserted and admits DSMF ¶ 43.  *See Wadsworth Dep. Vol I* at 196:20-23 (testifying that Mr. Cavanaugh asked if "I needed spare change or how I was doing on money, and I said that I was fine and then he gave me I believe it was the $20 bill or so).

[27]   Mr. Nguyen qualifies PSAMF ¶ 55 to state that "[t]he cited record materials only refers to the alleged gift of 'hygiene products.'  Otherwise, denied as unsupported by the cited record materials." DRPSAMF ¶ 55.  The Court finds that the cited testimony references "the hygiene products *and the box of gifts*," overrules the objection, and admits PSAMF ¶ 55.  *Wadsworth Dep. Vol. I* at 209:23-210:5 ("I do remember that I did discuss the hygiene products *and the box of gifts* that he gave me with Mr. Nguyen. I believe mentioning to [Mr. Nguyen] that I was kind of embarrassed because I don't know what people thought of that when they saw that, and once again [Mr. Nguyen] assured me that [Mr. Cavanaugh] was making sure that I had everything that I needed.") (emphasis added).

[28]   Mr. Nguyen's proposed DSMF ¶ 46 asserts that "Ms. Wadsworth did not report Mr. Cavanaugh's gifts to Mr. Nguyen or anyone else."  While there may be some minor disagreement as to whether Ms. Wadsworth telling Mr. Nguyen that the gifts made her feel embarrassed constitutes a "report," the Court omits DSMF ¶ 46 as contradicted by the record.  *See* DRPSAMF ¶ 40 (admitting that Ms. Wadsworth told Mr. Nguyen that the gift of hygiene products made her feel embarrassed).

making sure she had everything she needed.[29]  PSAMF ¶ 56; DRPSAMF ¶ 56.  He asked her if the gifts were things that she needed and could use and she replied that they were—in the sense that all girls could use these products.[30]  DSMF ¶¶ 40-41; PRDSMF ¶¶ 40-41.  Ms. Kenniston was aware of the box of hygiene products but did not consider it to be an inappropriate gift.  DSMF ¶¶ 47-49; PRDSMF ¶¶ 47-49.

Mr. Nguyen's general observations of Mr. Cavanaugh's interactions with students were that Mr. Cavanaugh was interested in helping students in need or who were struggling.  DSMF ¶ 9; PRDSMF ¶ 9.  Mr. Nguyen was aware that Mr. Cavanaugh had ensured that students who were struggling with basic needs would have gifts, clothing, and meals around the holidays.  DSMF ¶ 10; PRDSMF ¶ 10. Additionally, according to Ms. Philbrook, it was not uncommon for school employees to buy needy students clothing—including shoes, ties, and shirts.[31]  DSMF ¶ 11; PRDSMF ¶ 11.

### 3.   The Birth Control Appointment

During Ms. Wadsworth's junior year, while she was living with the Kennistons, Mr. Cavanaugh took Ms. Wadsworth to a physical examination with her doctor so she

---

[29]   Mr. Nguyen makes the same objection discussed in footnote 27 and the Court overrules it for the same reason.

[30]   Ms. Wadsworth qualifies DSMF ¶¶ 40-41 to clarify that when she responded that she "needed" and "would be able to use" the hygiene products, she meant in the sense that all girls could use tampons, pads, and razors.  PRDSMF ¶¶ 40-41.  The Court accepts Ms. Wadsworth's qualifications and admits DSMF ¶¶ 40-41 as modified by PRDSMF ¶¶ 40-41.  *See Wadsworth Dep. Vol I* at 212:13-215 ("When [Mr. Nguyen] said do you think that hygiene products are something that you need, and I said, well, yes, I would use tampons and pads and razors").

[31]   The Court omits DSMF ¶ 12 for the reasons stated in footnote 5.  No party alleges that Mr. Nguyen was aware Mr. Cavanaugh bought Ms. Wadsworth's prom ticket, and thus Ms. Philbrook's opinion on whether that purchase was improper is not relevant to Mr. Nguyen's motion.

could participate in cheerleading.[32]  PSAMF ¶ 44; DRPSAMF ¶ 44; DSMF ¶¶ 57-58; PRDSMF ¶¶ 57-58.  At the time, Ms. Wadsworth was estranged from her parents and they had not signed off on the physical or other permission slips she needed for cheerleading.[33]  DSMF ¶ 59; PRDSMF ¶¶ 59.   While at the appointment, Mr. Cavanaugh suggested Ms. Wadsworth get on birth control.[34]   PSAMF ¶ 45; DRPSAMF ¶ 45.  Thereafter, Mr. Cavanaugh continually suggested Ms. Wadsworth get on birth control, and ultimately scheduled a medical appointment for Ms. Wadsworth so that she could obtain birth control.[35]  PSAMF ¶ 46; DRPSAMF ¶ 46. Mr. Nguyen knew that Mr. Cavanaugh was attempting to schedule and take Ms. Wadsworth to a birth control appointment, and he advised Mr. Cavanaugh that

---

[32]     Mr. Nguyen qualifies PSAMF ¶ 44, stating that "[t]he cited record material [only] supports the assertion that Mr. Cavanaugh took Ms. Wadsworth to a doctor's appointment."  DRPSAMF ¶ 44.  This objection is frivolous.  Mr. Nguyen's own statement of material facts asserts that "Ms. Wadsworth testified that Mr. Cavanaugh helped her set up a doctor's appointment to get a physical *for cheerleading.*"  DSMF ¶ 57 (emphasis added).  Moreover, while the paragraph Ms. Wadsworth cited may not explicitly mention cheerleading being the reason, it is clear from the surrounding context that the physical was for cheerleading.  *Wadsworth Dep. Vol. I* at 198:4-199:23 (stating that the appointment "occurred some time in my junior year before cheerleading started because I needed a physical in order to participate in cheerleading" and reiterating at least three times that the physical was for cheerleading).  The Court overrules Mr. Nguyen's qualification and admits PSAMF ¶ 44.

[33]     Ms. Wadsworth qualifies DSMF ¶ 59 to clarify that she does not recall if she asked her parents to sign off on the form.  PRDSMF ¶ 59.  The Court has slightly reframed DSMF ¶ 59 to reflect her deposition testimony, but otherwise overrules her objection as beyond the scope of the fact asserted.  *See Wadsworth Dep. Vol. I* at 198:11-15 ("I didn't have my parents to sign off on it or on my physical or any other permission slips that I needed for cheer").

[34]     Mr. Nguyen denies PSAMF ¶ 45, contending that Ms. Wadsworth's assertion that Mr. Cavanaugh suggested she get on birth control is unsupported by the record.  DRPSAMF ¶ 45.  The Court disagrees, overrules the objection as plainly supported by the record, and admits PSAMF ¶ 45.  *See Wadsworth Dep. Vol. I* at 201:4-8 ("I remember [Mr. Cavanaugh] telling me while we were there that he would look into the topic of birth control for me and how we can get that").

[35]     Mr. Nguyen denies PSAMF ¶ 46, contending again that Ms. Wadsworth's assertions are unsupported by the record.  Even if the Court were to accept Mr. Nguyen's contention that Ms. Kenniston's testimony is inadmissible hearsay, Mr. Cavanaugh testified that he offered to take Ms. Wadsworth to a birth control appointment but was dissuaded by Mr. Nguyen telling him "it wouldn't be a good idea; don't take her."  *Cavanaugh Dep.* at 104:8-22, 107:22-108:20.  The Court again overrules the objection and admits PSAMF ¶ 46.  *See Wadsworth Dep. Vol. I* at 203:15-20 (recalling Mr. Cavanaugh repeatedly reminder her that she should "be on [birth control]").

taking Ms. Wadsworth would be a bad idea.[36]  PSAMF ¶¶ 47-48; DRPSAMF ¶¶ 47-48.

In late 2016 or early 2017, Ms. Kenniston called Mr. Nguyen and complained about Mr. Cavanaugh setting up and intending to take Ms. Wadsworth to a doctor's appointment to obtain birth control, stating that—while she did not want to "make a mountain out of a molehill"—she believed such action was inappropriate.[37]  PSAMF ¶ 49; DRPSAMF ¶ 49; DSMF ¶¶ 64-65; PRDSMF ¶¶ 64-65.  The only thing Mr. Nguyen did with this information was to tell her the issue had been addressed, and he did not inform Superintendent Nolan of the call with Ms. Kenniston or otherwise initiate any investigation.[38]  PSAMF ¶¶ 51; DRPSAMF ¶¶ 51; DSMF ¶ 66; PRDSMF ¶ 66.  Instead, Mr. Nguyen spoke with Ms. Wadsworth about the birth control appointment and whether it was normal for Mr. Cavanaugh to be discussing birth

---

[36]    Mr. Nguyen argues that PSAMF ¶¶ 47-48 should be disregarded as unsupported by the record. DRPSAMF ¶¶ 47-48.  The Court overrules the objections for the reasons stated in footnote 35 and admits PSAMF ¶¶ 47-48.

[37]    Mr. Nguyen denies PSAMF ¶ 49 as unsupported by the record.  DRPSAMF ¶ 49.  The Court finds the assertion supported by the record, overrules the objection, and admits PSAMF ¶ 49.  *See Kenniston Dep.* at 49-1:50-4 (recounting calling Mr. Nguyen to discuss "the birth control issue because [she] was very disturbed about that").  Mr. Nguyen continues to offer blanket denials to Ms. Wadsworth's proposed assertions that are supported by deposition testimony.  As the Court is required to view disputed facts in the light most favorable to the nonmovant, where Ms. Wadsworth offers assertions supported by deposition testimony and Mr. Nguyen counters with only generic denials, the Court generally overrules the objections and admits the asserted facts.

[38]    Mr. Nguyen qualifies PSAMF ¶¶ 50-51 to make blanket denials, which the Court overrules for the reasons stated in footnote 37 and because the assertions are supported by the record.  DRPSAMF ¶¶ 50-51.  The Court also notes that Mr. Nguyen is denying Ms. Wadsworth's assertions that he *did not* do anything in response to the call but does not identify any actions that he *did* take.  The Court observes that Mr. Nguyen's blanket denials at times contradict his own asserted facts.  *Compare*, DSMF ¶ 66 ("During the alleged conversation between Ms. Kenniston and Mr. Nguyen, Ms. Kenniston alleges Mr. Nguyen asked how she became aware of the appointment and stated that the issue had been addressed") *with* DRPSAMF ¶ 50 (denying Ms. Wadsworth's assertion that "[t]he only thing Mr. Nguyen did with this information was to tell Ms. Kenniston the issue had been addressed" despite never suggesting he did anything else with the information).

The Court alters PSAMF ¶ 51 to remove the conclusory assertion that Mr. Nguyen "failed" to take corrective action but otherwise admits PSAMF ¶¶ 50-51.

control with her, with Mr. Nguyen informing her that Mr. Cavanaugh was like a father figure to her, and that Mr. Cavanaugh thought of her "as a daughter."[39] PSAMF ¶ 52; DRPSAMF ¶ 52; DSMF ¶¶ 60-62; PRDSMF ¶¶ 60-62.  During this conversation, Ms. Wadsworth first said that she "didn't know" if she was okay with Mr. Cavanaugh discussing birth control and asked Mr. Nguyen for his opinion, but after he affirmed Mr. Cavanaugh's behavior as a "father figure" Ms. Wadsworth then responded "yeah, you're right, I agree."[40, 41]  DSMF ¶ 63; PRDSMF ¶ 63.

### 4.  Andrew Cavanaugh Asks Adrianna Wadsworth to Move in with Him

Over the course of several months, while Ms. Wadsworth was living with the Kennistons, Mr. Cavanaugh asked her to move into his home on a number of occasions.[42]   PSAMF ¶¶ 57-58; DRPSAMF ¶¶ 57-58.   During that period, Mr. Cavanaugh sent Ms. Wadsworth the following text messages:

> **April 28:** "You need to come here tomorrow.  I will get a room ready for you and you can rest and get better.  We will take care of you.  I think you are just too stressed."

> **April 29:** "Do you think staying with me isnt a good idea?"

---

[39]   Mr. Nguyen objects only to PSAMF ¶ 52's assertion that Ms. Wadsworth told Mr. Nguyen that her parents did not approve of her receiving birth control.  DRPSAMF ¶ 52.  The Court does not find support for Ms. Wadsworth's assertion about her parents in the cited deposition transcript, sustains the objection, and admits the remainder of PSAMF ¶ 52.

[40]   Ms. Wadsworth objects that DSMF ¶ 63 characterizing her response as "agree[ing] with Mr. Nguyen's comments" does not capture the dynamics of the conversation.  The Court agrees and admits DSMF ¶ 63 as supplemented to reflect more accurately Ms. Wadsworth's deposition testimony.

[41]   Ms. Wadsworth's proposed PSAMF ¶¶ 114-116 relate to a letter Mr. Cavanaugh wrote to her doctor and his understanding of her medical record.  The record has already established that Mr. Nguyen was aware that Mr. Cavanaugh intended to take Ms. Wadsworth to a birth control appointment.  Ms. Wadsworth does not allege that Mr. Nguyen was aware of the facts asserted in PSAMF ¶¶ 114-116 and the Court omits them for the reasons discussed in footnote 5.

[42]   Mr. Nguyen objects that PSAMF ¶¶ 57-58 are not supported by citations to specific text messages.  DRPSAMF ¶¶ 57-58.  Ms. Wadsworth, however, goes on to cite nearly a dozen such texts as her next proposed facts and Mr. Nguyen admits all of them.  *See* PSAMF ¶¶ 59-69.  The Court overrules his objections as frivolous and admits PSAMF ¶¶ 57-58.
.

**May 10:** "Would your parents freak if you lived with me?"

"What about staying here for a couple days just to try it?  You might like it.  At least no one would yell at you.  What about staying here tomorrow night?"

"If you decide you want to stay with me, just give a brutha a heads up."

"One of these days I will get you to live with me!"

**May 18:** "Move in here and we will teach you."

"You should live here for your senior year.  It would be a stable place and I dont care about child support."

"I have always said you were a class act.  I think if you talked with Debbie and I about it we could take care of a lot.  I would write a letter to the superintendent and all that."

**June 8:** "I have told you to live with me but you don't want to do that."

**June 22:** "I have a bit of bad news.  I spoke with work about you staying with me and i cant.  I feel terrible but thats what it is."

PSAMF ¶¶ 59-69; DRPSAMF ¶¶ 59-69.  While Mr. Cavanaugh was not more specific about whom at "work" he spoke with—he may have been referring to Mr. Nguyen, whom Mr. Cavanaugh asked if Ms. Wadsworth could move in with him (Mr. Nguyen responded that he did not think it was a good idea)—he informed someone at the school about his desire to have Ms. Wadsworth live with him, and no action was taken related to this request beyond seemingly denying it.[43]  PSAMF ¶¶ 70-71; DRPSAMF ¶¶ 70-71.

---

[43]     Mr. Nguyen objects that PSAMF ¶ 70—asserting that Mr. Cavanaugh asked someone at the school about Ms. Wadsworth moving in with him and that no action was taken—should be stricken as "conclusory and speculative," DRPSAMF ¶ 70, but then goes on to admit in DRPSAMF ¶ 71 that "Mr. Cavanaugh asked [Mr. Nguyen] if Ms. Wadsworth could move in with him."  The Court overrules Mr. Nguyen's objection for the reasons stated in footnote 37—that he has made a generic objection but

18

### 5.    Andrew Cavanaugh's Inappropriate Text Messages

On a near daily basis, Mr. Cavanaugh would exchange text messages with Ms. Wadsworth, many of which were inappropriate.[44]  PSAMF ¶ 90; DRPSAMF ¶ 90.  In his text messages, Mr. Cavanaugh would ask Ms. Wadsworth to send him pictures of her in her swimsuit, ask her about her sexual relationships with boys, and even about whether she was having orgasms.  PSAMF ¶ 90; DRPSAMF ¶ 90.

On July 21, 2017, Mr. Cavanaugh texted her "You are like a daughter to me . . . Maybe a scandalous step daughter"[45] and "If you buy car insurance how would you afford those lacey shorts?"[46]  PSAMF ¶¶ 77-78; DRPSAMF ¶¶ 77-78.

---

then later admitted most of the substance of the assertion, without identifying any specific dispute—and admits PSAMF ¶¶ 70-71 as slightly altered to reflect the record.

[44]    Mr. Nguyen objects that PSAMF ¶ 90 should be disregarded as not supported by citations to specific text messages.  DRPSAMF ¶ 90.  The Court overrules this objection for the reasons discussed in footnotes 37 and 43 and admits PSAMF ¶ 90.

[45]    Mr. Nguyen qualifies PSAMF ¶ 77 to object that the assertion that "Mr. Cavanaugh abused Ms. Wadsworth's trust" is conclusory and speculative.  DRPSAMF ¶ 77.  The Court sustains the objection and has removed the conclusory portion of the assertion.  The Court admits the remainder of PSAMF ¶ 77.

[46]    In PSAMF ¶ 77, Ms. Wadsworth states:

> Mr. Cavanaugh abused Ms. Wadsworth's trust over the following weeks, sending her several sexually charged text messages: on July 21, 2017, "You are like a daughter to me . . . Maybe a scandalous step daughter."

Each of the PSAMF ¶¶ 78-82 quotes a text message from Mr. Cavanaugh to Ms. Wadsworth.

In response to Ms. Wadsworth's PSAMF ¶¶ 78-82, Mr. Nguyen admits for the most part that the "cited record material supports the quoted language," but he goes on to say that the "statements in this paragraph are both conclusory and speculative."  DRPSAMF ¶¶ 78-82.  As the Court understands Mr. Nguyen's response and objection, he is not objecting to the accuracy that Mr. Cavanaugh's texts contained the quoted language, but he is objecting to the characterization that these statements "abused Ms. Wadsworth's trust", which is not a fact, but a conclusion or opinion.  The Court eliminated the introductory phrase about abuse of trust and recited the quotations from Mr. Cavanaugh's texts to Ms. Wadsworth.

Mr. Nguyen also objects that PSAMF ¶¶ 78 and 82 are miscited.  DRPSAMF ¶¶ 78, 82.  Mr. Nguyen is correct, but the Court finds each of the disputed text messages on nearby pages and overrules the objections.  *See Joint R. Materials,* Attach. 18*, Text Messages Between Mr. Cavanaugh and Ms. Wadsworth* (*Text Messages*) at 12, 17.  With the exception of the introductory language, the Court admits PSAMF ¶¶ 78-82.

On July 27, 2017, he texted her "How casual is sex with your friends?  Like is it no big deal or what?"  PSAMF ¶ 79; DRPSAMF ¶ 79.  Three days later, Mr. Cavanaugh texted Ms. Wadsworth "Good you should be at the beach.  I would ask for pictures, but that might be a bit much . . . Can I see the photos or would that bother you? Only send the scandalous ones! Ha hah."  PSAMF ¶ 80; DRPSAMF ¶ 80.  Later that day, he texted her "Do you have any more [pictures] you could send?"  PSAMF ¶ 81; DRPSAMF ¶ 81.  On August 2, 2017, he texted her "Can you help me Friday or will you be taking more nude pictures of yourself?"  PSAMF ¶ 82; DRPSAMF ¶ 82.

On August 2, 2017, Ms. Wadsworth told Mr. Cavanaugh that she had been sexually assaulted by her cheerleading coach while swimming during an off-season cheerleading team trip earlier that summer.[47]  PSAMF ¶¶ 72-73; DRPSAMF ¶¶ 72-73.  Mr. Cavanaugh responded, in part:

> Even if he [took you swimming], it should have only been swimming, a few laughs and that's it.  I mean when I go to the beach (ve[r]y rare) and i see a student in a bikini, it can be awkward.  I mean the pictures you sent me, they are great shots and well taken, but there is no mistaking that you a pretty snappy number. So to be at the beach with you alone was not t[h]e best because he is seeing you with pret[t]y much not[h]ing on.[48]

---

[47]    PSAMF ¶¶ 72-76 and 83-88 concern allegations that Ms. Wadsworth was sexually assaulted by a cheerleading coach, told Mr. Cavanaugh about the assault, and Mr. Cavanaugh failed to report it or take any corrective action.  Mr. Nguyen acknowledges the content of the quoted text messages supporting Ms. Wadsworth's assertions but denies virtually every other facet of the assertions as speculative, conclusory, or unsupported by the record.  DRPSAMF ¶¶ 72-76, 83-88.

Ms. Wadsworth does not allege that Mr. Nguyen had any knowledge of the alleged sexual assault, Mr. Cavanaugh's response, or the related text messages.  These messages are thus of limited relevance for the reasons discussed in footnote 5.  The Court admits portions of these assertions that provide basic context for Mr. Cavanaugh's later inappropriate text messages.  *See, e.g.,* PSAMF ¶ 88 (Mr. Cavanaugh contrasting his experiences seeing students in bikinis and calling Ms. Wadsworth "a pretty snappy number".  The Court omits PSAMF ¶¶ 74-76 and 83-87 and admits altered or partial versions of PSAMF ¶¶ 72-73 and 88 as relevant to establishing Mr. Cavanaugh's misconduct.

[48]    The Court admits an abridged PSAMF ¶¶ 88, as explained in footnote 47.

PSAMF ¶ 88; DRPSAMF ¶ 88.  This conversation continued until August 4, 2017, at which time Mr. Cavanaugh told Ms. Wadsworth to put on "her Mickey Mouse negligee" and go to bed, and then stated, "Im deleting our conversations, and the swimsuit pictures, as much as i hate to! Hah hah."[49]  PSAMF ¶ 89; DRPSAMF ¶ 89.

### 6.    Andrew  Cavanaugh Pulling Adrianna Wadsworth from Class

Mr. Cavanaugh would regularly pull Ms. Wadsworth out of class to have meetings with her in his office.[50]  PSAMF ¶ 106; DRPSAMF ¶ 106.  Mr. Cavanaugh would excuse Ms. Wadsworth's absences from class and school, despite not having the authority to do so.[51]  PSAMF ¶ 107; DRPSAMF ¶ 107.

On October 4, 2016, Ms. Wadsworth's English teacher sent an email to Mr. Cavanaugh, Assistant Principal Linda Pease, Ms. Philbrook, and Mr. Nguyen stating that she and another English teacher wanted to "voice [their] concern about Anna Wadsworth being pulled from [Writing Center and AP Language classes] at the

---

[49]    The Court omits PSAMF ¶ 91 as virtually identical to PSAMF ¶ 43.  *Compare* PSAMF ¶ 43 ("Shockingly, Mr. Cavanaugh did not try to hide the fact that he was sending text messages to Ms. Wadsworth, and according to him, he may have told Ms. Philbrook, Mr. Nguyen, and Athletic Director, Matt Lash, that he was exchanging text messages with Ms. Wadsworth") *with* PSAMF ¶ 91 ("Mr. Cavanaugh did not try to hide the fact that he was sending text messages to Ms. Wadsworth, and according to him, he may have told Ms. Philbrook, Mr. Nguyen, and Athletic Director, Matt Lash, that he was exchanging text messages with Ms. Wadsworth").

[50]    Mr. Nguyen qualifies PSAMF ¶ 106 to object "[t]he cited record material indicates that Ms. Wadsworth told a teacher that she was talking to Mr. Cavanaugh when she got 'called down' a lot" and "[o]therwise, the cited record material does not support the assertion in this paragraph." DRPSAMF ¶ 106.  The Court finds the cited deposition testimony to clearly read that a teacher asked Ms. Wadsworth who kept calling her from class and she responded that it was Mr. Cavanaugh calling her to come talk with him.  *See Wadsworth Dep. Vol. I* at 187:9-18.  The Court overrules the objection and admits PSAMF ¶ 106.

[51]    Mr. Nguyen qualifies DRPSAMF ¶ 107 to object that is conclusory and unsupported by the record.  DRPSAMF ¶ 107.  The assertion that "[d]uring these meetings, Mr. Cavanaugh continued his inappropriate and sexual conversations with Ms. Wadsworth" is not supported by the cited testimony and the Court omits that portion of PSAMF ¶ 107.  The Court admits the remainder of PSAMF ¶ 107 as supported by the record.  *See Nolan Dep.* at 105:5-11.

request of [Mr. Cavanaugh's] office."[52]   PSAMF ¶ 108; DRPSAMF ¶ 108; *Joint R. Materials*, Attach. 31, *Email Forward from Tamra Philbrook to Chuck Nguyen Dated November 17, 2020*.  Both School Assistant Principals, Ms. Pease and Ms. Philbrook, approached Mr. Cavanaugh and advised him not to "haul Anna out of a class or keep her from class."  PSAMF ¶ 109; DRPSAMF ¶ 109.

Mr. Cavanaugh replied to the teachers' email, stating:

> Anna has some issues outside of class that we are working to resolve.  I know she is extremely conscientious regarding her coursework and you are correct regarding her stress level.  I apologize for her being removed during these important classes and I will make sure it does not happen again.[53]

PSAMF ¶ 110; DRPSAMF ¶ 110.  Despite this assurance, Mr. Cavanaugh continued to pull Ms. Wadsworth from classes.[54]  PSAMF ¶ 111; DRPSAMF ¶ 111.  Mr. Nguyen

---

[52]     Mr. Nguyen objects that PSAMF ¶ 108 is hearsay, asserting that the emails are out of court statements offered for the truth of the matters asserted.  DRPSAMF ¶ 108.  This objection is unavailing.  First, this is a brief email string between a teacher to and from the principal of the school concerning a student and her attendance at classes.  The emails use school email addresses and copy the assistant principals and the school counselor.  As such, they fall well within the hearsay exception of Federal Rule of Evidence 803(6).

Moreover, in the specific context of this motion, PSAMF ¶ 108 is more relevant for its effect on Mr. Nguyen than for the truth of the matter asserted by the teacher—that Mr. Cavanaugh had been pulling Ms. Wadsworth from class.  There is no serious dispute as to the truth of the latter allegation. *See* DRPSAMF ¶¶ 109-10 (Mr. Nguyen admitting that two assistant principals advised Mr. Cavanaugh not to "haul Anna out of a class or keep her from class" and that Mr. Cavanaugh responded to the teachers' email to say he would "make sure it does not happen again.").

Instead, the Court finds PSAMF ¶ 108 relevant to the claim against Mr. Nguyen because Mr. Nguyen was a recipient of the email, and it is thus evidence that he was aware that other teachers were concerned about Mr. Cavanaugh's behavior with Ms. Wadsworth.  Because the email is not offered for its truth it is not hearsay.  FED. R. EVID. 801(c)(2) ("'Hearsay' means a statement that . . . a party offers to prove the truth of the matter asserted in the statement").  Either way for purposes of this motion, the Court overrules the objection and admits PSAMF ¶ 108.

[53]     Mr. Nguyen qualifies PSAMF ¶ 110 to object to Ms. Wadsworth's paraphrasing of the email.  DRPSAMF ¶ 110.  The Court supplies the language of the email and overrules Mr. Nguyen's objection as moot.  *Email Forward from Tamra Philbrook to Chuck Nguyen Dated November 17, 2020*.

[54]     Mr. Nguyen denies PSAMF ¶ 111 as conclusory and unsupported by the record.  DRPSAMF ¶ 111.  The Court omits the assertion that Mr. Cavanaugh "lied" but admits the remainder of PSAMF ¶ 111 as supported by the record.  *See Joint R. Materials*, Attach. 29, *Email exchange with Penny Morrill, Tamra Philbrook and others dated December 4, 2017* (listing fifteen times Mr. Cavanaugh excused Ms. Wadsworth's absence or tardiness after his "I will make sure it does not happen again" email).

was not aware of how frequently Mr. Cavanaugh was excusing Ms. Wadsworth from School or that Mr. Cavanaugh had instructed the attendance secretary not to record Ms. Wadsworth's absences.[55]  DSMF ¶¶ 79-80; PRDSMF ¶¶ 79-80.

### 7.   The Car and September 19, 2017 Traffic Stop[56]

Mr. Cavanaugh purchased a car, insured that car, and gave it to Ms. Wadsworth for her personal use.  PSAMF ¶ 92; DRPSAMF ¶ 92.  Chris Spear, a member of the Waldoboro Police Department and School staff, observed Ms. Wadsworth driving a black Hyundai vehicle, ran the plate with dispatch, and the vehicle came back as owned by Mr. Cavanaugh.  PSAMF ¶ 93; DRPSAMF ¶ 93.

Following the traffic stop, Officer Spear returned to the school, where he spoke with Ms. Philbrook about the traffic stop and expressed his concern that Ms. Wadsworth was driving a vehicle owned and insured by Mr. Cavanaugh.  PSAMF ¶

---

[55]     The Court omits PSAMF ¶¶ 112-19, which concern Mr. Cavanaugh pulling Ms. Wadsworth from class, for the reasons discussed in footnote 5. Ms. Wadsworth does not allege that Mr. Nguyen had any knowledge of these facts and the record has already established that Mr. Nguyen was aware that teachers were complaining about Mr. Cavanaugh regularly pulling Ms. Wadsworth from class.

[56]     Ms. Wadsworth proposed PSAMF ¶¶ 92-105 assert facts relating to Ms. Wadsworth being pulled over driving a car registered to Mr. Cavanaugh and subsequent conversations where staff members and a police officer expressed concern about Mr. Cavanaugh's behavior.  Mr. Nguyen however, had no knowledge of this incident or of Mr. Cavanaugh providing Ms. Wadsworth with a car. DSMF ¶ 45; PRDSMF ¶ 45.  The Court admits an abridged summary of these incidents that provides context relating to other staff members' concerns about Mr. Cavanaugh's behavior but omits the remainder of PSAMF ¶¶ 92-105 for the reasons discussed in footnote 5.

Additionally, proposed DSMF ¶¶ 50-56 consist of assertions relating to Ms. Kenniston's and Ms. Wadsworth's father's lack of concern about the car.  Because the record has established that Mr. Nguyen did not have any knowledge of the car—and, even if Mr. Nguyen had been aware of the car, these beliefs of non-parties would be at best marginally relevant—the Court omits DSMF ¶¶ 50-56 for the reasons stated in footnote 5.

Finally, proposed DSMF ¶¶ 73-76 also related to the circumstances where Ms. Kenniston did not raise concerns.  The record establishes that Ms. Kenniston eventually raised her concerns first to Mr. Nguyen and then reported them to law enforcement.  As she is not a party and is not alleged to have had any contact with Mr. Nguyen aside from the phone call about birth control, the Court does not find these assertions to be relevant and omits DSMF ¶¶ 73-76 for the reasons discussed in footnote 5.

97; DRPSAMF ¶ 97.  Ms. Philbrook informed Officer Spear that she and Ms. Pease had tried to have professional conversations with Mr. Cavanaugh with regard to his behavior towards Ms. Wadsworth.  PSAMF ¶ 100; DRPSAMF ¶ 100.

Officer Spear later approached Mr. Cavanaugh, told him of the traffic stop, and advised him that staff and students had spoken about his relationship with Ms. Wadsworth, and that the perception was that she was receiving special treatment in the form of favoritism from Mr. Cavanaugh.  PSAMF ¶ 102; DRPSAMF ¶ 102.  Mr. Cavanaugh admitted to Officer Spear that he had heard the speculation but advised that he was not really concerned.  PSAMF ¶ 103; DRPSAMF ¶ 103.  Officer Spear then sent an email to the Waldoboro Police Chief titled "Pervert Principal" which described many of Mr. Cavanaugh's behaviors relating to Ms. Wadsworth.[57]  PSAMF ¶ 104; DRPSAMF ¶ 104.  After the September 19, 2017 traffic stop, conversations about Mr. Cavanaugh's behavior, and "pervert principal" email, no official action was taken relating to Mr. Cavanaugh's behavior with Ms. Wadsworth for over a month.[58]  PSAMF ¶ 105; DRPSAMF ¶ 105.

### 8.    The State of the Harassment Prior to the Investigation

The record includes a number of assertions regarding Ms. Wadsworth's views on and other persons' knowledge of the harassment that do not fit neatly into the timeline of specific incidents.

---

[57]    Mr. Nguyen objects to what it views as conclusory allegations in PSAMF ¶ 104.  DRPSAMF ¶ 104.  The Court sustains the objection in part, omitting the descriptions of Mr. Cavanaugh "perpetrating" behaviors that were "concerning" on Ms. Wadsworth and admitting the factual assertions.

[58]    Mr. Nguyen denies PSAMF ¶ 105 as conclusory and unsupported by the facts.  DRPSAMF ¶ 105.  The Court sustains the objection in part and has pared back PSAMF ¶ 105 to include only factual assertions supported by the record.

Despite being uncomfortable with Mr. Cavanaugh's behavior and feeling that "there are certain times where I should say that I don't want to talk about this or I should not engage in this and probably shouldn't be talking about this . . . it got a little too far," Ms. Wadsworth feared that if she told him "that would change our dynamics a lot and if I made it a big deal how is that going to affect school and feel awkward to go to school and how can you ignore the principal in the school and how is it going to make school awkward."[59]  DSMF ¶¶ 29-30; PRDSMF ¶¶ 29-30; *Wadsworth Dep. Vol. I* at 150:2-24.  After the allegations against Mr. Cavanaugh became public, Ms. Wadsworth told a classmate with whom she was living, Ashley Kenniston, not to say anything she knew about Ms. Wadsworth's interactions with Mr. Cavanaugh to Mr. Nguyen and also told Ashley Kenniston that she was vague when communicating with Mr. Nguyen.[60]  DSMF ¶¶ 31-32; PRDSMF ¶¶ 31-32.

Ms. Wadsworth was aware that there were comments going around the whole school about her interactions with Mr. Cavanaugh.[61]  DSMF ¶ 33; PRDSMF ¶ 33. Ms. Wadsworth questioned "all the time" whether Mr. Cavanaugh's behavior was appropriate, but worried that she was "overthinking . . . being dramatic . . . [and

---

[59]     Ms. Wadsworth contends that Mr. Nguyen's proposed assertions in DSMF ¶¶ 29-30 omit important context underlying her testimony.  PRDSMF ¶¶ 29-30.  The Court agrees and admits DSMF ¶¶ 29-30, modified to quote directly from Ms. Wadsworth's record testimony.

[60]     Ms. Wadsworth qualifies DSMF ¶¶ 31-32 to object that these conversations occurred "after the allegations had come out" and that Mr. Nguyen called another student into his office to ask the student about Ms. Wadsworth's relationship with Mr. Cavanaugh.  PRDSMF ¶¶ 31-32.  The Court adds the temporal clarification but rejects the qualification about the other student as beyond the scope of the facts asserted and admits DSMF ¶¶ 31-32.

[61]     Mr. Nguyen frames the assertion as "Ms. Wadsworth believes" while Ms. Wadsworth objects that her belief was supported by record evidence.  DSMF ¶ 33; PRDSMF ¶ 33.  The Court has already established that the relationship was "common knowledge," *see* PSAMF ¶ 157, and admits DSMF ¶ 33 slightly modified to reflect the factual basis for Ms. Wadsworth's belief.

risked] push[ing] away another person in [her] life by making something that it's not."[62] DSMF ¶ 34; PRDSMF ¶ 34; *Wadsworth Dep. Vol. I* at 152:1-18.  She "was really confused as to whether or not I was having good [judgment] there or whether [she] could trust [her]self . . . [but] reminded [her]self that if it was really what [she] was worried of what it was, then there was a lot of people who knew about the situation and knew" about the relationship, specifically that she "discussed it with Mr. Nguyen and there was definitely comments made around the whole school basically." *Wadsworth Dep. Vol. I* at 152:5-13.  Because the teachers and staff were not "concerned enough to do anything" Ms. Wadsworth concluded that she was "definitely overthinking it and making this out to be something that it's not, and [she] felt guilty making it out to be something that it wasn't."  *Id.* at 152:13-18.

Ms. Wadsworth's relationship with Mr. Cavanaugh was never physical and he never made any physical contact with her that was inappropriate or sexual.  DSMF ¶¶ 106-07; PRDSMF ¶¶ 106-07.  Ms. Wadsworth does not recall using the term "sexual harassment" with anyone to describe Mr. Cavanaugh's conduct, but she did not know what sexual harassment was at that time.[63]  DSMF ¶ 108; PRDSMF ¶ 108. Ms. Wadsworth also does not recall reporting to anyone that Mr. Cavanaugh's conduct constituted "discrimination."   DSMF ¶ 110; PRDSMF ¶ 110.   No one

---

[62]     Mr. Nguyen's proposed DSMF ¶ 34 asserts that "Ms. Wadsworth did not believe that MVHS teachers or staff were concerned about her interactions with Mr. Cavanaugh."  Ms. Wadsworth counters that she raised concerns about the relationship with Mr. Nguyen but then—believing that teachers and staff were aware but unconcerned—began to regularly distrust her own judgment of whether Mr. Cavanaugh's behavior was inappropriate.   PRDSMF ¶ 34.  Ms. Wadsworth's qualifications are relevant and supported by her deposition testimony. *See Wadsworth Dep. Vol. I* at 152:1-18.  The Court expands on and alters DSMF ¶ 34 to reflect Ms. Wadsworth's testimony.

[63]     Ms. Wadsworth qualifies DSMF ¶ 108 to add that she did not know what sexual harassment was at that time.  PRDSMF ¶ 108.  The Court accepts her qualification as supported by the record.

suggested to Ms. Wadsworth that Mr. Cavanaugh's conduct constituted sexual harassment or discrimination. DSMF ¶¶ 109, 111; PRDSMF ¶¶ 109, 111. During Ms. Wadsworth's time as a student at MVHS, Ms. Wadsworth never stated to Mr. Nguyen that she believed Mr. Cavanaugh was "harassing" her or "discriminating" against her.[64,65] DSMF ¶ 112; PRDSMF ¶ 112.

### C.    The Investigation Into Andrew Cavanaugh

Eventually, Ms. Kenniston reported her concerns to law enforcement and Superintendent Nolan began an investigation into Mr. Cavanaugh.[66,67] PSAMF ¶ 120; DRPSAMF ¶ 120. In investigating the allegations, Mr. Nolan reviewed the school's harassment policy titled, "Harassment and Sexual Harassment of Students" and made the following notes: "Interfering, pulling out of class, late nights,

---

[64]    Ms. Wadsworth qualifies DSMF ¶ 112 to reiterate that she did not know what harassment was and to add that she went to Mr. Nguyen to ask whether Mr. Cavanaugh's behavior was appropriate. PRDSMF ¶ 112. The Court added quotation marks to "harassment" and "discriminating" to clarify that the assertion is only that Ms. Wadsworth did not use those specific terms.

[65]    Mr. Nguyen's proposed DSMF ¶¶ 113-14 assert that he "had no knowledge of whether Mr. Cavanaugh was harassing or discriminating against Ms. Wadsworth" and that he "was not aware Mr. Cavanaugh was engaging in any inappropriate behavior toward Ms. Wadsworth." The Court need not recount every record example of Mr. Nguyen witnessing Mr. Cavanaugh's misbehavior but concludes that, at the very least, this record could lead a reasonable juror to find that Mr. Nguyen was aware of Mr. Cavanaugh harassing, discriminating against, and/or behaving inappropriately toward Ms. Wadsworth. To the extent other record evidence contradicts Mr. Nguyen, the Court is required to view disputed evidence in the light most favorable to Ms. Wadsworth. The Court omits DSMF ¶¶ 113-14.

[66]    Mr. Nguyen objects that the first sentence of PSAMF ¶ 120 should be stricken because Ms. Wadsworth did not include a record citation. The Court overrules this objection as frivolous, given that Mr. Nguyen asserted essentially the same facts in his own statement of material facts. *See* DSMF ¶¶ 38, 45 (asserting that "Ms. Kenniston did not attempt to raise any concerns . . . with the RSU 40 superintendent until shortly before she reached out to law enforcement in November of 2017" and referencing "the investigation into Mr. Cavanaugh's conduct that began in November of 2017").

[67]    Mr. Nguyen's proposed DSMF ¶¶ 34-38 assert facts relating to Ms. Kenniston's initial lack of concern after becoming aware that Mr. Cavanaugh was texting Ms. Wadsworth. These assertions have no bearing on the claims against Mr. Nguyen and the Court omits DSMF ¶¶ 34-38 for the reasons discussed in footnote 5.

unwelcome, asks, shouldn't have asked."[68]   PSAMF ¶ 120; DRPSAMF ¶ 120.   The

policy notes "sexual harassment includes but is not limited to . . . gestures, comments,

or other physical, written, graphic, electronic or verbal conduct that is gender-based

that interferes with a student's education."   PSAMF ¶ 121; DRPSAMF ¶ 121.   In

investigating the complaints against Mr. Cavanaugh, Superintendent Nolan made

these notes in an effort to figure out how the situation aligned with the school's

policies.[69]   PSAMF ¶ 122; DRPSAMF ¶ 122.   Additionally, Mr. Nolan, testifying on

behalf of the School, stated under oath that knowledge of: an administrator excusing

a student from class would raise "red flags" regarding Mr. Cavanaugh's behavior; a

school principal providing money to the attendance secretary to pay for Plaintiff's

prom ticket or providing money to the attendance secretary money in an envelope to

give to Plaintiff would raise "concerns"; a principal lending or giving a car to a student

would be a "gray[] area"; and a school administrator making appointment for student

to take birth control would be "highly unusual.[70]   PSAMF ¶ 123; DRPSAMF ¶ 123.

---

[68]     Mr. Nguyen contends that Superintendent Nolan's handwritten notes should be disregarded as inadmissible hearsay.   DRPSAMF ¶ 120.   The Court finds that it is not necessary to resolve this issue because Mr. Nolan adopted the content of the notes in his deposition testimony, and they are therefore not out of court statements subject to the hearsay rule.   *See Nolan Dep.* at 167:1-169:12.   The Court overrules the objection and admits the remainder of PSAMF ¶ 120.

[69]     Mr. Nguyen qualifies PSAMF ¶ 122, objecting the cited testimony does not support that Superintendent Nolan concluded the information was inconsistent with the school's policies. DRPSAMF ¶ 122.   The Court agrees with Mr. Nguyen's interpretation of Superintendent Nolan's testimony, sustains the objection, and omits the contested portion of PSAMF ¶ 122.   *See Nolan Dep.* at 168:2-169:8 (explaining that he was "trying to figure out how a specific situation may align with one or more of our policies" but declining to state that Mr. Cavanaugh's behavior violated the policies).

[70]     Mr. Nguyen qualifies PSAMF ¶ 123 to contend that Superintendent Nolan did not specifically describe these behaviors as "raising red flags."   DRPSAMF ¶ 123.

        Mr. Nguyen first objects that "[t]he cited record material does not support the assertion that an administrator excusing a student from class (as opposed to excusing an absence from school) raised a red flag."   DRPSAMF ¶ 123.   The record, however, shows that Mr. Nolan specifically testified that excusing a student from *class* would raise a red flag.   *See Nolan Dep.* at 103:8-21 (responding "yes" when asked whether the fact that "Mr. Cavanaugh excused and/or exempted Ms. Wadsworth from being *in class*" would raise red flags) (emphasis added).

Mr. Nolan went on to testify that, individually, several of the facts asserted during the investigation would have potentially given him a reason to investigate Mr. Cavanaugh, including: the appointment about birth control, the fact that Mr. Cavanaugh had provided a car to a student, the fact that Mr. Cavanaugh called a student "cupcake," and the fact that Mr. Cavanaugh had seen nude photos of a student.[71]  PSAMF ¶ 124; DRPSAMF ¶ 124.

Around this time, Chris McLean, an attorney representing Mr. Cavanaugh with regard to the school board investigation, went "to the school and [waited] in the parking lot" to speak with Ms. Wadsworth.  PSAMF ¶ 129; DRPSAMF ¶ 129.  This encounter with the attorney occurred after Mr. Cavanaugh was instructed not to go to the school."[72]  PSAMF ¶ 130; DRPSAMF ¶ 130.  Ms. Wadsworth got into the attorney's car in the school parking lot and the attorney encouraged Ms. Wadsworth to sign an affidavit supporting Mr. Cavanaugh, repeatedly stating "Mr. Cavanaugh is a stand-up guy, wouldn't you agree?"[73]  PSAMF ¶¶ 131-32; DRPSAMF ¶¶ 131-32.

---

Regarding the other behaviors, Superintendent Nolan did not specifically characterize them as "red flags" but instead as raising "concerns," "highly unusual," or a "gray[] area."  The Court modified PSAMF ¶ 123 to reflect Mr. Nolan's testimony.

[71]     PSAMF ¶¶ 125-28 assert facts relating to Mr. Cavanaugh refusing to return his school-issued hard-drive or cellular phone after his resignation.  Mr. Nguyen is not alleged to have any knowledge of or role in these events.  The Court omits these proposed assertions for the reasons discussed in footnote 5.

[72]     Mr. Nguyen objects that the record is not clear whether this encounter occurred before or after Mr. Cavanaugh was instructed not to go to the school.  DRPSAMF ¶ 130.  Ms. Wadsworth's deposition references "around the time of September through November of 2017," *Wadsworth Dep. Vol. I* at 181:14-15, as a time frame.  Superintendent Nolan first called Mr. Cavanaugh about the allegations relating to Ms. Wadsworth on November 5 and informed him during that call "do not report to school," as a standing directive.  *Nolan Dep.* at 190:14-191:10.  Given that Mr. Cavanaugh was immediately banned from school upon learning of the investigation, there is no evidence in this record that he would have retained an attorney about this issue and had that attorney seek out Ms. Wadsworth *before* Superintendent Nolan issued this "standing directive."  The Court admits PSAMF ¶ 130 as supported by the record.

[73]     Mr. Nguyen qualifies PSAMF ¶ 131 to submit that the record only "indicates that Mr. McLean talked with Ms. Wadsworth about the potential of her signing an affidavit."  DRPSAMF ¶ 131.  The

Ms. Wadsworth never signed the proposed affidavit.  PSAMF ¶ 133; DRPSAMF ¶ 133.

Three law enforcement officials—Chief Labombarde, Officer Spear, and Detective Donald Murray—investigated the allegations and evidence against Mr. Cavanaugh and each concluded that Mr. Cavanaugh had not committed a crime.[74] DSMF ¶¶ 81-105; PRDSMF ¶¶ 81-105.  Detective Murray did not interview Mr. Nguyen as part of his investigation.  DSMF ¶ 84; PRDSMF ¶ 84.  When Detective Murray interviewed Ms. Wadsworth, she did not mention Mr. Nguyen during the interview.[75]  DSMF ¶ 87; PRDSMF ¶ 87.

### D.    Chuck Nguyen's Conduct During and After the Investigation

After the investigation began, Mr. Nguyen reached out to Mr. Cavanaugh a few times trying to be supportive and helpful, telling Mr. Cavanaugh that that he should not have texted Ms. Wadsworth so much, but that Mr. Nguyen knew he was a good guy and assured him that things would work out.[76]  PSAMF ¶¶ 134-35; DRPSAMF ¶¶ 134-35.  In November 2017, in reference to the investigation, the

---

Court has slightly altered PSAMF ¶ 131 to reflect Ms. Wadsworth's testimony.  *See Wadsworth Dep. Vol. I* at 181:13-182:15.

[74]     Mr. Nguyen's proposed DSMF ¶¶ 81-105 provide granular detail on each officer's investigation and conclusions.  But Mr. Nguyen's fundamental assertion, that Mr. Cavanaugh's behavior towards Ms. Wadsworth did not constitute a criminal offense, is undisputed.  Accordingly, the Court admits a summary of DSMF ¶¶ 81-105.  The Court omits the remainder of DSMF ¶¶ 81-105, except for DSMF ¶¶ 84 and 87—the only of these assertions to mention Mr. Nguyen—which it addresses in the following sentences.

[75]     Ms. Wadsworth admits the substance of DSMF ¶ 87 but qualifies it to assert that she was "very upset and caught off guard" by the interview.  PRDSMF ¶ 87.  The Court overrules the objection as beyond the scope of the fact asserted and admits DSMF ¶ 87.

[76]     Mr. Nguyen qualifies PSAMF ¶ 134 to object that it was only Mr. Cavanaugh's impression that Mr. Nguyen was "trying to be supportive and helpful" and that the record does not support his actual motivations.  DRPSAMF ¶ 134.  The Court overrules this objection as frivolous and admits PSAMF ¶ 134.  *See* DRPSAMF ¶ 135 (Mr. Nguyen admitting that he reached out to Mr. Cavanaugh to tell him that "he knew [Mr. Cavanaugh] was a good guy and assur[ing] him that things would work out").

Waldoboro Police Chief advised Mr. Nolan that Mr. Nguyen thought the school should be more supportive of Mr. Cavanaugh, that Ms. Wadsworth was "bringing it on herself," and that Mr. Nguyen was trying to get her to talk about the situation with him.[77]   PSAMF ¶ 136; DRPSAMF ¶ 136.   Mr. Nolan expressed concern that Mr. Nguyen was "maybe . . . was, knowingly or unknowingly" interfering with the investigation into Mr. Cavanaugh.[78]   PSAMF ¶ 137; DRPSAMF ¶ 137.   As a result, Mr. Nolan instructed Mr. Nguyen not to have any contact with Mr. Cavanaugh regarding Ms. Wadsworth, and also instructed Mr. Nguyen not to have contact with Ms. Wadsworth.[79]   PSAMF ¶ 138; DRPSAMF ¶ 138.

Mr. Nguyen met with Ms. Wadsworth approximately five times after the allegations about Mr. Cavanaugh came out, although it is unclear from the record whether any or all of those meetings occurred after Mr. Nolan warned Mr. Nguyen

---

[77]   Mr. Nguyen qualifies PSAMF ¶ 136 to object that Chief Labombarde's comments are hearsay because they are out of court statements offered for their truth.   The Court disagrees.   Mr. Nolan's deposition testimony indicates that Chief Labombarde was merely relaying comments made to him by Mr. Nguyen.   *Nolan Dep.* at 203:16-205:8.   Mr. Nguyen's comments are therefore admissible against him as statements of a party opponent.   FED. R. EVID. 801(d)(2).

[78]   Mr. Nguyen qualifies PSAMF ¶ 137 to object that "the cited record material is nothing more than speculation" and the First Circuit has held that courts must ignore "unsupported speculation" on summary judgment.   DRPSAMF ¶ 137 (quoting *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 30 (1st Cir. 2010).   The Court does not find Mr. Nolan's speculation to be unsupported; instead, the record has established that the police chief had recently expressed concern to him that, among other things, Mr. Nguyen was criticizing the investigation and "trying to get [Ms. Wadsworth] to talk about the situation with him."   PSAMF ¶ 136.   The Court overrules Mr. Nguyen's objection and admits PSAMF ¶ 137, slightly modified to reflect Mr. Nolan's testimony.   *See Nolan Dep.* at 207:1-5.

[79]   Mr. Nguyen qualifies PSAMF ¶ 138 to object that Mr. Nolan's testimony supporting the assertion is "inadmissible hearsay."   DRPSAMF ¶ 138.   The Court is puzzled by Mr. Nguyen's objection.   The assertions in PSAMF ¶ 138 are supported by Mr. Nolan's testimony about his own statements to Mr. Nguyen—not, for example, statements Mr. Nolan relayed from a third party or statements of Mr. Nolan that Mr. Nguyen heard from someone other than Mr. Nolan.   The Court thus does not understand the basis of Mr. Nguyen's hearsay objection.   While deposition testimony may ordinarily be hearsay when offered at trial, Federal Rule of Civil Procedure 56 provides that for summary judgment a party can support an assertion by "citing to particular parts of materials in the record, *including depositions* . . .."   FED. R. CIV. P. 56(c) (emphasis added).   The Court overrules the objection and admits PSAMF ¶ 138.

not to have contact with her.[80]  PSAMF ¶ 139; DRPSAMF ¶ 139.  During one of the first meetings after the allegations came out, Mr. Nguyen told Ms. Wadsworth that Mr. Cavanaugh did not do anything inappropriate or have any inappropriate conversations with her, going on to say Mr. Cavanaugh was a "stand-up guy," and that "it's not what they are making it out to be."  PSAMF ¶ 140; DRPSAMF ¶ 140. Mr. Nguyen advised Ms. Wadsworth that if she wanted to help, she could sign an affidavit and "tell the truth."  PSAMF ¶ 141; DRPSAMF ¶ 141.

Ms. Wadsworth later went to Mr. Nguyen to tell him that Mr. Cavanaugh's family members had been sending her upsetting messages relating to Mr. Cavanaugh being investigated for his behavior with her, and as a result she no longer wanted to go to school.[81]  PSAMF ¶ 142; DRPSAMF ¶ 142.  Instead of reporting this further behavior to anyone at the school, Mr. Nguyen told Ms. Wadsworth that Mr. Cavanaugh's family had a right to be angry and advised Ms. Wadsworth to apologize to Mr. Cavanaugh's wife and niece, who was another student at the school.[82]  PSAMF ¶ 143; DRPSAMF ¶ 143.

---

[80]    Mr. Nguyen qualifies PSAMF ¶ 139 to object to the assertion that the meetings occurred after Mr. Nolan's warnings.  DRPSAMF ¶ 139.  The record is unclear when the meetings occurred in relation to Mr. Nolan's warnings, *see Wadsworth Dep. Vol. II* at 36:12-23, and the Court has altered PSAMF ¶ 139 to address Mr. Nguyen's concern and reflect the temporal uncertainty.

[81]    Mr. Nguyen qualifies PSAMF ¶ 142 to clarify that Ms. Wadsworth went to Mr. Nguyen to have this discussion and to object that characterizing Mr. Cavanaugh's behavior as "harassment" improperly asserts a legal conclusion.  DRPSAMF ¶ 142.  The Court altered PSAMF ¶ 142 slightly to address Mr. Nguyen's concerns and reflect Ms. Wadsworth's testimony.

[82]    Mr. Nguyen qualifies PSAMF ¶ 143 to object that the cited testimony does not support the assertion that Mr. Cavanaugh's niece was another student at the school.  DRPSAMF ¶ 143.  The Court agrees that this assertion is not referenced in the cited testimony but finds support for the assertion elsewhere in Ms. Wadsworth's deposition and admits PSAMF ¶ 143 in its entirety.  *See Wadsworth Dep. Vol. II* at 121:1-5 (Ms. Wadsworth had a dispute "with a girl in class . . . who's Mr. Cavanaugh's niece").

In another meeting with Ms. Wadsworth in his office, Mr. Nguyen stood up, closed the door to his office, and informed Ms. Wadsworth that Mr. Cavanaugh had a drinking problem and that he lost sight of his boundaries; he went on to tell Ms. Wadsworth to picture a day in the future, in college, having coffee with Mr. Cavanaugh, when "all of this would be gone and over with."[83]  PSAMF ¶ 144; DRPSAMF ¶ 144.  On January 12, 2018, at 7:26 p.m., Ms. Wadsworth reached out to Mr. Nguyen via Facebook messenger and complained that Mr. Cavanaugh's wife had messaged her.  PSAMF ¶ 145; DRPSAMF ¶ 145.  Mr. Nguyen responded that Mr. Cavanaugh's wife was mad that Ms. Wadsworth had not signed the affidavit, advised her that Mr. Cavanaugh's wife had a right to be mad, and offered to reach out to Mr. Cavanaugh on Ms. Wadsworth's behalf.  PSAMF ¶ 145; DRPSAMF ¶ 145.

According to Mr. Nolan, had he been aware that Mr. Nguyen continued to meet with Ms. Wadsworth after he was instructed not to, he would have called for an investigation to potentially discipline Mr. Nguyen.[84]  PSAMF ¶ 146; DRPSAMF ¶ 146.  After Mr. Nguyen was instructed not to have contact with Ms. Wadsworth, Mr. Spear observed Ms. Wadsworth crying in the hallway, and observed Mr. Nguyen chase her down the hallway.[85]  PSAMF ¶ 147; DRPSAMF ¶ 147.  In or around

---

[83]     Mr. Nguyen qualifies PSAMF ¶ 144 to object to the characterization of the meeting as "yet another inappropriate meeting."  DRPSAMF ¶ 144.  The Courts sustains the objection, omits that characterization, and admits the remainder of PSAMF ¶ 144.

[84]     Mr. Nguyen qualifies PSAMF ¶ 146 to object that Mr. Nolan did not specifically say that he would have disciplined Mr. Nguyen.  DRPSAMF ¶ 146.  The Court modified PSAMF ¶ 146 slightly to address this concern and reflect Mr. Nolan's testimony.

[85]     Mr. Nguyen makes several objections that the Court views as bordering on frivolous.  Ms. Wadsworth asserts that Officer Spear saw her "crying in the hallway" and then Mr. Nguyen "chase her down the hallway."  PSAMF ¶ 147.  Mr. Nguyen counters instead that instead of "chas[ing]" her while she was "crying," he walked after her in a "hurriedly manner" when she was "visibly upset."  DRPSAMF ¶ 147.  Officer Spear, however, testified that he observed Mr. Nguyen "*chasing* [Ms.

November 2017, Police Chief Labombarde met with Mr. Nguyen in his office to discuss concerns that Mr. Nguyen was defending Mr. Cavanaugh's behavior.[86] PSAMF ¶ 148; DRPSAMF ¶ 148. During this conversation, Mr. Nguyen defended Mr. Cavanaugh's actions and again stated that Mr. Cavanaugh was just trying to be a father figure to Ms. Wadsworth.[87] PSAMF ¶ 149; DRPSAMF ¶ 149. Mr. Nguyen then stated to Mr. Labombarde: "You know, this could happen to you or I or anybody dealing with kids on a regular basis; somebody can make an allegation." PSAMF ¶ 150; DRPSAMF ¶ 150. Mr. Labombarde was shocked by this statement. PSAMF ¶ 150; DRPSAMF ¶ 150.

### E.   Adrianna Wadsworth's Mental Health

Ms. Wadsworth has experienced anxiety and depression, which she relates in part to the actions of Mr. Cavanaugh and Mr. Nguyen.[88] PSAMF ¶ 151; DRPSAMF

---

Wadsworth] in the hallway when "she was visibly upset" and her "eyes were welled up." *Spear Dep.* at 48:12-22 (emphasis added). The record supports Ms. Wadsworth's assertions. The Court overrules Mr. Nguyen's objections and admits PSAMF ¶ 147.

[86]    Mr. Nguyen qualifies PSAMF ¶ 148 to object that the assertion that Chief Labombarde "heard that Mr. Nguyen was defending Mr. Cavanaugh's behavior" is inadmissible hearsay. DRPSAMF ¶ 148. Even if what Chief Labombarde heard about Mr. Nguyen's behavior is hearsay, he testified at length and from his own personal knowledge about meeting with Mr. Nguyen to discuss concerns relating to Mr. Nguyen defending Mr. Cavanaugh. *See Labombarde Dep.* at 31:22-33:16. The Court admits PSAMF ¶ 148, modified slightly to reflect Chief Labombarde's personal knowledge.

[87]    Mr. Nguyen qualifies PSAMF ¶ 149 to object that the assertion that Mr. Nguyen defended Mr. Cavanaugh should be regarded as conclusory. DRPSAMF ¶ 149. The record clearly supports the assertion, and the Court admits PSAMF ¶ 149. *See Labombarde Dep.* at 33:1-12 (stating that "to hear [Mr. Nguyen] say that he thought [Mr. Cavanaugh's behavior] was – there was nothing really inappropriate about it and that Mr. Cavanaugh was just trying to be a father to her or act like a father to her, it kind of sent me off" and that when Mr. Nguyen "validated that [behavior] by saying, well, you know, it could happen to you, too, and I'm like, whatever, you know, and then I left").

[88]    Mr. Nguyen qualifies PSAMF ¶ 151 to object that the cited testimony does not support the assertion that her depression and anxiety are related to "Mr. Cavanaugh and Mr. Nguyen's actions." DRPSAMF ¶ 151. The Court disagrees. Even though the cited testimony refers to depression and anxiety she experienced at college three years later, Ms. Wadsworth immediately clarified that she spoke to the college counselor in part due to "Mr. Cavanaugh and Mr. Nguyen and this situation." *See Wadsworth Dep. Vol. II* at 23:20-24-13.

¶ 151.  In high school, Ms. Wadsworth's depression and anxiety affected her at school because she did not want to go to class anymore, and she would cry in the morning on the way to school and on her way home from school.[89]  PSAMF ¶ 152; DRPSAMF ¶ 152.  Ms. Wadsworth began going to counseling in April 2018.  PSAMF ¶ 153; DRPSAMF ¶ 153.  Ms. Wadsworth continues to suffer from anxiety and has trouble in school when dealing with male professors.[90]  PSAMF ¶ 154; DRPSAMF ¶ 154.

### F.  The District's Policies and Trainings[91]

RSU 40's Sexual Harassment Policy (The Policy) defines sexual harassment as: "Sexual harassment includes but is not limited to unwelcome sexual advances, requests for sexual favors or pressure to engage in sexual activity, physical contact of

---

Mr. Nguyen also objects that Ms. Wadsworth is not qualified to offer opinion testimony on her medical conditions or their causation.  DRPSAMF ¶ 151.  The Court notes that Ms. Wadsworth's diagnoses of anxiety and depression are not merely her own speculation, as she testified that she spoke with a doctor about her symptoms and the doctor suggested anxiety and depression medication.  *See Wadsworth Dep. Vol. II* at 54:16-55-8.  The Court admits PSAMF ¶ 151, modified to reflect that it is Ms. Wadsworth's opinion that her conditions result from Mr. Cavanaugh and Mr. Nguyen's actions.

[89]   Mr. Nguyen again objects that Ms. Wadsworth cannot offer opinion testimony as to medical causation for the conditions she is alleging.  DRPSAMF ¶ 152.  The Court interprets PSAMF ¶ 152 not to opine on what caused Ms. Wadsworth's depression and anxiety, but instead to suggest that her depression and anxiety affected her at school by causing her to not want to attend and to cry on her way there and back.  This assertion is reasonably supported by the record—particularly where a doctor later diagnosed those conditions—and the Court admits PSAMF ¶ 152.

[90]   Mr. Nguyen qualifies PSAMF ¶ 154 to object that the cited testimony does not support the assertion that Ms. Wadsworth "has trouble in school" when dealing with male professors.  DRPSAMF ¶ 154.  However, when asked whether her anxiety has "improved as [she has] gone on in [her] college career in terms of having a comfort level dealing with all of [her] professors," Ms. Wadsworth responded "[d]efinitely not."  *Wadsworth Dep. Vol. II* at 12:13-16.  Mr. Nguyen also again objects that Ms. Wadsworth is not qualified to testify as to her medical conditions and the Court overrules the objection for the reasons discussed in footnotes 88 and 89.  The Court admits PSAMF ¶ 154.

[91]   The adequacy (or inadequacy) of the District's sexual harassment policies and trainings was central to Ms. Wadsworth's claims against RSU 40 but is largely irrelevant to her claims against Mr. Nguyen.  Mr. Nguyen does not assert as a defense either that he did not report Mr. Cavanaugh's harassment because he was inadequately trained, or that he recognized and sought to report the harassment but was stymied by flaws in the District's reporting policy.  Instead, he maintains that he simply did not believe that Mr. Cavanaugh was sexually harassing Ms. Wadsworth.  For those reasons and the reasons discussed in footnote 5, the Court will omit the majority of PSAMF ¶¶ 7-20, admitting only assertions that relate to the claims against Mr. Nguyen.

a sexual nature, gestures, comments, or other physical, written, graphic, electronic or verbal conduct that is gender-based that interferes with a student's education." PSAMF ¶ 7; DRPSAMF ¶ 7.  The Policy goes on to state that "[s]chool staff shall report possible incidents of discrimination or harassment of students to [the] building principal."  PSAMF ¶ 11; DRPSAMF ¶ 11.  While the term "building principal" is undefined in the policy, Superintendent Nolan testified that "building principal" means either the School Principal (Mr. Cavanaugh) or the School Assistant Principals (Ms. Philbrook and Ms. Pease).  PSAMF ¶ 13; DRPSAMF ¶ 13.  Mr. Nguyen testified that his understanding of the sexual harassment policy was that the reports of sexual harassment were to go to a district-level affirmative action officer in the Superintendent's office.  PSAMF ¶ 26; DRPSAMF ¶ 26.  He also testified that he could report harassment to the Maine Human Rights Commission.  *Nguyen Dep.* at 32:17-20.

### G.    Adrianna Wadsworth's Notice to Chuck Nguyen

Ms. Wadsworth did not serve Mr. Nguyen with a notice of claim pursuant to the Maine Tort Claims Act (MTCA).[92]  DSMF ¶ 115; PRDSMF ¶ 115.  The only notice of claim Ms. Wadsworth filed with RSU 40 related to her claims in this case did not refer to Mr. Nguyen as an "involved" governmental employee or as part of her statement of the basis of the claim.  DSMF ¶ 116-17; PRDSMF ¶ 116-17.  Mr. Nguyen is not mentioned anywhere in the only notice of claim Ms. Wadsworth filed with RSU

---

[92]    Ms. Wadsworth qualifies each of Mr. Nguyen's MTCA assertions to offer her explanation for not initially serving him with notice.  *See* DSMF ¶¶ 115-18; PRDSMF ¶¶ 115-18.  The Court includes her explanation at the end of the paragraph and otherwise admits DSMF ¶¶ 115-18 as supported by the record.

40 related to her claims in this case.  DSMF ¶ 118; PRDSMF ¶ 118.  At the time, Ms. Wadsworth did not know the extent of Mr. Nguyen's involvement and therefore did not put him on notice directly.  PRDSMF ¶¶ 115-18.  She did provide notice to the District, where Mr. Nguyen was an employee.  PRDSMF ¶¶ 115-18.

Ms. Wadsworth also did not serve Mr. Nguyen with a notice of claim pursuant to the Maine Health Security Act (MHSA) and her claims have not been submitted to the prelitigation screening process the MHSA requires for certain claims.[93]  DSMF ¶¶ 119-20; PRDSMF ¶¶ 119-20.

## III.   THE PARTIES' POSITIONS

### A.   Chuck Nguyen's Motion for Summary Judgment

Pursuant to Federal Rules of Civil Procedure 12 and 56, Mr. Nguyen asks this Court to dismiss for lack of subject matter jurisdiction or grant summary judgment in his favor and against Adrianna Wadsworth on all counts pleaded against him in the Amended Complaint: the § 1983 (Count II) and state law tort (IV-VI) claims. *Def.'s Mot.* at 1-2.  Mr. Nguyen contends that Ms. Wadsworth's claims should be dismissed for failing to comply with the MHSA.  *Id.* at 1.  He argues further that she has failed to state a cognizable constitutional claim, that he is protected by qualified immunity, and that her tort claims failed to comply with the MTCA's notice requirements and are also barred by the MTCA's personal immunity provisions.  *Id.* at 2.

---

[93]     Ms. Wadsworth qualifies DSMF ¶¶ 119-20 to object that the MHSA's requirements are inapplicable because she is not bringing a medical malpractice claim.  PRDSMF ¶¶ 119-20.  The Court overrules her objections as beyond the scope of the facts asserted and admits DSMF ¶¶ 119-20.

1.     **The MHSA Defense**

Mr. Nguyen first submits that "Ms. Wadsworth has not complied with the requirements of Section 2903 of the MHSA" and thus "the Court lacks subject matter jurisdiction to entertain Ms. Wadsworth's claims against Mr. Nguyen and the claims must be dismissed." *Id.* at 4.  The MHSA provides that no "action for professional negligence" may be commenced until the plaintiff has complied with certain notice and prelitigation screening requirements.[94]  *Id.* at 2 (citing 24 M.R.S. § 2903(1)).  Mr. Nguyen adds that the MHSA defines an "action for professional negligence" as: "[A]ny action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services."  *Id.* at 3 (quoting 24 M.R.S. § 2502(6)).  He states further that "[t]he MHSA's provisions are broad and intended to apply to '*all* actions for professional negligence against a health care provider or practitioner.'"  *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 13, 902 A.2d 830) (emphasis in *Saunders*).

Mr. Nguyen contends that Ms. Wadsworth's claims against Mr. Nguyen are subject to the MHSA's prelitigation requirements because they "are premised on his position as a social worker and appear to allege either the failure to provide care or the provision of inappropriate care" and thus all "appear to arise 'out of the provision

---

[94]      Neither party suggests that Ms. Wadsworth may have complied with some of the MHSA's three pre-suit requirements but not others; instead, she agrees that she did not comply with any but contends that her claims were not subject to the MHSA or any of its requirements. *See* DSMF ¶¶ 119-20; PRDSMF ¶¶ 119-20.  For simplicity, the Court will refer to the MHSA's three pre-suit requirements collectively as the prelitigation requirements.

or failure to provide health care services.'" *Id.* at 3-4 (quoting 24 M.R.S. § 2502(6)). Because, in Mr. Nguyen's view, "Ms. Wadsworth has not complied with the requirements of Section 2903 of the MHSA," he argues that the Court lacks subject matter jurisdiction and must dismiss all of her claims. *Id.* at 4.

### 2. The Section 1983 Claim

The bulk of Mr. Nguyen's motion argues that the Court should grant summary judgment in his favor on Ms. Wadsworth's constitutional claim. *Id.* at 4-21. He begins by submitting that four purportedly undisputed facts are critical to the Court's analysis: (1) that Mr. Nguyen did not engage in harassing or discriminatory acts; (2) Ms. Wadsworth did not complain to Mr. Nguyen that she believed Mr. Cavanaugh was harassing or discriminating against her; (3) she concedes that Mr. Cavanaugh's alleged harassment did not involve any physical or sexual contact; and (4) Mr. Nguyen was not aware of the frequency or the content of Mr. Cavanaugh's text messages to Ms. Wadsworth. *Id.* at 5. Mr. Nguyen argues that, given these facts, "the summary judgment record does not support a substantive due process claim against Mr. Nguyen as a matter of law," because Ms. Wadsworth has not established a protected interested necessary to support a substantive due process claim, she cannot establish required elements for a "state-created danger" theory, and Mr. Nguyen is protected by qualified immunity. *Id.* at 4-21.

### a. Protected Interest

Mr. Nguyen first contends that Ms. Wadsworth "has not established a protected interest necessary to support a substantive due process claim." *Id.* at 5. He

notes that "[t]he Amended Complaint does not identify the protected interest of which Ms. Wadsworth claims she was deprived" but acknowledges that "Ms. Wadsworth has indicated in briefing that the protected interest is her bodily integrity, and the Court has accepted that assertion." *Id.*

Mr. Nguyen submits that "[w]hile this Court has held that 'students have a fundamental right to bodily integrity that includes the right to be free from sexual abuse,'" *id.* at 5-6 (quoting *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 65 (D. Me. 1999)), "it appears that right applies only to *physical* intrusions upon a person's body." *Id.* at 6 (collecting cases) (emphasis in *Def.'s Mot.*). He adds that "the alleged harassment by Mr. Cavanaugh was never physical or sexual" and thus Ms. Wadsworth's "suggestion that she was deprived of her right to bodily integrity is unsupported." *Id.* Moreover, Mr. Nguyen contends that "since verbal abuse is normally not a constitutional violation, Mr. Cavanaugh's comments, text messages, and overtures that did not involve physical contact (such as alleged gift-giving and alleged doctor's appointment arrangements) are not actionable." *Id.* He concludes that "[i]t necessarily follows that Mr. Nguyen's alleged failure to protect her from Mr. Cavanaugh's alleged actions could not have deprived Ms. Wadsworth of a constitutionally-protected interest" and the Court should grant summary judgment in his favor on Ms. Wadsworth's constitutional claim. *Id.*

### b. State-Created Danger Theory

Next, Mr. Nguyen submits that Ms. Wadsworth fails to establish the required elements of a state-created danger claim. He begins by noting that "[a]s a general

40

matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 7 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). Ms. Wadsworth instead "seeks to hold Mr. Nguyen liable for Mr. Cavanaugh's alleged conduct under the 'state-created danger' doctrine that some circuit courts of appeal—including, most recently, the First Circuit—have adopted based on dicta that appears in *DeShaney*." *Id.* (citing *Irish v. Fowler*, 979 F.3d 65, 67 (1st Cir. 2020)). Mr. Nguyen adds that, under *Irish*, to establish a state-created danger claim a plaintiff must demonstrate: "(1) that a state actor or state actors affirmatively acted to create or enhance a danger to the plaintiff; (2) that the act or acts created or enhanced a danger specific to the plaintiff and distinct from the danger to the general public; (3) that the act or acts caused the plaintiff's harm; and (4) that the state actor's conduct, when viewed in total, shocks the conscience." *Id.* (quoting *Irish*, 979 F.3d at 75). He contends that, "at minimum, the summary judgment record does not support the first and fourth elements" of this standard. *Id.*

### i.  Affirmative Act

Mr. Nguyen submits that "Ms. Wadsworth's constitutional claim against Mr. Nguyen is premised on the assertion that he failed to protect her when she complained about sexual harassment and discrimination by Mr. Cavanaugh." *Id.* He reiterates that "the premise of her claim does not exist" but adds that even if the record supported her allegations "circuit courts of appeal have held that failure to protect or ensure the safety of a plaintiff—even when a state actor has affirmatively

41

promised such protection and safety—is insufficient to create a constitutional duty to protect." *Id.* at 7-8.

Mr. Nguyen quotes heavily from *Rivera v. Rhode Island*, 402 F.3d 27 (1st Cir. 2005). *Id.* at 8. In that case a fifteen-year-old witness agreed to testify at a murder trial because of assurances made by police that she would be safe, but was then shot and killed the day before she was scheduled to testify. *Id.* (citing *Rivera,* 402 F.3d at 31-32). The First Circuit affirmed the dismissal of Rivera's state-created danger suit, holding that the government's assurances that she would be protected "do not amount to the type of state creation of risk contemplated by the doctrine . . . [in that they] are not the kind of affirmative acts by the state that would give rise to a constitutional duty to protect." *Id.* (quoting *Rivera,* 402 F.3d at 36-37) (internal quotations omitted). Mr. Nguyen adds that the Third, Fourth, and Sixth Circuit Courts of Appeals have adopted the same reasoning at the Rivera Court. *Id.* at 9-11 (collecting cases).

Citing this authority, Mr. Nguyen concludes that "Ms. Wadsworth has not established affirmative conduct by Mr. Nguyen that could support a state-created danger claim." *Id.* at 12. He asserts that "Mr. Nguyen's alleged failure to report Mr. Cavanaugh's alleged conduct plainly is not an affirmative act – it is, self-evidently, a failure to take action . . . [that] could not, if true, support a state-created danger claim." *Id.* (citing *Cohen v. City of Portland*, No. 2:21-cv-00267-NT, 2022 U.S. Dist. LEXIS 80588, at *15 (D. Me. May 4, 2022). Mr. Nguyen adds that, moreover, "even if Mr. Nguyen's comments could be construed as assurances of protection or safety—which they plainly are not—or 'normalization' of Mr. Cavanaugh's conduct, they

would not give rise to an affirmative duty to protect as a matter of law." *Id.* (citations omitted).  Finally, he contends that "even if Ms. Wadsworth maintains that she continued her interactions with Mr. Cavanaugh based on Mr. Nguyen's alleged comments, state-created danger liability cannot be predicated on such facts" because "Mr. Nguyen did nothing to deprive Ms. Wadsworth of the liberty to act on her own behalf, nor did he force her, against her will, to become dependent on him." *Id.* at 13 (citations omitted).  Because—in his view—Ms. Wadsworth has failed to establish affirmative conduct, Mr. Nguyen argues that her constitutional claim fails as a matter of law.  *Id.*

### ii.   Conduct that "Shocks the Conscience"

Next, Mr. Nguyen contends that, even if the record supports all of Ms. Wadsworth's allegations, "Mr. Nguyen's alleged conduct does not shock the conscience as a matter of law." *Id.* at 15-16.  He submits that "[t]he First Circuit has emphasized that only conduct that is 'truly outrageous, uncivilized, and intolerable' shocks the conscience" and that Mr. Nguyen's alleged conduct does not meet any of these standards.  *Id.* at 13, 16 (quoting *Hasenfus v. LaJeunesse*, 175 F.3d 68, 72 (1st Cir. 1999)).

First, Mr. Nguyen submits that "the alleged 'abuse' by Mr. Cavanaugh was verbal and not physical or sexual" and thus "[i]f the underlying conduct does not rise to the level of conscience-shocking behavior, it necessarily follows that failure to report the conduct or 'normalizing' the conduct is not conscience-shocking." *Id.* at 16.  Second, he contends that "the information Ms. Wadsworth claims Mr. Nguyen knew

43

is not indicative of a substantial risk of serious harm" and "[g]iven Ms. Wadsworth's circumstances and her lack of complaints of harassment, Mr. Nguyen's alleged conduct does not reflect a disregard of a known serious risk that constitutes a brutal and inhumane abuse of official power." *Id.* at 16-17. Mr. Nguyen also asserts that "numerous individuals . . . who had substantially more information about Ms. Wadsworth's relationship with Mr. Cavanaugh, did not perceive that a substantial risk of serious harm existed" and thus his "alleged actions do not shock the conscience." *Id.* at 17.

### c.    Qualified Immunity

Mr. Nguyen argues next that "[i]n any event, [he] is protected from Ms. Wadsworth's civil rights claims by qualified immunity." *Id.* at 18. Mr. Nguyen offers that, to defeat his qualified immunity, Ms. Wadsworth must "show that the law was clearly established such that a reasonable public official would be on notice that his or her actions violate the plaintiff's constitutional rights." *Id.* (citing *Mitchell v. Miller*, 790 F.3d 73, 78 (1st Cir. 2015)). Yet, in his view, "Ms. Wadsworth has not met her heavy burden of showing that the right allegedly violated was clearly established at the time of Mr. Nguyen's alleged conduct." *Id.* at 19. He suggests that Ms. Wadsworth is required to demonstrate that "the lack of a report by Mr. Nguyen and his comments to her in the face of the information he allegedly had violated her right to bodily integrity by creating a danger that did not exist prior to her discussions with him and under circumstances that shocked the conscience." *Id.* Instead, however, he contends that any illegality was not clearly established because it is not clear that

verbal harassment can support a substantive due process claim and because his conduct did not constitute an affirmative act. *Id.* Mr. Nguyen again adds that his conclusion is "further supported by the reactions of other persons who are mandated reporters under Maine's child abuse statute" but did not report Mr. Cavanaugh at the time. *Id.* at 20. Mr. Nguyen concludes that "a reasonable official in Mr. Nguyen's position . . . could reasonably believe that the actions he allegedly took would not violate Ms. Wadsworth's clearly established rights" and thus he "is protected by qualified immunity." *Id.* at 20-21.

### 3.   The State Law Tort Claims

Mr. Nguyen contends that Ms. Wadsworth' state law tort claims "are barred by her failure to provide timely notice under the [MTCA]" and, alternatively, that they are barred by absolute discretionary function immunity. *Id.* at 21-25.

Mr. Nguyen begins by noting that "[a]s a prerequisite to filing a claim under the MTCA against a political subdivision or an employee of that subdivision, a person is required to serve notice of that claim on the political subdivision consistent with the Maine Rules of Civil Procedure." *Id.* at 21 (citing 14 M.R.S. § 8107(3)(B)). He adds that the notice must also state, among other things, "[t]he name and address of any governmental employee involved, if known," *id.* (quoting 14 M.R.S. § 8107(1)(C)), and that "[f]ailure to provide timely notice of claim bars that claim." *Id.* (citations omitted). Mr. Nguyen asserts that Ms. Wadsworth "did not comply with Section 8107 insofar as she asserts claims against Mr. Nguyen" because "[w]hile [Ms. Wadsworth] apparently served the RSU 40 superintendent with a notice of claim, it does not

45

identify Mr. Nguyen as a municipal employee involved in the claims for which she is providing notice, nor does the notice mention Mr. Nguyen in the statement of the basis for the claim." *Id.* at 22. Mr. Nguyen submits that, for this reason, Ms. Wadsworth's tort claims are barred. *Id.* at 22.

Next, Mr. Nguyen contends that "[t]he MTCA confers upon governmental employees absolute discretionary function immunity," *id.* (citing 14 M.R.S. § 8111(1)(C)), which applies here "unless Mr. Nguyen's conduct clearly exceeded, as a matter of law, the scope of any discretion he could have possessed in his official capacity as a school social worker." *Id.* (citing *Lyons v. City of Lewiston*, 666 A.2d 95, 101 (Me. 1995)). He adds that "[c]ourts have emphasized that a governmental employee is protected by discretionary function immunity even if the conduct at issue could be characterized as intentional misconduct." *Id.* at 23.

Mr. Nguyen submits that he "is protected from Ms. Wadsworth's tort claims by discretionary function immunity" because he "unquestionably had the lawful authority to provide services to students at a public high school" which "necessarily involves the exercise of judgment by guidance counselors and social workers, including the discretionary assessment of whether a student is at risk or may need assistance." *Id.* at 25. Additionally, even if Mr. Nguyen abused his discretion, "it was nonetheless within the scope of his duties to assess the situation, respond to Ms. Wadsworth's queries, and refrain from making a report." *Id.* Mr. Nguyen concludes that he is "protected by immunity" and the tort claims are barred. *Id.*

B.    **Adrianna Wadsworth's Opposition**

Ms. Wadsworth submitted an omnibus opposition memorandum responding to all three defendants' motions to dismiss.  The Court recounts here only the arguments relating to the Mr. Nguyen's motion.  Ms. Wadsworth rejoins that she has established the required elements to support a state-created danger theory, Mr. Nguyen is not entitled to qualified immunity on the constitutional claim, her notice of claim complied with the MTCA, and Mr. Nguyen is not entitled to discretionary function immunity on the tort claims.  *Pl.'s Opp'n* at 41-52.

### 1.    The Section 1983 Claim

### a.    State-Created Danger Theory

Ms. Wadsworth submits that "[w]hile much of Mr. Nguyen's involvement in this matter is characterized by inaction, Mr. Nguyen certainly took affirmative actions to enhance the danger to Ms. Wadsworth." *Id.* at 41.  In her view, Mr. Nguyen "routinely normalized and justified Mr. Cavanaugh's sexual harassment by informing Ms. Wadsworth that Mr. Cavanaugh was merely trying to act like a father figure and make sure she had everything she needed" and "he furthered the sexual harassment by echoing and validating Mr. Cavanaugh's statements that Ms. Wadsworth looked good in her dress and could take any boy she wanted to prom." *Id.*  Ms. Wadsworth also highlights what she perceives to be similar "manipulative, gaslighting behavior" by Mr. Nguyen during the birth control incident and when she told him she was embarrassed by Mr. Cavanaugh's gifts. *Id.* at 41-42.

Ms. Wadsworth adds that "[e]ven after all of Mr. Cavanaugh's misdeeds were exposed, Mr. Nguyen still took actions to create or enhance danger to Ms.

Wadsworth," including—after being warned by the Superintendent not to contact Mr. Cavanaugh or Ms. Wadsworth during the investigation—"reach[ing] out and [speaking] to both of them," telling Ms. Wadsworth that Mr. Cavanaugh was a "stand up guy" who had not done anything inappropriate, and asking Ms. Wadsworth to sign an affidavit supporting Mr. Cavanaugh. *Id.* at 42-43. Mr. Nguyen, she asserts, also told Ms. Wadsworth to "apologize to Mr. Cavanaugh's wife and niece" and "offered to act as a liaison between Mr. Cavanaugh and Ms. Wadsworth." *Id.* at 43. Ms. Wadsworth argues that these actions are evidence that "Mr. Nguyen habitually and intentionally manipulated a child into not reporting sexual harassment by his superior, thereby causing her additional emotional harm." *Id.*

Ms. Wadsworth concludes that "[a]ll of these actions, which occurred over the course of two school years, shock the conscience and plainly enhanced the danger to Ms. Wadsworth, causing further damage to her and only her." *Id.* She contends that because "Mr. Nguyen had ample time to consider his actions, Ms. Wadsworth need only show that Mr. Nguyen's actions were deliberately indifferent." *Id.* That standard is, in her view, easily met by the behavior described. *Id.* at 43-44.

### b.    Qualified Immunity

Ms. Wadsworth recounts many of the same facts highlighted in her state-created danger argument to support her position that Mr. Nguyen is not entitled to qualified immunity. *Id.* at 44-45. She submits that "a reasonable adult in Mr. Nguyen's position" or a "reasonable social worker" would "of course" know that Mr. Cavanaugh's harassing behavior violated Ms. Wadsworth's constitutional rights, that

normalizing the harassment was inappropriate, and that—after findings had been made that Mr. Wadsworth harassed Ms. Wadsworth—he should not reach out to encourage her to apologize to Mr. Cavanaugh's family or sign a statement supporting him. *Id.* "Despite Mr. Nguyen's assertions to the contrary," she concludes that "there are numerous and substantial disputed material facts surrounding Mr. Nguyen's claim for qualified immunity, and summary judgment must not be granted." *Id.* at 45.

### 2.     The State Law Tort Claims

Next, Ms. Wadsworth counters that "there are significant disputed issues of material fact, but the evidence is clear that Mr. Nguyen . . . should not be afforded immunity under either the intentional act or discretionary function provisions of the MTCA." *Id.* at 45. She also rejects as baseless Mr. Nguyen's arguments that her claims are procedurally barred for defective notice. *Id.* at 47-48.

Regarding the notice requirement, Ms. Wadsworth acknowledges that "[t]he statute is clear that municipal employees should be named in the notice, if the employee's involvement is known at the time the notice is provided." *Id.* at 48 (citing 14 M.R.S. § 8107(1)(C)). However, she contends that the purpose of the MTCA "is to enable the governmental entity to investigate and evaluate claims for the purposes of defense or settlement and to allow governmental entities to avoid needless expense and litigation by providing an opportunity for amicable resolution of disputes prior to formal litigation." *Id.* (quoting *Perry v. Dean*, 2015 WL 9794538, at *22 (Me. Super. Dec. 3, 2015) (internal citation and quotations omitted). Ms. Wadsworth also submits

that Mr. Nguyen's notice argument relies on *Dean*, but the *Dean* Court also specifically noted that "Plaintiffs who *seek to hold a governmental unit and employee liable must first meet a procedural requirement of notifying the unit* of the intention to bring a claim." *Id.* (quoting *Dean,* 2015 WL 9794538, at *21) (emphasis in *Pl.'s Opp'n*). Ms. Wadsworth concludes that she "submitted a timely notice of claim to the governmental unit, in this case the School, and provided ample notice of the nature of her claims" and thus "[g]iven the facts alleged in this case, the School clearly knew or should have known that the claim involved [Mr.] Nguyen, and was therefore not prejudiced in its investigation and evaluation of the claims prior to suit." *Id.* at 48-49.

Regarding discretionary function immunity, Ms. Wadsworth argues that Mr. Nguyen is not entitled to any immunity because "the evidence is clear that Mr. Nguyen was not, at least as it pertained to Ms. Wadsworth, acting within any discretionary job functions." *Id.* at 49. Instead, she claims "the evidence clearly indicates that Mr. Nguyen was acting with loyalty to Mr. Cavanaugh, and an apparent fear of allegations of sexual harassment." *Id.* Ms. Wadsworth contends that Mr. Nguyen's actions satisfy each factor of *Darling's* four-part test:[95]

---

[95]     To determine whether an act is discretionary, courts consider four questions:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

> (1) Nguyen's statements to Plaintiff that Cavanaugh was "being nice", acting as a "father figure", that he was trying to make sure she had everything she needed, and that his behavior was "normal" did not involve a basic governmental policy, program or objective. Similarly, meeting with Ms. Wadsworth after being instructed not to, encouraging her to apologize to her harasser's family, advising her to sign an affidavit in support of her harasser, and telling her that her harasser's family had a right to be upset with her clearly did not involve a basic governmental policy, program or objective; (2) Nguyen's statements were not essential to realization of any policy, program, or objective; (3) Nguyen's statements did not require the exercise of basic policy evaluation, judgment, and expertise; and (4) Nguyen did not possess the requisite constitutional, statutory, or lawful authority and duty to do or make the statements to Plaintiff.

*Id.* at 51. Ms. Wadsworth asserts further that "even if this Court were to find that some of Mr. Nguyen's actions were protected by discretionary function immunity, he would not be afforded immunity for his intentional acts after the allegations came to light as he was specifically instructed not to meet with Ms. Wadsworth." *Id.* Ms. Wadsworth concludes that because Mr. Nguyen's "actions were outside the scope of his job duties . . . he is not entitled to immunity under the MTCA." *Id.* at 52.

## C.   Chuck Nguyen's Reply

In reply, Mr. Nguyen argues that the Court should disregard a number of Ms. Wadsworth's assertions as unsupported by fact or law. *Def.'s Reply* at 1-5. He contends that "Ms. Wadsworth's response is replete with instances in which facts are introduced that do not appear in her statement of additional facts" or "are not supported by the record references." *Id.* at 1-2. Furthermore, Mr. Nguyen asserts that "[t]he Court should reject arguments Ms. Wadsworth made in her opposition

---

*Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 426 (Me. 1987) (quoting *Trianon Park Condo. Ass'n v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985)).

that are unsupported by any legal authority." *Id.* at 4. He also claims that, through her perceived failure to respond, Ms. Wadsworth has waived any objection she might have to his MSHA noncompliance defense and his argument that she has not established a protected constitutional interest. *Id.* at 2-3.

Mr. Nguyen also submits that Ms. Wadsworth has not effectively rebutted his MTCA notice defense and that the Court should disregard her "attempts to ground her claims on Mr. Nguyen's alleged conduct after investigations began into Mr. Cavanaugh." *Id.* at 5. Finally, Mr. Nguyen contends that "Ms. Wadsworth's objection to Mr. Nguyen's assertion of discretionary function immunity under the MTCA is misguided" because she is speculating as to his motives, she has not identified an instance where he "clearly exceeded" his discretion, and "refusal to recognize immunity for officials with such responsibilities [as Mr. Nguyen's] would seriously compromise the independence of action necessary for the effective discharge of their duties." *Id.* at 6-8 (internal quotations and emphasis omitted).

## IV.   LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)).

When the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must provide "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)). Then, a "court views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), but disregards "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## V.   DISCUSSION

### A.   MHSA Noncompliance Defense

The Court begins with Mr. Nguyen's MHSA defense, which he argues strips this Court of jurisdiction over all Ms. Wadsworth's claims. *Def.'s Mot.* at 1. The Court

does not find this to be a close call: the MHSA offers Mr. Nguyen no protection from Ms. Wadsworth's claims, which do not sound in medical malpractice.

The MHSA imposes certain prelitigation requirements for suits based on an "action for professional negligence," defined as "any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services." 24 M.R.S. § 2502(6). Maine law also defines "social work" as "engaging in psychosocial evaluation and intervention, including therapy, to the extent permitted by the licensure provisions of this chapter, to effect a change in the feelings, attitudes and behavior of a client, whether an individual, group or community . . .." 32 M.R.S. § 7001-A(11). Mr. Nguyen's claim is straightforward: as a licensed social worker he "qualifies as a health care practitioner under the MHSA" and because Ms. Wadsworth's claims "are premised on his position as a social worker and appear to allege either the failure to provide care or the provision of inappropriate care," they are subject to the MHSA and its prelitigation requirements. *Def.'s Mot.* at 3-4. This theory does not hold water.

First, Mr. Nguyen contends that all Ms. Wadsworth's claims, including her § 1983 claim, are subject to the MHSA. *Id.* at 4 ("Ms. Wadsworth's claims—whether sounding in civil rights, intentional tort, negligence, or malpractice—are subject to the requirements of the MHSA"). The law is well established, however, that "[t]he MHSA's procedural requirements do not apply to suits for constitutional violations

54

brought under 42 U.S.C. § 1983, even where the suit in question proceeds against a health care provider and involves the provision of health care services." *Stewart v. Mason*, No. 1:21-cv-00321-LEW, 2022 U.S. Dist. LEXIS 100151, at *6 n.1 (D. Me. June 6, 2022); *see also Ferris v. Cty. of Kennebec*, 44 F. Supp. 2d 62, 66 (D. Me. 1999) (dismissing state law negligence claim, but not § 1983 claim, for failure to comply with MHSA). Even if Mr. Nguyen were correct that Ms. Wadsworth's claims fell with the MHSA's subject matter, her § 1983 claims would not be subject to its prelitigation requirements.

Second, the more fundamental problem with Mr. Nguyen's theory is that, viewed in the light most favorable to Ms. Wadsworth, her claims do not fall under the ambit of the MHSA. In the 1970s, the Maine Legislature was faced with "an alleged national crisis in the availability and cost of medical malpractice insurance" and, in response, enacted the MHSA as "comprehensive tort reform within the health care industry designed to stem rising malpractice insurance costs and ensure the continued availability of malpractice insurance to Maine health care providers and practitioners." *Butler v. Killoran*, 1998 ME 147, ¶ 9, 714 A.2d 129. While worded broadly, "the statutory definition of 'an action for professional negligence' contains several clear and distinct elements" including "that the claim must 'aris[e] out of the provision or failure to provide health care services.'"[96] *Salerno v. Spectrum Med. Grp.,*

---

[96]     During oral argument, Mr. Nguyen pointed to *Saunders v. Tisher*, 2006 ME 94, 902 A.2d 830, a case cited in his motion. *Def.'s Mot.* at 3. In *Saunders*, the Maine Supreme Judicial Court wrote that the MHSA provisions are broad and apply to "*all* actions for professional negligence against a health care provider or practitioner." *Id.* ¶ 12 (emphasis in original). But the Law Court also emphasized that to fit within the MHSA, the practitioner's actions must "*aris[e] out of the provision or failure to provide health care services.*" *Id.* (emphasis in original). Thus, the citation begs the question before the Court.

*P.A.*, 2019 ME 139, ¶ 18, 215 A.3d 804, 811 (quoting 24 M.R.S. § 2502(6)).  In *Salerno*, for example, the Law Court held that a woman's claim for injuries she suffered at a healthcare provider's facility after receiving treatment was not subject to the MHSA because she sustained her injuries slipping in the shower, "a circumstance unrelated to the provision of health care."  *Id.* at ¶ 18.  The statute and precedent are both clear that the MHSA only applies to claims "arising out of the provision or failure to provide health care services."  24 M.R.S. § 2502(6).  Mr. Nguyen contends that Ms. Wadsworth's claims fit this definition because they "are premised on his position as a social worker and appear to allege either the failure to provide care or the provision of inappropriate care."  *Def.'s Mot.* at 3-4.  Based on the record, the Court is unconvinced.

The Court accepts for the sake of argument Mr. Nguyen's assertion that as a licensed social worker he could qualify as a "health care practitioner" under the MHSA and would thus be protected for any actions "arising out of the provision or failure to provide health care services."  24 M.R.S. § 2502(6).  Even so, the record

---

In *Saunders*, a former patient sued Dr. Tisher, a psychiatrist, for signing a document involuntarily committing him on an emergency basis to Acadia Hospital, a psychiatric hospital.  *Id.* ¶ 10.  The Law Court easily concluded that "the actions of a psychiatrist in determining whether a person should be involuntarily committed . . . constitute the treatment of the mentally ill, and therefore, the provision of health care services."  *Id.* ¶ 14.  The facts in *Saunders* are distinct from the facts, viewed in the light most favorable to Ms. Wadsworth, concerning her encounters with Mr. Nguyen.

In his motion, Mr. Nguyen also argued that "[t]he Law Court has therefore held that civil rights claims and IIED claims are subject to the MHSA if they arise out of the provision or failure to provide health care services."  *Def.'s Mot.* at 3 (citing *Saunders*, 2006 ME 94, ¶¶ 5 & 15).  However, the Maine Supreme Judicial Court did not address claims under 42 U.S.C. § 1983 because Mr. Saunders did not pursue his § 1983 action on appeal.  *Saunders*, 2006 ME 94, ¶ 5 n.1 ("At oral argument, Saunders indicated that he is not asserting any State action in connection with his claims and, thus, no longer pursues any claim for violation of 42 U.S.C. § 1983").  Here, Ms. Wadsworth is not pursuing a claim under the Maine Human Rights Act so *Saunders* does not stand for the proposition that her civil rights claim under § 1983 is subject to the MHSA.

reflects that a vast majority—if not the entirety—of Ms. Wadsworth's claims involve Mr. Nguyen's actions or inactions "unrelated to the provision of healthcare." *Salerno*, 2019 ME 139, ¶ 18, 215 A.3d at 811.

For this analysis, Ms. Wadsworth's allegations against Mr. Nguyen can be sorted into two buckets: Mr. Nguyen's behavior in private meetings with Ms. Wadsworth; and the rest of the allegations. The former category comes closer to conduct contemplated by the MHSA, in this case a licensed social worker privately giving a student advice in what could be characterized as a therapy or quasi-therapy setting. *See, e.g.*, PSAMF ¶ 40; DRPSAMF ¶ 41 (Ms. Wadsworth went to Mr. Nguyen's office and advised him that Mr. Cavanaugh called her "cupcake" when they texted each other). However, even for these private meetings, there exist—at the very least—disputed issues of material fact as to whether Mr. Nguyen was "provid[ing] health care services." 24 M.R.S. § 2502(6). The record is silent as to whether these were impromptu meetings or appointments, or whether Mr. Nguyen employed recognized medical techniques, took clinical notes, made diagnoses, or had similar meetings with other students. It does not appear that these meetings were private. *See* PSAMF ¶ 41; DRPSAMF ¶ 41 (Ms. Philbrook came into the office during that meeting with Mr. Nguyen while Ms. Wadsworth was reporting her feelings, sat down, did not say anything, and then—after an undetermined amount of time—said "I'll leave you guys to it" and left Mr. Nguyen's office). Thus, even if some services school social workers offer could constitute "provid[ing] healthcare services", the record here is far from clear as to whether these were anything more than informal

conversations and, to the extent there is a factual dispute, the Court is required to view those facts in the light most favorable to Ms. Wadsworth.

The remainder of Ms. Wadsworth's allegations against Mr. Nguyen—a sizeable majority—involve conduct that could not reasonably be characterized as the provision of (or failure to provide) a healthcare service. Examples include telling Ms. Kenniston the issue of Mr. Cavanaugh trying to get Ms. Wadsworth birth control had been addressed and not reporting the birth control issue, his knowledge of the cupcake comments, the texting, Mr. Cavanaugh's desire for Ms. Wadsworth to move in with him, or her expressing that she was embarrassed by his behavior. Perhaps most egregious—or at least the farthest afield from healthcare—is Mr. Nguyen's conduct during and after the investigation, including telling Ms. Wadsworth that Mr. Cavanaugh's family had a right to be angry at her and that she should apologize to them, downplay or recant the harassment, and sign an affidavit supporting Mr. Cavanaugh. The list is not exhaustive, but it is overwhelming. During these encounters, viewing contested facts in the light most favorable to Ms. Wadsworth, Mr. Nguyen was acting as Mr. Cavanaugh's colleague or supporter, not Ms. Wadsworth's counselor. Even Mr. Nguyen's conduct during his meetings with Ms. Wadsworth at school presents unresolved factual issues as to whether he was providing healthcare, leaving genuine issues of material fact to be resolved by a jury.

In sum, viewed in the light most favorable to her, Ms. Wadsworth's claims against Mr. Nguyen do not sound in malpractice, nor do they arise from the provision or failure to provide healthcare services. For summary judgment purposes, her

claims are thus not subject to the MHSA's prelitigation requirements and are not waived by failing to abide by those requirements.

## B.    Section 1983 Claim

Section 1983 provides that:

> [e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 389-94 (1989).  The § 1983 cause of action has two elements.  First, a plaintiff must show deprivation of a federally protected right, privilege, or immunity and a causal connection between the conduct complained of and the deprivation.  *See Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989).  Second, a plaintiff must establish that "the perpetrator of the violation was acting under color of law."  *Cruz-Erazo v. Rivera-Montañez*, 212 F.3d 617, 621 (1st Cir. 2000).

### 1.    Deprivation of a Federally Protected Right

Ms. Wadsworth identifies a federal right: the right to be free from intrusions into her bodily integrity.  *Pl.'s Opp'n* at 35; *see Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 65 (D. Me. 1999) ("It is well recognized that students have a fundamental right to bodily integrity that includes the right to be free from sexual abuse").  She also asserts a deprivation of that right: Mr. Cavanaugh's "repeated, demanding sexual harassment . . .."  *Order on Mot. to Dismiss* at 26; *Pl.'s Opp'n* at 35-36.  Mr.

Nguyen disagrees, acknowledging a fundamental right to bodily integrity but submitting that "it appears that right applies only to *physical* intrusions upon a person's body." *Def.'s Mot.* at 5-6 (collecting cases) (emphasis in *Def.'s Mot.*).  Because Ms. Wadsworth does not allege that Mr. Cavanaugh physically abused her, Mr. Nguyen contends that "since verbal abuse is normally not a constitutional violation, Mr. Cavanaugh's comments, text messages, and overtures that did not involve physical contact . . . are not actionable" and thus, absent an underlying constitutional violation, Mr. Nguyen cannot be held liable under § 1983 for any role facilitating Mr. Cavanaugh's harassment.  *Id.* at 5.

The Court addresses Mr. Cavanaugh's conduct in a separately issued order on his motion for summary judgment; however, focusing on Mr. Nguyen's actions in facilitating Mr. Cavanaugh's harassment of Ms. Wadsworth, Mr. Nguyen is a step removed from Mr. Cavanaugh, and the record supports the conclusion that he was actually aware of only some of Mr. Cavanaugh's harassment.

To set out a substantive due process claim, a plaintiff challenging specific acts of state officials must "show *both* that the acts were so egregious as to shock the conscience *and* that they deprived him of a protected interest in life, liberty, or property."  *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (emphasis in *Pagan*); *see also Rivera*, 402 F.3d at 33–34 (1st Cir. 2005) ("In order to establish a substantive due process claim, the plaintiff must first show a deprivation of a protected interest in life, liberty, or property.  It is not enough to claim the governmental action shocked the conscience" because "[t]he implication of a fundamental right is a threshold

requirement for establishing a due process violation") (citations omitted). While "the cases in which [the First Circuit has] found governmental conduct to shock the conscience have often involved state action that was highly physically intrusive," it has "pointedly left open the possibility that verbal or other less physical harassment . . . might rise to a conscience-shocking level." *Cruz-Erazo*, 212 F.3d at 622.

"It is well recognized that students have a fundamental right to bodily integrity that includes the right to be free from sexual abuse." *Doe,* 66 F. Supp. 2d at 65. As Mr. Nguyen observes, however, cases of sexual harassment amounting to a constitutional deprivation have uniformly involved at least some form of physical sexual contact. *See Def.'s Mot.* at 5-6 (collecting cases). Ms. Wadsworth responds only that the Fourteenth Amendment right to bodily integrity "protects a student's right to be free from sexual abuse <u>and harassment</u> by teachers at a public school." *Pl.'s Mot.* at 35 (citing *B.W. v. Career Technology Center of Lackawanna County*, 422 F. Supp. 3d 859, 888-89 (M.D. Pa. 2019) and *Doe v. Boyertown Area Sch. Dist.*, 10 F. Supp. 3d 637, 650 (E.D. Pa. 2014) (emphasis in *Pl.'s Mot.*)). But, unlike Ms. Wadsworth, the plaintiffs in those cases alleged physical abuse. *See B.W.,* 422 F. Supp. 3d at 872-873 (students were "sexually assaulted and abused by a teacher" who "constantly engaged in inappropriate and unwanted physical contact with his students"); *Boyertown,* 10 F. Supp. 3d 637, 650 (E.D. Pa. 2014) (plaintiff's allegation of having suffered a sexual assault is sufficient to constitute a violation of her Fourteenth Amendment rights).

The Court has not identified any authority supporting the proposition that non-physical harassment alone can violate the right to bodily integrity or shock the conscience.[97]  Neither party disputes that under First Circuit caselaw physical sexual abuse will generally violate the right to bodily integrity in a manner that shocks the conscience.  *See, e.g., Doe,* 66 F. Supp. 2d at 65.  First Circuit caselaw examining non-physical harassment, however, has primarily focused on verbal abuse or other misconduct by police or prosecutors that was manipulative or threatening and found the conduct was not conscience shocking.  *See Cruz-Erazo,* 212 F.3d at 622-23 (discussing cases); *Spencer v. Doran,* No. 18-CV-1191-LM, 2020 LEXIS 150728, at *18-19 (D.N.H. Aug. 20, 2020) (same).

Out-of-circuit caselaw focusing on non-physical abuse in a school setting has generally considered inappropriate and extraordinarily cruel verbal abuse by teachers that did not shock the conscience or deprive the student of a protected constitutional right.  *See, e.g., Abeyta By & Through Martinez v. Chama Valley Ind. Sch. Dist., No. 19,* 77 F.3d 1253, 1255–57 (10th Cir. 1996) (teacher repeatedly calling sixth-grade student a "prostitute" in front of her class did not rise to a substantive due process violation and the Court noted that "[w]e have found no case in a school context that held conduct falling shy of sexual molestation or assault constitutes constitutionally actionable sexual harassment"); *Doe v. Gooden,* 214 F.3d 952, 955

---

[97]     During oral argument, the Court challenged Ms. Wadsworth's counsel to cite one case where a court has found that a § 1983 action based on sexual harassment was viable if there was no allegation of physical contact.   Consistent with the Court's research and the parties' submissions, Ms. Wadsworth's attorney was unable to cite one case as authority for the proposition that a § 1983 sexual harassment claim may proceed without some physical contact.

(8th Cir. 2000) (dismissing verbal-abuse substantive due process claim against elementary school teacher "accused of yelling and screaming at students, using foul language, . . . calling students 'stupid,' and referring to students as 'bimbos,' 'fatso,' and 'welfare bunch'"); *Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916, 921 (8th Cir. 2001) (teacher calling student "retarded," "stupid," and "dumb," in front of her classmates on a daily basis did not amount to a constitutional violation).

As the Court discusses in its Cavanaugh order, Mr. Cavanaugh's pattern of sexual harassment of Ms. Wadsworth does not line up neatly with any of the cases from the First Circuit or elsewhere, and if Ms. Wadsworth's § 1983 claim against Mr. Cavanaugh faces a jurisprudential roadblock, her facilitating claim against Mr. Nguyen is even more attenuated.

The second prong of Ms. Wadsworth's § 1983 claim is Mr. Nguyen's interference with the school and police investigations of Mr. Cavanaugh. Here, the record reveals some unusually ill-considered actions by Mr. Nguyen: (1) sympathizing with Mr. Cavanaugh, (2) blaming the victim (Ms. Wadsworth was "bringing it on herself"), (3) repeatedly acting in defiance of a direct order from the superintendent not to contact either Mr. Cavanaugh or Ms. Wadsworth, (4) vouching for Mr. Cavanaugh's character to Ms. Wadsworth, (5) urging her to sign an affidavit drafted by Mr. Cavanaugh's attorney, (6) justifying the Cavanaugh family's anger at Ms. Wadsworth, (7) telling Ms. Wadsworth that she should apologize to Mr. Cavanaugh's wife and niece, (8) excusing Mr. Cavanaugh's actions to Ms. Wadsworth on the ground that Mr. Cavanaugh had a drinking problem and had lost sight of his boundaries, (9)

minimizing the impact of Mr. Cavanaugh's actions by hypothesizing a future friendly meeting over coffee between Mr. Cavanaugh and Ms. Wadsworth, (10) chasing a crying Ms. Wadsworth down the high school corridors, and (11) strongly implying to the police that Ms. Wadsworth was making false allegations against an innocent teacher.   None of these allegations, if proven, speaks well for Mr. Nguyen, but in the Court's view, they do not come close to the shock the conscience standard for a viable § 1983 claim.

### 2.   State-Created Danger

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . .." U.S. CONST. amend. XIV, § 1.  As a general matter, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Irish*, 979 F.3d at 73 (quoting *DeShaney*, 489 U.S. at 197).  This principle is not absolute: "[I]n situations in which there is a 'special relationship,' an affirmative, constitutional duty to protect may arise when the state 'so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs.'" *Rivera*, 402 F.3d at 34 (quoting *DeShaney*, 489 U.S. at 200).  "The Supreme Court also suggested, but never expressly recognized, the possibility that when the state creates the danger to an individual, an affirmative duty to protect might arise . . .." *Id.* at 34-35.

In *Irish v. Fowler*, the First Circuit set forth the elements of a state-created danger claim:

In order to make out a state-created danger claim in the First Circuit, the plaintiff must establish:

> (1) that a state actor or state actors affirmatively acted to create or enhance a danger to the plaintiff;
>
> (2) that the act or acts created or enhanced a danger specific to the plaintiff and distinct from the danger to the general public;
>
> (3) that the act or acts caused the plaintiff's harm; and
>
> (4) that the state actor's conduct, when viewed in total, shocks the conscience.
>
>> (i) Where officials have the opportunity to make unhurried judgments, deliberate indifference may shock the conscience, particularly where the state official performs multiple acts of indifference to a rising risk of acute and severe danger. To show deliberate indifference, the plaintiff must, at a bare minimum, demonstrate that the defendant actually knew of a substantial risk of serious harm and disregarded that risk.
>>
>> (ii) Where state actors must act in a matter of seconds or minutes, a higher level of culpability is required.

979 F.3d at 75. In short, to fit within the state-created danger doctrine in the First Circuit, the plaintiff must show an affirmative act on the part of a government employee that creates or increases the danger to the plaintiff and that shocks the conscience of the Court.

### a.   Affirmative Act

The first prong, an affirmative act, is not highly developed in the First Circuit. *See id.* (the requirement is that a state actor "affirmatively acted to create or enhance a danger to the plaintiff"). In *Irish*, after "actions and inactions by the defendant officers," Anthony Lord murdered Brittany Irish's boyfriend, shot her mother, and

then kidnapped and raped her. *Id.* at 67. Ms. Irish alleged that "Lord's rampage was triggered by a voicemail left on Lord's cellphone by defendant . . . officers investigating Irish's criminal complaint that Lord had abducted, threatened, and raped her two days earlier." *Id.* at 67-68. The *Irish* Court held that Ms. Irish had plausibly established affirmative acts that created and/or enhanced a danger to her and shocked the conscience where a reasonable jury could conclude that the defendants "even in the face of Irish's expressed fear that Lord would react violently, contacted him in a manner that a reasonable jury could find notified him that Irish had reported him to the police" and then withdrew police protection without telling her, "thereby allowing the plaintiffs to believe more protection was available than was actually true." *Id.* at 79.

While the First Circuit has not expressly stated whether inaction alone can constitute an affirmative act, other circuits that have adopted the state-created danger theory require either an affirmative act or "a degree and pattern of inaction that rises to the level of an affirmative act." *Irish v. Fowler*, 436 F. Supp. 3d 362, 417 (2020) (collecting cases). The Court is unaware of a First Circuit case that adopts the rule that a pattern of inaction alone can rise to the level of an affirmative act in this context or examines the type of conduct that would qualify as a "pattern." *See Welch v. City of Biddeford Police Dep't*, 12 F.4th 70, 75-75 (1st Cir. 2021) (affirming that defendant officer "took no affirmative act that enhanced the danger to the plaintiffs" in failing to investigate or protect them and that "[t]he plaintiffs also do not explain how any of [the officer's] actions, on their own, could give rise to a state-created

danger claim [because o]fficers are not liable under § 1983 for the actions of other officers."). The Second Circuit has held that "repeated, sustained inaction by government officials, in the face of potential acts of violence," might "ris[e] to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." *Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 428 (2d Cir. 2009) (quoting *Pena v. DePrisco*, 432 F.3d 98, 111 (2d Cir. 2005)).

The Court's analysis of this prong is largely unchanged from the motion to dismiss stage. The Court, assuming that the First Circuit would recognize the state-created danger theory, found then that Ms. Wadsworth presented two bases for a state-created danger claim against Mr. Nguyen—Mr. Nguyen's "failure to report" Mr. Cavanaugh's sexual harassment and his "perpetual and frequent normalization" of such behavior—and that, when viewed in combination, Ms. Wadsworth had alleged sufficient facts to survive the motion to dismiss. *Mot. to Dismiss* at 34. The Court concluded that Mr. Nguyen's failure to report the harassment for over a year "may be enough to show a pattern of inaction that rises to the level of an affirmative act," *id.* at 35 (citing *Fowler*, 436 F. Supp. 3d at 417), but also that "if this case were only about a failure to act, however, the Court would be constrained by *Hasenfus* and *Abdisamad [v. City of Lewiston*, 960 F.3d 56 (1st Cir. 2020)]*, which counsel against holding a school official liable for a failure to act except in the most immediate and egregious circumstances." *Id.*

Instead, the Court found that Mr. Nguyen's normalization of Mr. Cavanaugh's sexual harassment provided "a clearer argument for an affirmative act by Mr.

Nguyen" because "Ms. Wadsworth has sufficiently alleged that Mr. Nguyen's active choice to make comments that diminished the seriousness of Mr. Cavanaugh's inappropriate behavior encouraged her not to report Mr. Cavanaugh to someone else and to continue her relationship with him . . . and thus exposed her to additional improper conduct over the course of a year." *Id.*; *see also Doe*, 2020 WL 2820197, at *3 (finding that the allegations supported a claim under a state-created danger theory "particularly where the Defendants' actions—permitting [the teacher] unsupervised access to the Plaintiff after the March investigation—may have exposed Doe to additional abuse"). Based on the allegations in Ms. Wadsworth's Amended Complaint, Mr. Nguyen's affirmative and omissive actions, viewed together, "plausibly increased Mr. Cavanaugh's access to Ms. Wadsworth to continue sexually harassing her for over a year by preventing an investigation and encouraging her to keep making herself available to him." *Id.* at 36.

Now armed with an expanded record and further briefing from the parties, the Court's analysis of this prong is essentially the same—particularly its focus on Mr. Nguyen's normalization of Mr. Cavanaugh's behavior as the basis for an "affirmative act." All Mr. Nguyen's conduct alleged by Ms. Wadsworth that the Court characterized as normalizing or perpetuating Mr. Cavanaugh's harassment is supported by the record. On multiple occasions, Ms. Wadsworth came to Mr. Nguyen to express that she was embarrassed or otherwise concerned about Mr. Cavanaugh's behavior (for example, giving her feminine hygiene products or encouraging her to get on birth control) and wondered whether it was appropriate or normal. Each time

Mr. Nguyen, an adult she trusted, assured her that Mr. Cavanaugh was like a "father figure" who thought of her as a daughter and was just looking out for her. These reassurances allayed Ms. Wadsworth's fears and normalized Mr. Cavanaugh's inappropriate behavior in her eyes, and a jury could reasonably conclude that they "plausibly increased Mr. Cavanaugh's access to Ms. Wadsworth to continue sexually harassing her." *Order on Mot. to Dismiss* at 36.

Additionally, the summary judgment record also provides new instances of Mr. Nguyen's affirmative conduct that plausibly enabled the harassment and exacerbated Ms. Wadsworth's injuries. Theresa Kenniston is not mentioned in the Amended Complaint and thus was not considered by the Court in its Order on Mr. Nguyen's motion to dismiss. In the summary judgment record, however, Ms. Kenniston emerges as apparently the first third party to express concern about Mr. Cavanaugh's behavior and ultimately the person to end the harassment by reporting him to law enforcement. When she discovered that Mr. Cavanaugh was attempting to set up and drive Ms. Wadsworth to a birth control appointment, Ms. Kenniston was "disturbed" and called Mr. Nguyen to express her concern about a behavior she viewed to be inappropriate. *See Kenniston Dep.* at 49-1:50-4 (recounting calling Mr. Nguyen to discuss "the birth control issue because [she] was very disturbed about that"). Mr. Nguyen's response was to assure Ms. Kenniston the issue had been addressed and then initiate the conversation with Ms. Wadsworth where he described Mr. Cavanaugh as a father figure. Mr. Nguyen's assurances appear to have allayed Ms. Kenniston's concerns about the relationship and she did not report Mr.

Cavanaugh to law enforcement until the following school year. A reasonable factfinder could conclude that Mr. Nguyen's seemingly empty assurances prolonged the harassment by delaying Ms. Kenniston's report.

The record also includes new details about Mr. Nguyen's affirmative conduct during and after the investigation, including encouraging Ms. Wadsworth to apologize to Mr. Cavanaugh's family—who, he explained, had a right to be upset with Ms. Wadsworth—and sign an affidavit supporting him. *See, e.g.*, PSAMF ¶ 140; DRPSAMF ¶ 140 (Mr. Nguyen told Ms. Wadsworth that Mr. Cavanaugh did not do anything inappropriate or have any inappropriate conversations with her; going on to say Mr. Cavanaugh was a "stand-up guy," and that "it's not what they are making it out to be"). While this conduct did not directly enable additional harassment by Mr. Cavanaugh, a reasonable juror could find that it contributed to Ms. Wadsworth's injuries by gaslighting her and making her feel that the harassment was her fault or was not harassment at all, and she was ruining Mr. Cavanaugh's life over nothing.

Mr. Nguyen responds that his actions do not qualify as the type of affirmative acts required to sustain Ms. Wadsworth's state-created danger theory. His argument relies on *Rivera* and other out-of-circuit cases holding that assurances by law enforcement that they would protect a person do not qualify as "affirmative acts," even if those assurances ultimately prove hollow and render the person vulnerable to harm. *Def.'s Mot.* at 8-12 (collecting cases). Mr. Nguyen concludes that "circuit courts of appeal have held that failure to protect or ensure the safety of a plaintiff—even

when a state actor has affirmatively promised such protection and safety—is insufficient to create a constitutional duty to protect." *Id.* at 7-8.

While that may be a fair summary of the caselaw, the Court does not find it fits these facts. The Court does not view Mr. Nguyen's behavior to be "affirmatively promis[ing] such protection and safety" as in the cases he has cited. Those cases are more akin to a situation where if, when Ms. Wadsworth came to him with concerns about Mr. Cavanaugh's behavior, Mr. Nguyen instead responded that the behavior was inappropriate and sexually harassing and that he would ensure that Mr. Cavanaugh stopped perpetrating them—but then ultimately failed to stop Mr. Cavanaugh. That situation would have been more analogous to *Rivera's* holding that such promises may not be constitutionally binding.

That is not, however, the situation before the Court. Instead of offering assurances to protect Ms. Wadsworth from harm, Mr. Nguyen assured her—from a position of trust and authority—that her harm was no harm at all, and Ms. Wadsworth relied on those assurances to continue subjecting herself to the sexual harassment for another year. In *Doe ex rel. B.G. v. Bos. v. Bos. Pub. Schs.*, No. 17-cv-11653-ADB, 2019 U.S. Dist. LEXIS 32705 (D. Mass. Mar. 1, 2019), the district court held that the plaintiff's state-created danger theory survived summary judgment, reasoning that "because school staff knew that [the perpetrator] committed sexual assaults on fellow school children before he harmed [other students] and [the principal] discouraged them from filing [sexual harassment reports] in connection with those incidents, the [later] assaults . . . were a foreseeable and direct result of

71

[the principal's] actions." *Id.* at *13-14.  The Court finds Mr. Nguyen's actions in assuaging Ms. Wadsworth and Ms. Kenniston about Mr. Cavanaugh's behavior more analogous to the suppression of reporting in *B.G.* than the false promise of protection in *Rivera.*  A reasonable juror could conclude that by normalizing Mr. Cavanaugh's behavior Mr. Nguyen "plausibly increased Mr. Cavanaugh's access to Ms. Wadsworth to continue sexually harassing her," *Order on Mot. to Dismiss* at 36, and she has successfully established the affirmative action prong of her state-created danger theory.

### b.    Conduct that Shocks the Conscience

Ms. Wadsworth's constitutional claim must fail because it cannot clear the high bar of establishing that Mr. Nguyen's behavior "shocked the conscience."  To establish a due process violation a plaintiff must normally "allege facts 'so extreme and egregious as to shock the contemporary conscience.'" *Abdisamad*, 960 F.3d at 59-60 (quoting *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005)).  The First Circuit provides that "[w]here officials have the opportunity to make unhurried judgments, deliberate indifference may shock the conscience, particularly where the state official performs multiple acts of indifference to a rising risk of acute and severe danger" and "[t]o show deliberate indifference, the plaintiff must, at a bare minimum, demonstrate that the defendant actually knew of a substantial risk of serious harm and disregarded that risk." *Irish*, 979 F.3d at 75.

At the motion to dismiss stage, the Court applied the deliberate indifference standard, and concluded that, based on the allegations alone, there was a basis for

finding that Mr. Nguyen's behavior was deliberately indifferent.  *Order on Mot. to Dismiss* at 36.  The Court noted, however, that it did "not know what exactly Mr. Nguyen knew of Mr. Cavanaugh's harassment, the circumstances of Ms. Wadsworth's reports to Mr. Nguyen, [and] why her reports did not trigger a more serious response from Mr. Nguyen," and that "discovery may reveal there is less than meets the eye in this situation and that Mr. Nguyen simply misjudged it."  *Id.* at 37-38.

That is essentially what the Court concludes now: that Mr. Nguyen exhibited extremely poor judgment in his assessment of and response to the situation, but that this record would not allow a reasonable juror to conclude that he had the requisite knowledge for his behavior to shock the conscience.  To show deliberate indifference, the plaintiff "must, at a bare minimum, demonstrate that [the defendant] actually knew of a substantial risk of serious harm . . . and disregarded that risk."  *Irish*, 979 F.3d at 74 (quoting *Coyne v. Cronin*, 386 F.3d 280, 288 (1st Cir. 2004)).  The First Circuit has held that, in the foster care context, "state officials must have been at least aware of known or likely injuries or abuse and have chosen to ignore the danger to the child."  *J.R. v. Gloria*, 593 F.3d 73, 80-81 (1st Cir. 2010) (concluding that, even where workers' failure to conduct background checks may have violated state law, "there is no evidence that defendants made a reasoned decision to deliberately ignore the risk of harm").

Mr. Nguyen knew that Mr. Cavanaugh called Ms. Wadsworth cupcake, had told her she could take any boy she wanted to prom, had given her money and gifts that included hygiene products, had taken her to a physical and encouraged her to

get on birth control, and had invited her to move in with him and his wife.  He knew that Ms. Wadsworth was embarrassed by the cupcake nickname and on one occasion by the gift of feminine products and had questioned whether Mr. Cavanaugh advising her to get birth control was appropriate.  But, aside from apparently being aware that Mr. Cavanaugh and Ms. Wadsworth had exchanged some text messages and that he called her cupcake, there is no allegation that Mr. Nguyen had knowledge of the frequency or sexually explicit content of the text messages—by far the most important piece for understanding the severity of the harassment.  Even without the text messages, Mr. Cavanaugh's behavior should still have raised red flags, but there is far less evidence of imminent or ongoing "serious harm."  There is no indication from Mr. Nguyen's behavior that he considered Ms. Wadsworth to face a "substantial risk of serious harm" from Mr. Cavanaugh.  The record is clear that Mr. Nguyen misjudged the situation and—based on his inexplicable, continuing defense of Mr. Cavanaugh as "a stand-up guy"—may continue to misjudge it to this day and that this poor exercise of judgment contributed to Ms. Wadsworth's injuries.  But there is also no evidence to suggest that Mr. Nguyen was "at least aware of known or likely injuries or abuse" to Ms. Wadsworth and "made a reasoned decision to deliberately ignore the risk of harm."  *J.R.*, 593 F.3d at 80-81.  For this reason, the Court must grant judgment in Mr. Nguyen's favor on Ms. Wadsworth's § 1983 claim.

### 3. Qualified Immunity

Even if the Court had found that Mr. Cavanaugh's conduct deprived Ms. Wadsworth of her constitutional right to bodily integrity and also that she had

74

established the disputed elements—affirmative act and conduct that shocks the conscience—of her state-created danger claim against Mr. Nguyen, Ms. Wadsworth's claim would still fail nonetheless because Mr. Nguyen would be entitled to qualified immunity on her § 1983 claim.

"[T]he qualified immunity inquiry is a two-part test.  A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation."  *Maldonado v. Fontanes*, 568 F.3d 263, 268-69 (1st Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  "[T]he second, 'clearly established' step of the qualified immunity analysis . . ., in turn, has two aspects."  *Id.* at 269.  First, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," *id.* (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); second, the Court must ask "whether a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights."  *Id.*  The Supreme Court has instructed that "this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223).

The Court finds the first part of the test to be insurmountable for Ms. Wadsworth.  Even assuming the Court had held that Mr. Cavanaugh's conduct violated her right to bodily integrity in a manner that shocked the conscience, at the

75

time the events of this case occurred, no court—at least that this Court or Ms. Wadsworth has been able to identify—had held that any form of non-physical sexual harassment alone was sufficient to sustain a substantive due process violation, much less harassment that resembled Mr. Cavanaugh's. The "contours of that right"—at least as it pertains to non-physical harassment—could not be considered "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Maldonado*, 568 F.3d at 268-69.

Finally, even if the Court had also found the contours of the right to be well established and defeated Mr. Cavanaugh's qualified immunity, the claim against Mr. Nguyen would nonetheless again fail at second step of the qualified immunity analysis. The Court focuses particularly on "whether a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights." *Maldonado*, 568 F.3d at 268-69.

"[T]he salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id.* at 269 (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The question is whether Mr. Nguyen had fair notice that his particular conduct was unconstitutional, and the Court concludes that he did not.

As the Court explained in its shocks-the-conscience analysis, Mr. Cavanaugh's persistent and sexually explicit text messages were an order of magnitude more harassing and harmful than any of his other individual behaviors. With the text messages removed from consideration, however, the other behaviors remain

76

inappropriate and potentially harassing, but they are not nearly as egregious. Because Mr. Nguyen was not aware of the text messages, he did not possess all the pieces to the puzzle—indeed, he was missing the biggest and most important piece. He exhibited poor personal and professional judgment and a bizarrely unshakeable trust in Mr. Cavanaugh, but given his knowledge at the time a reasonable factfinder could not conclude that Mr. Nguyen—or a reasonable defendant in his position—had "fair warning" that telling Ms. Wadsworth not to worry and that Mr. Cavanaugh had her best interests in mind would "violate[] the plaintiff['s] constitutional rights." *Id.* at 268-69.

Even if Ms. Wadsworth had been able to establish all the required elements for her state-created danger theory, Mr. Nguyen would be entitled to qualified immunity on her § 1983 claim. Accordingly, the Court grants the motion for summary judgment in favor of Mr. Nguyen as to Ms. Wadsworth's § 1983 substantive due process claim.

### C.    State Law Tort Claims

Ms. Wadsworth has asserted three state law tort claims against Mr. Nguyen: intentional infliction of emotional distress (Count IV); negligent infliction of emotional distress (Count V); and negligence (Count VI). *Am. Compl.* ¶¶ 189-208. Mr. Nguyen contends that her tort claims are barred both by her purported failure to provide timely notice as required by the MTCA and by his absolute discretionary function immunity as a government employee. *Def.'s Mot.* at 21-25. Neither defense is availing, and the Court denies summary judgment on Ms. Wadsworth's tort claims.

### 1.    MTCA Notice Defense

The MTCA requires that a claimant against a governmental entity file a written notice of claim within 180 days after the cause of action accrues.  14 M.R.S. § 8107(1).    The general purpose of the notice requirement is to "enable the governmental entity to investigate and evaluate claims for purposes of defense or settlement." *Pepperman v. Barrett*, 661 A.2d 1124, 1126 (Me. 1995).  Notice of claims "against any political subdivision or an employee thereof" must be addressed to "one of the persons upon whom a summons and complaint could be served under the Maine Rules of Civil Procedure, Rule 4."  14 M.R.S. § 8107(3).  This notice must include:

> A. The name and address of the claimant, and the name and address of the claimant's attorney or other representative, if any;
> B. A concise statement of the basis of the claim, including the date, time, place and circumstances of the act, omission or occurrence complained of;
> C. The name and address of any governmental employee involved, if known;
> D. A concise statement of the nature and extent of the injury claimed to have been suffered; and
> E. A statement of the amount of monetary damages claimed.

14 M.R.S. § 8107(1).  A claim that does not "substantially compl[y]" with this notice requirement is barred, but claims "shall not be held invalid or insufficient by reason of an inaccuracy in stating the time, place, nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact prejudiced thereby."  14 M.R.S. § 8107(4).  Mr. Nguyen asserts that Ms. Wadsworth "did not comply with Section 8107 insofar as she asserts claims against Mr. Nguyen" because "[w]hile [Ms. Wadsworth] apparently served the RSU 40 superintendent with a notice of claim, it

78

does not identify Mr. Nguyen as a municipal employee involved in the claims for which she is providing notice, nor does the notice mention Mr. Nguyen in the statement of the basis for the claim." *Def.'s Mot.* at 22.

Mr. Nguyen does not appear to dispute that Ms. Wadsworth served proper and timely notice on RSU 40. Instead, he submits that the MTCA requires that notice include "[t]he name and address of any governmental employee involved, if known," *id.* at 21 (quoting 14 M.R.S. § 8107(1)(C)), and Ms. Wadsworth's notice did not mention Mr. Nguyen—despite her being aware of his involvement. Ms. Wadsworth counters that she "submitted a timely notice of claim to the governmental unit, in this case the School, and provided ample notice of the nature of her claims" and thus "[g]iven the facts alleged in this case, the School clearly knew or should have known that the claim involved [Mr.] Nguyen, and was therefore not prejudiced in its investigation and evaluation of the claims prior to suit." *Pl.'s Opp'n* at 48-49.

Ms. Wadsworth's notice to RSU 40 and Mr. Cavanaugh is dated June 13, 2018. *Pl.'s Resps. to Def. Chuck Nguyen's Req. for Production*, Attach. 1, *Me. Tort Claims Act Notice of Cl. to Gov'tal Entity Pursuant to 14 M.R.S. § 8107* at 3-4. Ms. Wadsworth gave notice to Eileen Dondlinger, Waldoboro Town Clerk, Steve Nolan, Superintendent of Schools, RSU 40, Stacey Parra, Union Town Clerk, and Andrew Cavanaugh. *Id.* at 1. The Notice reads in relevant part:

> Notice is hereby given under the Maine Tort Claims Act, 14 M.R.S. § 8107 of the following claim against MSAD 40; RSU 40; Medomak Valley High School; and Andrew Cavanaugh:
>
> A. Name and Address of Claimant and Claimant's Attorney:

Claimant:          Adrianna Wadsworth

                   Washington, ME 94574


Attorney:          Rachel J. Deschuytner, Esq.
                   Robinson, Kriger & McCallum
                   12 Portland Pier
                   Portland, ME 04101

B.  Concise Statement of the Basis of the Claim:

From April 20, 2017 through November 3, 2017, Mr. Andrew Cavanaugh, the principal of Medomak Valley High School, MSAD 40, pursued and engaged in an in appropriate relationship with Ms. Adrianna Wadsworth, a minor student.  Mr. Cavanaugh sent thousands of text messages to Ms. Wadsworth, a minor student.  Mr. Cavanaugh sent thousands of text messages to Ms. Wadsworth, provided her gifts, and made sexually explicit and inappropriate remarks to her.  As a result of the relationship, Ms. Wadsworth suffered emotional damages and damage to her reputation.

C.   Name and Address of Municipal Employee(s) Involved:

Andrew Cavanaugh

Rockland, ME 04856

D.  Concise Statement of the Nature and Extent of the Injuries Claimed to Have Been Suffered:

As a result of the above-referenced incident, Ms. Wadsworth suffered extreme emotional damages and damages to her reputation.  She is currently receiving counseling services.

*Id.* at 1-2.

The Court finds instructive the Law Court's decision in *Kakitis v. Perry*, 659 A.2d 852 (Me. 1995).  In that case, the plaintiff first sued the City of Westbrook and served notice stating in relevant part that his claim arose "from the negligent conduct of various employees of the City," without naming any individual employees.  *Id.* at

853.  Kakitis then later filed tort claims against individual employees.  The Superior Court awarded summary judgment in the employees' favor, reasoning that the plaintiff's claim "was barred because he failed to notify the governmental entity that a claim against its employees would be made."   *Id.*  The Law Court vacated that decision, stating:

> Contrary to the ruling of the Superior Court, the [MTCA] contains no requirement that a plaintiff's notice of claim specify whether he intends to bring an action against the employees rather than against the governmental entity itself . . . [w]e reject the Superior Court's reasoning that in the absence of specific reference in the notice of claim that a plaintiff intends to file a claim against employees, the governmental entity is somehow prejudiced in regard to its right or obligation to defend and indemnify its employees. The governmental entity in this case received a timely notice, and has been deprived of neither an opportunity to investigate nor an opportunity to seek to achieve a settlement on its own behalf or on behalf of its employees.  The contents of plaintiff's notice complies with the requirements of the Act.

*Id.* at 854.  The facts of *Kakitis* are not identical to the facts here, as in that case the plaintiff did not know the names or addresses of the employees at the time he served his initial notice.  *Id.* at 854 n.1.

At oral argument, Mr. Nguyen's attorney pointed to *Parker v. Dall-Leighton*, No. 2:17-CV-216-GZS, 2018 U.S. Dist. LEXIS 108867 (D. Me. June 29, 2018), a case not cited in his filings, as support for the proposition that a plaintiff must name the employees to comply with the notice provisions of 14 M.R.S. § 8107(1).  In *Parker*, a female inmate of the Maine Department of Corrections was sexually assaulted on multiple occasions by a male corrections officer.  *Id.* at *1-2.  The inmate alleged that she repeatedly informed a female corrections officer about the sexual encounters with the male officer.  *Id.* at *2.  The inmate sent timely notices of claims, naming the

male corrections officer but describing the female officer only as Jane Doe. *Id.* The inmate did not tell the Department of Corrections the name of the female officer until after the inmate was released from custody, and she never amended her notice to include the female's name. *Id.* at *3-4.

In *Parker*, the district court noted that the plaintiff did not name the female corrections officer "even though Plaintiff knew her identity," and that the plaintiff "did not adequately provide notice that Plaintiff was bringing any claim against a corrections officer for negligently failing to stop [the male corrections officer's] sexual assaults." *Id.* at *7-8. The district court granted summary judgment in favor of the female corrections officer for failure to comply with the notice provisions of the MTCA. *Id.* at *9. Based on the record before it, the Court finds Ms. Wadsworth's failure to name Mr. Nguyen in her January 13, 2018 notice of claim is more like *Kakitis* than *Parker*. It is true that Ms. Wadsworth had direct contact with Mr. Nguyen and was aware of his interactions with her, and Mr. Nguyen's dealings with her could have placed her on notice of a potential claim against him. It was also true Mr. Nguyen was aware that Mr. Cavanaugh referred to Ms. Wadsworth as cupcake, that Mr. Cavanaugh was texting Ms. Wadsworth but not the high frequency and sexually explicit nature of the texting, that Mr. Cavanaugh gave Ms. Wadsworth $20 on one occasion in Mr. Nguyen's presence, and that Mr. Cavanaugh gave Ms. Wadsworth other gifts, such feminine hygiene products, that embarrassed Ms. Wadsworth. In addition, Ms. Wadsworth was also aware that Mr. Nguyen minimized and justified some of Mr. Cavanaugh's conduct, even after the allegations against Mr. Cavanaugh

came to light.  From what Ms. Wadsworth knew, Mr. Nguyen's responses were quizzical at best, perhaps misplaced loyalty to a colleague and superior.  Ms. Wadsworth's unformed view of Mr. Nguyen's actions is confirmed by the fact she did not mention Mr. Nguyen when Detective Murray first interviewed her.

What makes Mr. Nguyen's conduct highly unusual and tips the balance toward potential legal liability is his conduct after the police and school initiated the investigation.  Even after the police had opened an investigation of Mr. Cavanaugh, Mr. Nguyen told the Waldoboro Police Chief Labombarde that he thought the school should be more supportive of Mr. Cavanaugh, that Ms. Wadsworth was "bringing it on herself," and that he was trying to get Ms. Wadsworth to talk about the situation. These comments led the Police Chief to inform Superintendent Nolan that Mr. Nguyen was either knowingly or unknowingly trying to interfere with the police investigation and in turn caused Superintendent Nolan to instruct Mr. Nguyen not to contact either Mr. Cavanaugh or Ms. Wadsworth.

But Mr. Nguyen apparently defied Superintendent Nolan's order.[98]  He continued to contact Ms. Wadsworth and to defend Mr. Cavanaugh's behavior to Ms. Wadsworth and to the police after the law enforcement and school investigations had commenced and after being instructed not to continue his involvement.  Mr. Nguyen

_____

[98]    As noted earlier, the timing of Mr. Nolan's no-contact directive and Mr. Nguyen's meetings with Ms. Wadsworth is not entirely clear, but the Court has viewed this ambiguity in the light most favorable to Ms. Wadsworth.  Furthermore, during Superintendent Nolan's deposition, some of counsel's questions to Superintendent Nolan were premised on Mr. Nguyen contacting Ms. Wadsworth after Superintendent Nolan directed him not to contact Ms. Wadsworth and Mr. Cavanaugh.  *Nolan Dep.* at 148:20-150:14.  In fact, Superintendent Nolan said that if he had been aware of the post-directive contact, he would have opened up an investigation and it would have been a cause for discipline against Mr. Nguyen.  *Id.* at 150:10-14.

even told Chief Labombarde that anyone who deals with children could be subject to similar allegations, shocking the Chief by his comment. There is no evidence in this record that Ms. Wadsworth was aware that when Mr. Nguyen was contacting her after early November 2017, he was violating a direct order from the superintendent and was justifying Mr. Cavanaugh's conduct to the police. There is no evidence in this record that Ms. Wadsworth was aware of this additional information when she filed the notice of claim on January 13, 2018.

From the Court's perspective, these additional facts place Mr. Nguyen's other actions in a different context and make a potential claim against him more apparent. This additional unknown information reveals evidence that Mr. Nguyen's actions were not merely based on misguided loyalty to Mr. Cavanaugh, but on an unwarranted skepticism of Ms. Wadsworth's truthfulness based on her gender and age. Excusing Mr. Cavanaugh and attempting to influence Ms. Wadsworth on Mr. Cavanaugh's behalf based on these stereotypes places into a different perspective the potential viability of Title IX and § 1983 claims and strengthens the bases for the Maine tort claims, revealing the depth and potential impropriety of his intentionality and the scope of his negligence.

The Court's analysis of the record leads to the conclusion that, even though Ms. Wadsworth knew who Mr. Nguyen was and what he had done in his direct dealings with her, there is no evidence that she had sufficient information about the scope of Mr. Nguyen's potential liability when she filed the notice of claim on January

13, 2018.[99]  Ms. Wadsworth's claim is not barred under section 8107 on another basis.

Section 8107(4) contains a "substantial notice compliance" requirement.  14 M.R.S. §

8107(4).  The statute provides that a claim "filed under this section shall not be held

invalid or insufficient by reason of an inaccuracy in stating the time, place, nature or

cause of the claim, or otherwise, unless it is shown that the governmental entity was

in fact prejudiced thereby."  *Id.*  The Maine Supreme Judicial Court has observed that

the purpose of the notice requirement is to "enable the governmental entity to

investigate and evaluate claims for purposes of defense or settlement."  *Pepperman*,

661 A.2d at 1126; *see also* 14 M.R.S. § 8107(4) (claims "shall not be held invalid or

insufficient by reason of an inaccuracy in stating the time, place, nature or cause of

the claim, or otherwise, unless it is shown that the *governmental entity was in fact

prejudiced thereby*") (emphasis added); *Deschenes v. City of Sanford*, 2016 ME 56, ¶

12, 137 A.3d 198) (citations omitted) ("failure to comply with the notice provision bars

the claim, unless (1) the errors in a plaintiff's notice constitute mere inaccuracies, and

(2) the governmental entity is unable to show prejudice").

Here, RSU 40 "received a timely notice, and has been deprived of neither an

opportunity to investigate nor an opportunity to seek to achieve a settlement on its

own behalf or on behalf of its employees" and thus "[t]he contents of plaintiff's notice

complies with the requirements of the Act."  *Kakitis*, 659 A.2d at 854.  The purpose

---

[99]     Section 8107 requires that the notice be filed within the statute of limitations provided by
section 8110.  14 M.R.S. § 8107(1) ("or at a later time within the limits of section 8110").  Section 8110
establishes a two-year statute of limitations, except that "if the claimant is a minor when the cause of
action accrues, the action may be brought within 2 years of the minor's attaining 18 years of age."  *Id.*
Here, as Ms. Wadsworth was nineteen years old when she filed the complaint on December 27, 2019,
and, therefore, Mr. Nguyen received notice within the time provided by section 8107.

of the requirement is to protect the government entity, not the employee, but Mr. Nguyen does not identify any prejudice that either the District or he has suffered. *See Def.'s Mot.* at 21-22; *Def.'s Opp'n* at 5. The record confirms that the District was aware of the nature of the allegations against Mr. Cavanaugh as early as November 2017 and, in fact, Mr. Cavanaugh resigned in early November 2017 and the record reflects an active law enforcement investigation, including interviews of Mr. Nguyen. If the District or Mr. Nguyen suffered some prejudice due to the lack of listing Mr. Nguyen in the notice of claim, Mr. Nguyen has not identified it. Consequently, at worst, Ms. Wadsworth substantially complied with notice provisions of the statute and there has been no showing of prejudice against Mr. Nguyen. Her tort claims are not barred for deficient notice.

### 2. Discretionary Function Immunity

Finally, Mr. Nguyen argues that he is entitled to "absolute discretionary function immunity" from the state tort claims pursuant to the Maine Tort Claims Act. *Def.'s Mot.* at 22-25. Ms. Wadsworth responds that the Court should deny Mr. Nguyen's claim of immunity because "the evidence is clear that Mr. Nguyen was not, at least as it pertained to Ms. Wadsworth, acting within any discretionary job functions" and "[i]nstead, the evidence clearly indicates that Mr. Nguyen was acting with loyalty to Mr. Cavanaugh, and an apparent fear of allegations of sexual harassment." *Pl.'s Opp'n* at 49.

The Maine Tort Claims Act "applies a policy of broad liability to governmental employees, subject to the" enumerated exceptions. *Carroll v. City of Portland*, 1999

86

ME 131, ¶ 6, 736 A.2d 279.  One exception provides absolute immunity to employees of governmental entities "[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused . . . ."  14 M.R.S. § 8111(1)(C). The immunity applies to discretionary acts that are "reasonably encompassed by the duties of the governmental employee in action . . . ."  *Carroll*, 1999 ME 131, ¶ 6 (quoting 14 M.R.S. § 8111(1)).  In other words, the immunity applies only to conduct "within the scope of [the government employee's] employment . . . ."  *Darling*, 535 A.2d at 425.  "[T]ort liability should not be imposed for conduct of a type for which the imposition of liability would substantially impair the effective performance of a discretionary function."  *Carroll*, 1999 ME 131, ¶ 6 n.4 (alteration in original) (quoting *Grossman v. Richards*, 1999 ME 9, ¶ 6, 722 A.2d 371, 373).  Moreover, there is no exception to immunity under § 8111(1)(C) for "acts or omissions characterized by animus."  *Buchanan ex rel. Estate of Buchanan v. Maine*, 417 F. Supp. 2d 24, 44 (D. Me. 2006), *aff'd*, 469 F.3d 158 (1st Cir. 2006) (*Buchanan*).

To determine whether an act is discretionary, courts consider four questions:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective?  (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?  (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?  (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Darling*, 535 A.2d at 426 (quoting *Trianon Park Condo. Ass'n v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985)).  "[I]n cases where the questioned conduct has little or no

purely governmental content but instead resembles decisions or activities carried on by people generally, there is an objective standard for judgment by the courts and the doctrine of discretionary immunity does not bar the action." *Rodriguez v. Town of Moose River*, 2007 ME 68, ¶ 22, 922 A.2d 484 (quoting *Adriance v. Town of Standish*, 687 A.2d 238, 241 (Me. 1996)).

At the motion to dismiss stage, the Court found that Ms. Wadsworth's tort claims survived discretionary immunity because "[o]ne way of looking at Mr. Nguyen's actions shows a social worker hearing a complaint, evaluating it, and giving advice" while "[a]nother way is to view Mr. Nguyen as someone enabling an administrator in his pursuit of a student" and ultimately "[w]hether discretionary function immunity protects Mr. Nguyen's actions depends on which view the Court takes" as more facts are revealed. *Order on Mot. to Dismiss* at 48. The Court also noted:

> If Mr. Nguyen's actions were consistent with the practice of his profession and in accordance with school policy, then, although they were professional misjudgments, they necessarily involve a basic governmental policy, program, or objective—the counseling of students in accordance with Maine law. On the other hand, if Mr. Nguyen's actions were attempts to normalize Mr. Cavanaugh's abnormal behavior because Mr. Nguyen and Mr. Cavanaugh were friends, Mr. Nguyen instinctively supports authority figures over students, or some other facts not yet known, then his actions fall outside of what he was hired to do as the school social worker.

*Id.* at 49. If anything, the development of the summary judgment record has revealed even more clearly that Mr. Nguyen's actions "fall outside of what he was hired to do as the school social worker." *Id.* While the Court's analysis of Mr. Nguyen's MHSA defense involved a different legal question, the Court finds that his behavior can

88

similarly be sorted into two buckets to evaluate his discretionary function immunity claim: behavior that could fall within the professional duties of a school social worker; and behavior that could not possibly be within that discretion or advancing a governmental objective.

Behavior within the first category presents a closer call, but the Court finds that there remain disputed issues of material fact that would allow a jury to conclude that Mr. Nguyen's actions were not professional judgments but were attempts to protect Mr. Cavanaugh out of personal loyalty or affinity in a manner that did not "involve a basic governmental policy, program or objective." *Darling*, 535 A.2d at 426 (citation omitted). Several examples would include reassuring Ms. Wadsworth that Mr. Cavanaugh was a "father figure" who thought of her as a daughter, assuring Ms. Kenniston that the birth control issue had been taken care of, and not either reporting or counseling Mr. Cavanaugh to stop behaviors that were clearly inappropriate. Under the right light, each of these examples might be characterized as professional misjudgments made while exercising Mr. Nguyen's lawful authority to provide services to students. However, given the record in this case—and particularly Mr. Nguyen's inexplicably unshakeable loyalty to Mr. Cavanaugh, even after the investigation—a reasonable juror could conclude that these were not mistakes made within Mr. Nguyen's professional discretion but instead efforts to protect Mr. Cavanaugh because of Mr. Nguyen's personal affinity for him.

The second category of behaviors—primarily Mr. Nguyen's conduct during and after the investigation—eviscerates his immunity defense. The timeline is

89

occasionally unclear, but during and/or after the investigation Mr. Nguyen' told Ms. Wadsworth that Mr. Cavanaugh's family had a right to be angry at her and that she should apologize to them, downplay or recant her harassment allegations, and sign an affidavit supporting Mr. Cavanaugh.  Mr. Nguyen told Ms. Wadsworth that Mr. Cavanaugh did not do anything inappropriate or have any inappropriate conversations with her; characterizing Mr. Cavanaugh as a "stand-up guy," and saying that "it's not what they are making it out to be."  PSAMF ¶ 140; DRPSAMF ¶ 140.  He also went on to tell Ms. Wadsworth to picture a day in the future, in college, having coffee with Mr. Cavanaugh, when "all of this would be gone and over with." PSAMF ¶ 144; DRPSAMF ¶ 144.

Multiple members of law enforcement were shocked by Mr. Nguyen's conduct and Superintendent Nolan expressed concern that he "maybe . . . was, knowingly or unknowingly" interfering with the investigation into Mr. Cavanaugh.  PSAMF ¶ 137; DRPSAMF ¶ 137.  Mr. Nolan instructed Mr. Nguyen not to have any contact with Mr. Cavanaugh regarding Ms. Wadsworth and instructed Mr. Nguyen not to have contact with Ms. Wadsworth.  PSAMF ¶ 138; DRPSAMF ¶ 138.  Because the record is unclear when Mr. Nguyen's many interactions with Ms. Wadsworth relating to the investigation occurred in relation to this directive, there is at the very least a disputed issue of material fact as to whether Mr. Nguyen complied with Mr. Nolan's order. *See, e.g.*, PSAMF ¶ 147; DRPSAMF ¶ 147 (after Mr. Nguyen was instructed not to have contact with Ms. Wadsworth, Mr. Spear observed Ms. Wadsworth crying in the hallway, and observed Mr. Nguyen chase her down the hallway).

Mr. Nguyen telling an underage victim of sexual harassment that her harasser's family had a right to be mad at her and repeatedly encouraging her to recant her allegations and sign an affidavit supporting the harasser cannot be possibly construed as within his discretion as a social worker or advancing any governmental objective. That conclusion is plain on its face but is made even more obvious in this case where RSU 40's superintendent—Mr. Nguyen's superior and the highest ranking official in the District—explicitly ordered Mr. Nguyen to cease this behavior and Mr. Nguyen appears to have defied that directive. Viewing disputed facts in the light most favorable to Ms. Wadsworth, Mr. Nguyen's actions fall well outside of what he was hired to do as the school social worker, and he is thus not entitled to discretionary function immunity.

## VI.   CONCLUSION

The Court GRANTS Chuck Nguyen's Motion for Summary Judgment (ECF No. 105) as to Count II of Adrianna Wadsworth's Amended Complaint as it pertains to him. The Court DENIES the motion as to Counts IV-VI.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2023